**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| TERESA BEATTY, *et al.*, | : | 3:22-cv-00380-JAM |
| *Plaintiffs*, | : | |
| v. | : | |
| NED LAMONT, *et al.*, | : | |
| *Defendants*. | : | JUNE 17, 2022 |

<u>**Defendants' Memorandum in Support of their Motion to Dismiss**</u>

Three individual named Plaintiffs—Plaintiff Beatty, Plaintiff Llorens, and Plaintiff Weissinger—bring this action on behalf of themselves and a putative class of over 30,000 similarly situated people to challenge Connecticut's statutes and regulations that require inmates with assets to pay a portion of the costs of their incarceration ("the challenged laws[1]"). *Amended Complaint*, p. 1 Introductory paragraph (ECF No. 11) ("*AC*").[2] The Court should dismiss the Amended Complaint both on jurisdictional grounds and on its merits.

As to jurisdiction, none of the named Plaintiffs has met their burden to allege facts that establish their standing and, for related reasons, Plaintiffs have failed to establish that their claims are ripe. In addition, even if Plaintiffs had standing at the outset of this litigation, post-filing amendments to the challenged laws have rendered Plaintiffs' claims moot. Moreover, the Eleventh Amendment bars Plaintiffs' claims both because Defendants—the Governor and the Attorney General—do not have the necessary connection to the enforcement of the challenged

---

[1] The challenged laws were amended after Plaintiffs filed their operative Amended Complaint. Defendants reached out to Plaintiffs, advised them of the amendments to the challenged laws, and asked Plaintiffs if they planned to move for leave to amend or supplement their Amended Complaint to challenge the laws as amended. Plaintiffs declined to move for leave to amend or supplement before Defendants filed this Motion to Dismiss. Therefore, except with regard to the implications of the amendments for mootness purposes, this Memorandum analyzes the challenged laws as they existed at the time of the operative Amended Complaint.

[2] Plaintiffs have advised undersigned counsel that they plan to move for class certification but Plaintiffs have not yet done so or specified when they plan to do so. Defendants request that the Court decide this Motion to Dismiss before addressing class certification. *See, e.g.*, *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 388 n.1 (W.D.N.Y. 2010) ("find[ing] it appropriate to decide [a] motion to dismiss before reaching the issue of class certification" where the defendant "elected to do so"). Doing so will likely "protect[ ] both the parties and the court from needless and costly further litigation" and will not evidently "prejudice any of the parties." *Lawson v. FMR LLC*, 554 F. Sup. 3d 186, 192-93 (D. Mass. 2021) (quotation marks omitted). Defendants anticipate objecting to Plaintiffs' motion for class certification on multiple grounds if and when Plaintiffs file it.

laws to make them proper *Ex parte Young* Defendants and because to the extent (if any) Plaintiffs have standing and their claims are not moot, the relief Plaintiffs seek is retrospective for Eleventh Amendment purposes.

As to the merits, Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted. Plaintiffs' challenge is based solely on the Eighth Amendment's Excessive Fines Clause. The Supreme Court has made clear as a matter of law that payments that compensate the government for a loss resulting from an individual's conduct are remedial and therefore not fines for purposes of the Eighth Amendment. In addition, even if the challenged laws could somehow be considered punitive, by definition requiring a criminal to pay a sum based on the cost of their incarceration is proportional to the crime committed and therefore not excessive under the Eighth Amendment. Consistent with Supreme Court precedent, the circuit courts and district courts that have addressed Excessive Fines Clause challenges to comparable costs of incarceration laws have generally rejected those challenges. This Court should do the same here and dismiss Plaintiffs' Amended Complaint in its entirety.

## Factual Background

The individual Plaintiffs—Plaintiff Beatty, Plaintiff Llorens, and Plaintiff Weissinger—purport to bring this action on behalf of themselves and a class. *AC*, p. 1 Introductory paragraph. Plaintiff Beatty was incarcerated on drug charges between 2000 and 2002. *See id*. at ¶ 15. Plaintiff Beatty alleges that her mother bequeathed Plaintiff Beatty a 40% share of her estate—in which the only remaining item is a house valued at approximately $590,000—and that "the probate court will almost certainly order[3]" that the house "be sold and the proceeds be distributed to Ms. Beatty and her siblings." *Id*. at ¶ 26. Plaintiff Beatty believes that in the event

---

[3] Although Plaintiff Beatty alleges that the Probate Court "will almost certainly order" the sale of the property, Plaintiff Beatty has taken steps in the Probate Court to slow or prevent the sale as will be discussed in more detail below and the sale had not occurred at the time of the operative Amended Complaint. *AC* at ¶ 26.

the Probate Court orders a sale, "her share of the house's value will be approximately $230,000 before probate administrative expenses" and "she will have nowhere to live, so . . . plans to use her inheritance to buy substitute housing." *Id*. at ¶¶ 27-28.

According to Plaintiff Beatty, the Connecticut "Department of Administrative Services ["("the DAS")] filed a notice in the probate court alleging that Ms. Beatty owes Connecticut $83,762.26 for her time in custody." *Id.* at ¶ 29. That purportedly "includes $55,000 for the 452 days spanning state fiscal years 2000 and 2001, during which she sat in pretrial detention because she could not afford bail" and "$33,517 for her post-sentence incarceration, spanning fiscal years 2001 and 2002." *Id.* at ¶¶ 30-31. Plaintiffs allege that the DAS calculations are incorrect. *Id.* at ¶ 32. Plaintiffs assert that "absent relief from this Court, Ms. Beatty will lose $83,762.26 to Defendant Lamont in debt levied in violation of the constitution and calculated in an arbitrary way." *Id.* at ¶ 33.

Plaintiff Llorens is serving a three-year sentence for burglary in a Connecticut prison and his sentence will be complete in September 2022. *Id.* at ¶¶ 36, 39. Plaintiff Llorens alleges that he owes $272,655 in costs of incarceration and does not allege that Defendants have taken any action to collect those costs. *Id.* at ¶ 41. However, he "has a pending brutality lawsuit against the municipal police employees who arrested him," *id.* at ¶ 43, and is concerned that should he "win that lawsuit or attain a monetary settlement, the defendants will recoup either the $272,655 that they claim Mr. Llorens owes, or, half of his recovery, whichever is lesser." *Id.* at ¶ 44.

Plaintiff Wessinger served a sentence for larceny from 2014 to 2016. *Id.* at ¶ 46. He was in a car accident in August 2017 and sued the other driver in Connecticut Superior Court. *Id.* at ¶¶ 48-49. Plaintiff Wessinger's counsel in that action received a letter from the state "contending that Mr. Weissinger owes approximately $118,000 for his time in prison" and notifying counsel

3

of the state's claim to a portion of any recovery Mr. Wessinger obtains in that suit. *Id.* at ¶ 46. Plaintiffs allege that "[i]n late February of 2022, Mr. Weissinger and the other driver reached a settlement to resolve his claims" and that "according to Defendant Lamont, Mr. Weissinger must now pay half of that settlement amount to the State of Connecticut." *Id.* at ¶ 51. Plaintiffs do not provide the amount of the alleged settlement. Plaintiffs expressly do not "challenge the lawfulness, duration, or conditions of their confinements in this action." *Id.* at ¶ 52.

Based on those facts, Plaintiffs allege a single Count against Defendants in their official capacities[4] alleging that "the challenged statutes and regulations violate the Excessive Fines Clause. U.S. Const. amend. 8, cl. 3." *Id.* at ¶ 124. Plaintiffs also purport to bring this action on "behalf of the following class of similarly situated persons: anyone owing prison debt to Connecticut by virtue of having been incarcerated by the state on or after October 1, 1997 (the "Class")." *Id.* at ¶ 110; *see also id.* at ¶¶ 111-20 (additional class allegations). Plaintiffs represent that "the Class can be reliably expected to exceed 30,000 people." *Id.* at ¶ 111. Plaintiffs ask this Court to:

1. Declare "that the plaintiffs' and the Class members' prison debt is invalid, null, void and unenforceable," *id.* at p. 20 ¶ (a);

2. Declare "Conn. Gen. Stat. §§ 18-85a through -85c and their implementing regulations to be unconstitutional and void," *id.* at p. 20 ¶ (b);

---

[4] Plaintiffs do not expressly allege whether their claims are against Defendants in their official capacities, their individual capacities, or both. However, Plaintiffs' method of putative service and the nature of the relief Plaintiffs demand make clear that Plaintiffs' claims are solely against Defendants in their official capacities. *See, e.g.*, *Thurmand v. University of Connecticut*, 2019 U.S. Dist. LEXIS 14622, at *8-9 (D. Conn. Jan. 30, 2019) (Hall, J.) (holding that equitable relief can only be obtained from state defendants in their official capacities, citing *Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993)); *Harnage v. Lightner*, 163 Conn. App. 337, 344-45 (2016) ("Decisions of this court have repeatedly held that a plaintiff, who serves a state defendant pursuant to § 52-64(a) by leaving a copy of the process with the attorney general at the Office of the Attorney General, has properly served the defendant only in his or her official capacity . . .").

3. Enjoin Governor "Lamont, and anyone working for him or in concert with him or his successors, from enforcing the challenged statutes through any means, including but not limited to, his: issuing any formal or informal claim, notice, or lien asserting the existence of a prison debt or directing [Attorney General] Tong to collect a prison debt," *id.* at p. 20 ¶ (c);

4. Enjoin Attorney General Tong, "and anyone working for or in concert with him or his successors, from enforcing the challenged statutes through any means, including but not limited to, his: filing collections actions against any person, holding back judgment or settlement proceeds in cases he defends, or representing to any person or court that a debt imposed via the challenged statutes exists or is valid," *id.* at p. 20 ¶ (d);

5. Order Defendants "to reimburse the plaintiffs their reasonable litigation costs and attorneys' fees pursuant to 42 U.S.C. § 1988," *id.* at p. 20 ¶ (e); and

6. Grant "any other relief it deems just and proper." *Id.* at p. 20 ¶ (f).[5]

## The Challenged Connecticut Laws and Regulations

Plaintiffs ask this Court to *inter alia* declare Conn. Gen. Stat. §§ 18-85a, 18-85b, and 18-85c and their implementing regulations unconstitutional and void. *AC*, p. 21 ¶ (b). For the Court's convenience, a copy of the challenged statutes and regulations is included at pages 1 to 18 of the Appendix submitted with this Memorandum.

To briefly summarize, Conn. Gen. Stat. § 18-85a(a) directs the Commissioner of Correction to adopt regulations concerning the assessment for the costs of their incarceration. (A-1). Conn. Gen. Stat. § 18-85a(b) provides that the state shall have a claim against an inmate for those costs, but exempts several categories of property: (1) the 22 categories of property exempt

---

[5] In the interest of brevity, Defendants will address additional facts alleged in the Amended Complaint in context in the argument section below.

under Connecticut's post-judgment procedures statute (A-1); (2) certain property of a farm partnership (A-1); (3) property subject to the law governing profits derived as a result of crime of violence (A-1); (4) property acquired "by such inmate after the inmate is released from incarceration," except property subject to Conn. Gen. Stat. §§ 18-85b and 18-85c (which will be discussed in more detail below), as well as lottery and pari-mutuel winnings (A-1); and (5) property acquired by such inmate for work performed during incarceration as part of a program designated or defined in regulations adopted by the Commissioner of Correction," as various job training or skill enhancement programs with minor exceptions (A-1). Conn. Gen. Stat. § 18-85a(b) authorizes the Attorney General, at the Commissioner of Correction's request, to bring an action to enforce the state's claim but that action must be brought either while the inmate is incarcerated or within two years of either the inmate's release or the inmate's death unless there was fraudulent concealment (A-1).

Conn. Gen. Stat. § 18-85b(a) provides that the state shall have a lien against the proceeds of any cause of action brought by an inmate either while the inmate is incarcerated or within twenty years after the inmate's release from incarceration (A-3). That lien is the lesser of the costs of incarceration "or fifty per cent of the proceeds received by such person after payment of all expenses connected with the cause of action." (A-3). Six categories of claims have priority over the state's lien: (1) attorney's fees; (2) expenses of suit; (3) costs of hospitalization associated with the cause of action; (4) child support obligations; (5) restitution or payment of compensation to a crime victim; and (6) a judgment in favor of a crime victim. (A-3).

Conn. Gen. Stat. § 18-85b(b) provides that the state shall have a lien against an inheritance that is received by an inmate either while the inmate is incarcerated or "within twenty years from the date such person is released from incarceration." (A-4). That lien is the lesser "of

6

the costs of incarceration or fifty per cent of the assets of the estate payable to" the inmate. Conn. Gen. Stat. § 18-85b(b).

Conn. Gen. Stat. § 18-85c provides that the state shall have a claim against the estate of an inmate or former inmate whose death "occurs within twenty years from the date such person is released from incarceration." (A-5). That claim exists only "to the extent that the amount which the surviving spouse, parent or dependent children of the decedent would otherwise take from the estate is not needed for their support." Conn. Gen. Stat. § 18-85c. Six categories of expenses have priority over the state's claim. *See id.*

Section 18-85a-1(a) of the Regulations of Connecticut State Agencies (A-14) defines "Assessed Cost of Incarceration" and Section 18-85a-2 of the Regulations of Connecticut State Agencies (A-16), in turn, provides that "inmates shall be charged for and shall be responsible to pay" that assessed cost. Finally, Section 18-85a-4(b) of the Regulations of Connecticut State Agencies (A-18) provides that amounts owed "shall be collected with the assistance of the Department of Administrative Services and in accordance with a memorandum of understanding between the Department of Correction [("the DOC")] and the" DAS. *See* Conn. Gen. Stat. § 4a-12(a) (providing that the Commissioner of Administrative Services "shall be responsible for" *inter alia* "such collection services for other state agencies and departments as shall be agreed to between said commissioner and the heads of such other agencies and departments"). A copy of that Memorandum of Understanding is included in the Appendix. (A-19). There is no reference to the Governor in any of the statutes, the regulations, or the Memorandum of Understanding.

On May 3, 2022, the Connecticut General Assembly transmitted H.B. No. 5506—titled "An Act Adjusting the State Budget for the Biennium Ending June 30, 2023, Concerning Provisions Related to Revenue, School Construction and Other Items to Implement the State

Budget and Authorizing and Adjusting Bonds of the State"—to the Governor for his review and signature. That bill was signed into law on May 7, 2022, became Public Act 22-118, and made significant changes to the challenged laws. For example, it allowed most inmates an additional exemption for up to fifty thousand dollars in other assets beyond the already available exceptions. (A-28). In addition, it eliminated the state's claim as to causes of action for most inmates, including Plaintiff Llorens and Plaintiff Weissinger. (A-29). The act expressly provides that both of those changes are "[e]*ffective from passage and applicable to costs of incarceration incurred, before, on or after the effective date*" of the law. (A-27, 29) (emphasis in Public Act No. 22-118). As noted above, Defendants advised Plaintiffs of the amendments to the challenged laws and Plaintiffs declined to seek leave to amend or supplement their Amended Complaint to challenge the laws as amended.

### Procedural Background

Plaintiffs filed their initial Complaint on March 14, 2022 (ECF No. 1) and putatively served Defendants by certified mail on March 17, 2022 (ECF No. 8). Plaintiffs amended their Complaint as a matter of course on March 25, 2022 (ECF No. 11) and putatively served their Amended Complaint on March 29, 2022 (ECF No. 15). Defendants moved for an extension of time to respond to the Amended Complaint (ECF No. 14). This Court granted Defendants' motion in part and set a May 9, 2022 deadline for Defendants to respond (ECF No. 16). After the challenged laws were amended, Defendants requested—and this Court granted—an extension through May 23, 2022 with Plaintiffs' consent (ECF No. 18).

The parties then conferred and filed a Joint Motion for Modification of Scheduling Order (ECF No. 20), which the Court granted, that provided that Plaintiffs would inform Defendants by June 3, 2022 whether Plaintiffs intended to file a motion for leave to amend their operative

Amended Complaint in light of the amendments to the challenged laws. Plaintiffs advised Defendants that Plaintiffs decided not to move to amend. Therefore, Defendants timely filed this Motion on the current June 17, 2022 deadline.

**<u>Argument</u>**

**I.    The Standard Applicable to this Motion to Dismiss**

Defendants bring this Motion pursuant to Rule 12(b)(1) and 12(b)(6). A Rule 12(b)(1) motion is the proper vehicle to seek dismissal based on Plaintiffs' failure to allege facts sufficient to meet Plaintiffs' burden to establish standing and constitutional ripeness. *See, e.g.*, *Liberian Community Assn. of Conn.* v. *Lamont*, 970 F.3d 174, 184 (2d Cir. 2020) (standing); *Philadelphia Indemnity Ins. Co. v. Enterprise Builders*, 520 F. Sup. 3d 156, 160-61 (D. Conn. 2021) (Dooley, J.) (constitutional ripeness). A Rule 12(b)(1) motion is also the proper vehicle to raise mootness. *See, e.g.*, *Manon v. Hall*, 2015 U.S. Dist. LEXIS 163812, at *5-6 (D. Conn. Dec. 7, 2015) (Bryant, J.). In addition, "the Second Circuit has cited Rule 12(b)(1) when affirming the district court's holding that the Eleventh Amendment deprives the court of subject matter jurisdiction over an action." *Mercer v. Schriro*, 337 F. Sup. 3d 109, 135 n.16 (D. Conn. 2018) (Haight, J.) (citing *Madden v. Vermont Supreme Court*, 8 F. App'x 128, 129 (2d Cir. 2001) (Summary Order)); *see also Morabito v. New York*, 803 F. App'x 463, 465 n.2 (2d Cir. 2020) (Summary Order) ("Although the district court characterized its dismissal as falling under Rule 12(b)(6), it is more appropriately characterized as a dismissal under Rule 12(b)(1), as it was based on sovereign immunity.").

As this Court recently recognized, "[t]he standard that governs a motion to dismiss under Rules 12(b)(1) and 12(b)(6) is well established." *Campbell v. City of Waterbury*, 2022 U.S. Dist. LEXIS 22999, at *7 (D. Conn. Feb. 9, 2022) (Meyer, J.). "A complaint may not survive unless it

9

alleges facts that, taken as true, give rise to plausible grounds to sustain subject-matter jurisdiction and a plaintiff's claims for relief." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018), and *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155-56 (D. Conn. 2016)).

"For purposes of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court may consider reliable evidence outside the pleadings." *Id.* (citing *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016)). "For purposes of a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must limit itself to the allegations of the complaint but may also consider documents that are referenced in or integral to the allegations of the complaint." *Id.* at *7-8 (citing *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021)).

## II.     The Court Should Dismiss this Action Because the Named Plaintiffs Lack Standing and their Claims Are Not Constitutionally Ripe

"'The law of Article III standing . . . serves to prevent the judicial process from being used to usurp the powers of the political branches'" of the federal or state governments. *Srabyan v. New York*, 2022 U.S. Dist. LEXIS 52173, at *5 (E.D.N.Y. Mar. 23, 2022) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)) (in the context of a challenge to state laws). "It 'focuses on the part[ies] seeking to get [their] complaint before a federal court and not on the issues [they] wish[ ] to have adjudicated.'" *Id.* (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 484 (1982)).

Plaintiffs "'as the part[ies] invoking federal jurisdiction, bear[ ] the burden of establishing'" standing. *Faculty Alumni, & Students Opposed to Racial Preferences v. New York University*, 11 F.4th 68, 74 (2d Cir. 2021) ("*FASORP*") (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ("*Spokeo*")). "'Where, as here, a case is at the pleading stage, the plaintiff[s] must 'clearly . . . allege facts demonstrating'" each of the elements that make up the "'irreducible

constitutional minimum' of standing.'" *Id*. (quoting *Spokeo*, 578 U.S. at 338). Those elements are that each Plaintiff (1) "has an injury in fact"; (2) "that there is a causal connection between [the] injury and the conduct complained of; and (3) that [the] injury will be redressed by a favorable judicial decision." *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 2022 U.S. App. LEXIS 7107, at *9 (2d Cir. Mar. 18, 2022) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

"Because 'the standing inquiry requires careful judicial examination of . . . whether the particular plaintiff is entitled to an adjudication of the particular claims asserted,' standing must be assessed as to each plaintiff and each 'plaintiff must demonstrate standing separately for each form of relief sought.'" *Seife v. United States HHS*, 440 F. Supp. 3d 254, 272 (S.D.N.Y. 2020) (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984) and *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). Therefore, Plaintiffs "'must establish that [they have] standing to challenge each provision of" the statutes and regulations they seek to challenge "'by showing that [they were] injured by application of those provisions.'" *Butler v. Obama*, 814 F. Supp. 2d 230, 240 (E.D.N.Y. 2011) (quoting *Covenant Media of S.C., LLC v. City of N. Charleston*, 493 F.3d 421, 429-30 (4th Cir. 2007)). "'[S]tanding is not dispensed in gross.'" *See id*. (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n. 6 (1996)).

No Plaintiff has met their burden to clearly allege facts demonstrating that they have standing as to any aspect of the statutes and regulations Plaintiffs seek to challenge. *FASORP*, 11 F.4th at 74. Therefore, this Court lacks subject matter jurisdiction and should dismiss the Amended Complaint in its entirety. That Plaintiffs purport to bring this action on behalf of a class "'adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by

other, unidentified members of the class to which they belong." *Srabyan*, 2022 U.S. Dist. LEXIS 52173 at *6 (quoting *Spokeo,* 578 U.S. at 338 n.6). "In a class action, 'federal courts lack jurisdiction if no named plaintiff has standing.'" *McMorris* v. *Carlos Lopez & Associates, LLC*, 995 F.3d 295, 299 (2d Cir. 2021) (quoting *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019)); *see also Mahon v. Ticor Title Ins. Co*., 683 F.3d 59, 64 (2d Cir. 2012) ("disagree[ing] with the approach that analyzes class certification before Article III standing and treats the class as the relevant legal entity").

### A. This Court Should Dismiss the Complaint in its Entirety Because No Plaintiff Has Clearly Alleged Facts Establishing an Injury in Fact that Supports Standing as to Any of the Challenged Statues and Regulations

"[S]tanding requires an injury in fact that must be concrete and particularized, as well as actual or imminent." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (quotation marks omitted). "It cannot be conjectural or hypothetical." *Id.* (quotation marks omitted). The Supreme Court has been "reluctan[t] to endorse standing theories that rest on speculation about the decisions of independent actors," *Clapper*, 568 U.S. at 414, and a claimed injury is not imminent for standing purposes if it is premised on the exercise of discretion by state actors. *See, e.g.*, *DaimlerChrysler Corp.* v. *Cuno*, 547 U.S. 332, 345 (2006).

No Plaintiff has alleged an injury that supports standing. *See, e.g.*, *Pleasant v. County of Merced*, 2014 U.S. Dist. LEXIS 156603, at *8-10 (E.D. Cal. Nov. 4, 2014), *aff'd in part on relevant ground*, 669 Fed. Appx. 388, 389 (9th Cir. 2016) (dismissing an Excessive Fines Clause challenge to incarceration fees on standing grounds). Plaintiff Beatty's alleged injury is based on a notice the DAS filed in Probate Court of a lien pursuant to Conn. Gen. Stat. § 18-85b(b). *AC* at ¶ 29. Plaintiff Beatty speculates that the Probate Court "will almost certainly order" that her mother's house be sold "and the proceeds distributed to Ms. Beatty and her siblings" and that if

that happens the DAS lien will reduce Plaintiff Beatty's share. *Id.* at ¶ 26. But the Supreme Court has repeatedly held that "speculation about the decisions of independent actors" does not support standing. *Clapper*, 568 U.S. at 414. Plaintiff Beatty's claimed injury is premised on just such speculation; it is speculative that the Probate Court will order the house to be sold, particularly given that Plaintiff "Beatty, her brother James, two of her children, and one of her grandchildren live in the house" and "have lived there almost their entire lives," *AC* at ¶ 21, and that the Probate Court file indicates that Plaintiff Beatty may be seeking to prevent the sale.[6] Plaintiff Beatty's asserted injury is too speculative to support standing.[7]

So is Plaintiff Llorens' asserted injury. Plaintiff Llorens alleges that he "has a pending brutality lawsuit against the municipal police employees who arrested him," *AC* at ¶ 43, and he is apparently concerned that "[s]hould" he "win that lawsuit or attain a monetary settlement" Defendants will seek to recover costs of incarceration under Conn. Gen. Stat. § 18-85b(a). *AC* at ¶ 44. This Court has already correctly held that such allegations are insufficient to support standing in a challenge to Conn. Gen. Stat. § 18-85b(a); "[u]nless and until [Plaintiff Llorens] receives a settlement or monetary damages from the pending action, and the State of Connecticut enforces the costs of incarceration statute against him, [Plaintiff Llorens] has neither an 'actual' or an 'imminent' harm to redress, and therefore does not have standing to bring this claim." *Paschal v. Santili*, 2017 U.S. Dist. LEXIS 104721, at *4-5 (D. Conn. July 6, 2017) (Hall, J.).

_____

[6] This court may "take[ ] judicial notice of public records filed in connection with" the Probate Court proceeding. *Black v. Wrigley*, 2017 U.S. Dist. LEXIS 161824, at *5 (E.D.N.Y. Sep. 30, 2017) (citing *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)). The records in the Probate Court proceeding indicate that Plaintiff Beatty and her brother James—both of whom live at the house—were bequeathed 60% of the estate (A-32), that there may have been violations that needed to be cured before sale (A-36), that Plaintiff Beatty was not cooperating with attempts to sell (A-36), that Plaintiff Beatty has a claim of $198,163.66 against the estate (A-39), and that Plaintiff Beatty is considering "buying out [her] siblings" (A-41).

[7] Even if the Probate Court were to order the sale in the future, it would not vest Plaintiff Beatty with standing in this action; the Second Circuit has emphasized that "the standing inquiry" is "'focused on whether the party invoking jurisdiction had the requisite stake in the outcome <u>when the suit was filed</u>.'" *Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (2d Cir. 2016) (quoting *Davis v. Federal Election Commission*, 554 U.S. 724, 734 (2008) (emphasis in *Chevron Corp.*)). Both the Amended Complaint and the Probate Court records make clear that no sale had been ordered at the time Plaintiffs filed the Amended Complaint. *AC* at ¶ 26.

This Court's decision in *Paschal* involved the straightforward application of United States Supreme Court standing precedent and there is no reason why this Court should reach a different result here. *See id.* at *4-5 (citing cases including *Lujan*, 504 U.S. at 560).[8]

Plaintiffs likewise fail to "allege[ ] facts that affirmatively and plausibly suggest that [Mr. Weissinger] has standing to sue." *Carter*, 822 F.3d at 56 (quotation marks omitted). Although Plaintiffs allege that—unlike Plaintiff Llorens—Plaintiff Weissinger obtained "a settlement" before Plaintiffs filed this action, Plaintiffs do not affirmatively allege the facts necessary to establish that Plaintiff Weissinger has standing. *AC* at ¶ 44. Specifically, Plaintiffs do not allege the amount of Plaintiff Weissinger's settlement and make no assertions as to the other claims that may exist as to its proceeds. Conn. Gen. Stat. § 18-85b(a) (A-3) provides for six categories of claims that have priority over the state's challenged costs of incarceration claim. To hold that Plaintiff Weissinger has standing based on the Amended Complaint's allegations alone would go beyond "simply draw[ing] inferences in his favor,"; it would require the Court to improperly "speculate about an injury that he alleges to be suffering in only the most generic sense." *Carlone v. Lamont*, 2021 U.S. App. LEXIS 32440, at *6 (2d Cir. Nov. 1, 2021) (Summary Order). Such speculation cannot properly support jurisdiction.

Since Plaintiffs fail to establish "the '[f]irst and foremost' of standing's three elements'—injury in fact," the Court should dismiss Plaintiffs' Amended Complaint in its entirety on standing grounds and "need not address traceability or redressability." *Lacewell v. Office of the*

---

[8] Plaintiffs do not offer any details regarding Plaintiff Llorens' suit, including—but not limited to—its merit, at what stage the litigation is, or whether the municipal defendants have made any settlement offers (let alone any settlement offers that would allow the state to assert a claim under Conn. Gen. Stat. § 18-85b(a), given that other claims would have priority). Even if Plaintiff Llorens were to obtain damages or a settlement in the future, it would not vest him with standing in this action; because "the standing inquiry" is "'focused on whether the party invoking jurisdiction had the requisite stake in the outcome <u>when the suit was filed</u>.'" *Chevron Corp.*, 833 F.3d at 121 (quoting *Davis*, 554 U.S. at 734 (emphasis in *Chevron Corp.*)).

*Comptroller of the Currency*, 999 F.3d 130, 141 (2d Cir. 2021) (quoting *Spokeo*, 578 U.S. at 338).

### B. Plaintiffs Lack Standing to Challenge the Statutes and Regulations to the Extent they Have Had No Impact on Plaintiffs

Plaintiffs' claimed injuries are too "conjectural or hypothetical" to support standing at all for the reasons discussed above. *Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (quotation marks omitted). But even if the Court were to somehow conclude that any or all Plaintiffs established standing in some respect (it should not), Plaintiffs' claimed injuries arising from a subset of the statutes and regulations they challenge are not a basis upon which to invalidate the entire statutory and regulatory scheme. *Compare AC* p. 21 ¶ (b) (seeking a declaration that "Conn. Gen. Stat. §§ 18-85a through -85c and their implementing regulations [are] unconstitutional and void"), *with id*. at ¶¶ 14-52 (alleging facts that only appear to implicate Conn. Gen. Stat. §§ 18-85b(a) and 18-85b(b) and related regulations). Plaintiffs must establish standing to challenge each aspect of the statutory and regulatory scheme they ask this Court to invalidate—"standing is not dispensed in gross." *Lewis*, 518 U.S. at 358 n. 6. Plaintiffs "'must establish that [they have] standing to challenge each provision of" the statutes and regulations they seek to challenge "'by showing that [they were] injured by application of those provisions.'" *Butler*, 814 F. Supp. 2d at 240 (quoting *Covenant Media of S.C., LLC*, 493 F.3d at 429-30); *see also Lamar Advertising of Penn, LLC v. Town of Orchard Park*, 2008 U.S. Dist. LEXIS 27647, at *15-25 (W.D.N.Y. Feb. 25, 2008) (holding that the plaintiff had to establish standing as to each aspect of the challenged ordinance and analyzing the applicable Supreme Court and Circuit precedent in detail).

### C. Plaintiffs' Claims Are Not Constitutionally Ripe

Because their claims rest on speculation, supposed facts, and the anticipated future actions of third parties, Plaintiffs' "claims are not constitutionally ripe." *Lacewell*, 999 F.3d at

149-50. Plaintiffs are asking this Court to entangle itself "'in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur.'" *Id.* (quoting *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 110 (2d Cir. 2013)). Plaintiff Beatty offers only speculation as to how the Probate Court may rule. Because Plaintiff Llorens "has not prevailed in [ ]his action, there is no recovery against which a lien may be assessed" and his "claim therefore is not ripe." *Jones* v. *Waldron*, 2018 U.S. Dist. LEXIS 106982, at *9 (D. Conn. June 27, 2018) (Bolden, J.) (rejecting a motion to modify liens issued under Conn. Gen. Stat. § 18-85b(a)). Finally, even though Plaintiff Weissinger is alleged to have obtained a recovery in his state court action, there are insufficient factual allegations to establish that he has been—or will be—required to pay costs of incarceration. Therefore, constitutional ripeness is an additional independent jurisdictional ground for dismissal of the Amended Complaint in its entirety. *See, e.g.*, *Lacewell*, 999 F.3d at 150.

### III.   The Amendments to the Challenged Laws Render Plaintiff Llorens' Claim and Plaintiff Weissinger's Claim Moot and Render Plaintiff Beatty's Claim too Remote and Speculative to Avoid Mootness

Even if Plaintiff Llorens or Plaintiff Weissinger had met their burden to establish standing (they did not), the amendments to the challenged laws render their claims moot. *See, e.g.*, *Lamar Advertising of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 373 (2d Cir. 2004) (addressing whether the plaintiff had standing before holding that amendments to the challenged ordinances rendered the plaintiff's claims moot). Specifically, the amendments limited Conn. Gen. Stat. § 18-85b(a)'s lien against proceeds from causes of action to inmates incarcerated for capitol felonies, murders with special circumstances, felony murder, and some felony sexual offenses. (A-29). The relevant amendment was "*[e]ffective from passage*" in May 2022 "*and applicable to costs of incarceration incurred, before, on or after*" the effective date

(A-29 (emphasis in the Public Act)). Neither Plaintiff Llorens nor Plaintiff Weissinger alleges that he was convicted of one of the covered offenses. *See AC*, ¶¶ 37 & 46 (alleging incarceration for burglary and larceny). Therefore, the amendment to Conn. Gen. Stat. § 18-85b(a) renders their claims moot; in light of the amendments to the challenged laws, their alleged injury—that they will be deprived of portions of the proceeds of their causes of action—"is neither actual nor threatened at this time." *In re Kurtzman*, 194 F.3d 54, 58 (2d Cir. 1999).

The amendment to Conn. Gen. Stat. § 18-85b(a) alone was sufficient to moot Plaintiff Llorens' and Plaintiff Weissinger's claims but the separate amendment to Conn. Gen. Stat. § 18-85a(b) independently moots them as well. That amendment provides that "[i]n addition to" other previously existing exemptions, "up to fifty thousand dollars of other assets shall be exempt" from costs of incarceration for most inmates, including Plaintiff Llorens and Plaintiff Weissinger (A-28). As discussed above, Plaintiff Llorens has not yet obtained—and may never obtain—a recovery on his cause of action and Plaintiff Weissinger makes only vague allegations as to his settlement. To the extent any such recovery would leave or left either Plaintiff with less than $50,000 in assets, Public Act 21-118's amendment to Conn. Gen. Stat. § 18-85a(b) independently moots Plaintiffs' claims.

Public Act 21-118's amendment to Conn. Gen. Stat. § 18-85a(b) also renders Plaintiff Beatty's claim subject to dismissal on mootness grounds. As discussed above, Plaintiff Beatty's alleged injury is based on speculation that the Probate Court "will almost certainly order" the sale of a house and that speculation is insufficient to establish standing. *AC* at ¶ 26. Even if Plaintiff Beatty could establish standing, the facts of the Amended Complaint are insufficient to make it more than speculative that if the Probate Court were to order the sale of the house Plaintiff Beatty's share would exceed the $50,000 exception under Conn. Gen. Stat. § 18-85a(b)

as amended (A-28).[9] Plaintiff Beatty estimates that "her share of the house's value will be approximately \$230,000" but that estimate is expressly "before probate administrative expenses." *AC* at ¶ 27. Those expenses will likely prove to be substantial; the Probate Court file indicates that there may be zoning issues, substantial claims for reimbursement, and assorted other taxes, fees, and expenses. (A-36, 39, 41). The prospect that Plaintiff Beatty will be required to pay costs of incarceration under the amended statutes is too "remote and speculative" to overcome mootness. *Preiser v. Newkirk*, 422 U.S. 395, 403 (1975). Therefore, mootness is an additional independent jurisdictional ground for dismissal of this action in its entirety.

## IV. The Eleventh Amendment Bars Plaintiffs' Claims in their Entirety Because Plaintiffs Name Improper Defendants and Plaintiffs Seek Retrospective Relief

The Eleventh Amendment requires dismissal of Plaintiffs' Amended Complaint for two reasons. First, Plaintiffs' claims against Defendants do not come within the "narrow exception" to the Eleventh Amendment the United States Supreme Court recognized in *Ex parte Young* because neither Defendant is a proper Defendant. *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021). That is fatal to Plaintiffs' claims as pleaded.[10]

Second, "retrospective form[s] of relief [are] barred by the Eleventh Amendment." *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000). To the extent (if any) Plaintiffs have standing and their claims are not moot, the relief Plaintiffs demand is retrospective and the Court should therefore dismiss Plaintiffs' claims on that ground as well.[11]

---

[9] Like the other named Plaintiffs, Plaintiff Beatty is eligible for the exception. *Compare* AC at ¶ 26 (alleging that Plaintiff Beatty was incarcerated for drug charges), *with* Public Act No. 22-118, § 457(b) (A028) (making the exemption available to all inmates, except those incarcerated for certain violent offenses).

[10] Defendants expressly informed Plaintiffs of this argument in the parties' discussions regarding whether Plaintiffs would move to amend or supplement their Amended Complaint following the amendments to the challenged laws. Defendants did so to offer Plaintiffs an opportunity to seek to avoid this issue by naming a proper Defendant. Without explanation, Plaintiffs chose not to seek leave to amend either to name a proper Defendant or to challenge the laws as amended.

[11] This Court need not address the Eleventh Amendment issues if the Court agrees that this action should be dismissed on other grounds, including standing, mootness, or the merits. *See, e.g., Springfield Hospital, Inc. v.*

### A.  The Governor is Not a Proper *Ex parte Young* Defendant

Neither the challenged statutes nor the challenged regulations give the Governor any role in their enforcement. *See* A-1 to A-18 (making no reference to the Governor). As a result, Plaintiffs "do not"—and cannot—"direct this Court to any enforcement authority the" Governor "possesses in connection with" the challenged statutes and regulations "that a federal court might enjoin him from exercising." *Whole Woman's Health*, 142 S. Ct. at 534.

Instead, Plaintiffs name the Governor as a Defendant because he "oversees all of the state's executive branch departments and commissions," *AC* at ¶ 8, including the DOC and the DAS (which do have roles in the challenged statutes and regulations). *Id.* at ¶¶ 9-10, 29, 56. But the Supreme Court made clear in *Ex parte Young* itself that it would be inconsistent with the Eleventh Amendment to hold that

> "the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the State was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the State in litigation involving the enforcement of its statutes."

*Ex parte Young*, 209 U.S. 123, 157 (1908) (quoting *Fitts v. McGhee*, 172 U.S. 516, 530 (1899)). The Eleventh Amendment made it "plain" that for a state officer to be a proper defendant, "such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party." *Id*.

Consistent with *Ex parte Young*, courts have consistently held—and this Court recently reiterated—that for a state official to be a proper defendant it is "[i]mportant" that "the official being sued must have (1) a particular duty to enforce the law in question and (2) a demonstrated

---

*Guzman*, 28 F.4th 403, 2022 U.S. App. LEXIS 6741, at *21 n.17 (2d Cir. Mar. 16, 2022) (citing with approval cases concluding in the Eleventh Amendment context "that there is no need to decide the jurisdictional question before reaching the merits"); *Donohue v. Cuomo*, 980 F.3d 53, 77 n.15 (2d Cir. 2020) (noting that the Court has "declined to address Eleventh Amendment issues" where the appeal could be resolved on other grounds and citing cases).

willingness to exercise that duty." *Urso v. Lamont*, 2021 U.S. Dist. LEXIS 240005, at \*16 (D. Conn. Dec. 15, 2021) (Dooley, J.) (citing cases, including *Roberson v. Cuomo*, 524 F. Supp. 3d 196, 223 (S.D.N.Y. 2021), which collected cases on this issue). As *Ex parte Young* expressly indicates, "[w]ith respect to these requirements, '[a] governor does not meet this exception solely based upon the theory that [he or she], as the executive of the state, was, in a general sense, charged with the execution of all its laws.'" *Id*. (quoting *Hund v. Cuomo*, 501 F. Supp. 3d 185, 197 (W.D.N.Y. 2020), which—in turn—was quoting *Ex parte Young*, 209 U.S. at 157). That requires dismissal of the Governor as a Defendant in this case; the challenged statutes and regulations do not "create or contemplate any duty on the part of the Governor with respect to" their enforcement and given that "the Governor has no 'particular duty to enforce'" the challenged statutes and regulations "it is axiomatic that he has not 'demonstrated willingness to exercise that duty.'" *Id*. at \*17, 21 (quoting *Roberson*, 524 F. Supp. 3d at 223) (dismissing an action against a Governor on Eleventh Amendment grounds); *see also Kuck v. Danaher*, 822 F. Supp. 2d 109, 142-43 (D. Conn. 2011) (Bryant, J.) (dismissing the Governor as a defendant and holding that his appointment of the members of the board at issue did not make him a proper *Ex parte Young* defendant); *Conn. Assn. of Health Care Facilities* v. *Rell*, 2010 U.S. Dist. LEXIS 54649, at \*13-16 (D. Conn. June 2, 2010) (Dorsey, J.) (similar).

### B.  The Attorney General is Not a Proper *Ex parte Young* Defendant

As noted above, the Supreme Court made clear in *Ex parte Young* itself that an "'attorney general'" is not a proper defendant simply because he "'might represent the State in litigation involving the enforcement of its statutes.'" *Ex parte Young*, 209 U.S. at 157 (quoting *Fitts*, 172 U.S. at 530). Nor is the Attorney General a proper Defendant based on his "'general authority to enforce the laws of the state'" any more than the Governor is. *Chrysafis* v. *James*, 534 F. Sup. 3d

272, 293 (E.D.N.Y. 2021) (quoting *HealthNow New York, Inc. v. New York*, 739 F. Supp. 2d 286, 295 (W.D.N.Y. 2010), *aff'd on other grounds*, 448 F. App'x 79 (2d Cir. Sept. 12, 2011) (Summary Order) ("*Health Now*")) (holding that an attorney general was not a proper defendant). Rather, the Attorney General is a proper Defendant only if Plaintiffs' allegations plausibly establish that he has "(1) a particular duty to enforce the law in question and (2) a demonstrated willingness to exercise that duty." *Urso*, 2021 U.S. Dist. LEXIS 240005, at *16 (citing cases, including *Roberson*, 524 F. Supp. 3d at 223, which collected cases on this issue).

Plaintiffs have not met that burden. Their only allegations regarding the Attorney General that even arguably relate to a named Plaintiff is that the Attorney General "has the statutory authority to file collections actions against people owing prison debt." *AC* at ¶ 13 (citing Conn. Gen. Stat. § 18-85a); *see also AC* at ¶ 102 (referencing an action the Attorney General filed against someone other than a named Plaintiff). However, Plaintiffs omit from their allegation that the statute authorizes the Attorney General to bring such actions only "on request of the Commissioner of Correction." Conn. Gen. Stat. § 18-85a(b) (A-1).[12] Plaintiffs do not allege that the Commissioner of Correction has requested that the Attorney General bring suit against a named Plaintiff. In any event, that the Attorney General's duty to enforce Conn. Gen. Stat. § 18-85a exists only at the direction of the Commissioner of Correction precludes a holding that the Attorney General has either "a particular duty to enforce the law in question" or the "demonstrated willingness to exercise that duty" required to make him a proper *Ex parte Young* Defendant. *Urso*, 2021 U.S. Dist. LEXIS 240005, at *16; *see also Kelly v. New York State Civil Service Commission*, 2015 U.S. Dist. LEXIS 27443, at *9 (S.D.N.Y. Jan. 26, 2015) (holding that

---

[12] Plaintiffs acknowledge elsewhere in their Complaint that the Attorney General acts at the direction of the Department of Correction. *See AC,* ¶ 56.

members of a state civil service commission were not proper *Ex parte Young* defendants where the operative decisions were made by local commissions).

Plaintiffs' allegations regarding actions the Attorney General has taken in defending actions against the state or its employees do nothing to change that result. As an initial matter, none of those allegations relate to any named Plaintiff; Plaintiff Beatty's allegations relate to a notice the DAS filed in Probate Court, *AC* at ¶ 29, Plaintiff Llorens' allegations relate to a suit he filed against municipal defendants in which the Attorney General would have no involvement absent a request from an agency, *id*. at ¶¶ 43-44, and Plaintiff Weissinger's allegations relate to a private car accident in which the Attorney General would have no involvement. *Id*. at ¶¶ 48-52. Moreover, and more fundamentally, the Second Circuit has made clear that the Attorney General's duty to defend suits against the state does not make him a proper *Ex parte Young* Defendant. *See Mendez* v. *Heller*, 530 F.2d 457, 460 (2d Cir. 1976); *see also Chrysafis*, 534 F. Supp. 3d at 291-92 (relying in part on *Mendez* in holding that an attorney general's duty to defend did not make her a proper *Ex parte Young* defendant).

Plaintiffs' failure to "name [a] proper defendant" is "'fatal to the[ir] claim[s]'" because of the Eleventh Amendment. *HealthNow*, 739 F. Supp. 2d at 295 (quoting *Confederated Tribes & Bands of Yakama Indian Nation v. Locke*, 176 F.3d 467, 469 (9th Cir. 1999)). For similar reasons, Plaintiffs have "failed to allege a requisite 'case' or 'controversy' against the Attorney General" or the Governor and "therefore lack[ ] standing." *HealthNow*, 448 F. App'x at 82. Whether this Court views the issue as one of a failure to name a proper *Ex parte Young* Defendant or a failure to establish standing "this suit must be dismissed for lack of subject matter jurisdiction." *Id*.[13]

---

[13] The district court in *HealthNow* treated the issue as a failure to name a proper *Ex parte Young* defendant and conducted substantial analysis. *HealthNow*, 739 F. Supp. 2d at 293-98. Although the Second Circuit affirmed on

## C. The Eleventh Amendment Bars Plaintiffs' Claims Because they Seek Retrospective Relief

The Supreme Court has long held—and this Court recently reiterated—that "the *Ex Parte Young* exception extends only to claims for ongoing violations of federal law and that seek prospective injunctive relief." *Campbell*, 2022 U.S. Dist. LEXIS 22999, at *11; *see also Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief."). The Second Circuit has "recognize[d] that in many cases the difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex parte Young* is not as clear cut as the brightness of high noon and the darkness of midnight." *Dairy Mart Convenience Stores, Inc. v. Nickel (In re Dairy Mart Convenience Stores, Inc.)*, 411 F.3d 367, 375 (2d Cir. 2005) ("*Dairy Mart*"). More colorfully, the Second Circuit compared applying this distinction to "examining a subject in that half-light called the gloaming, where to identify it accurately one needs to have the instincts of Argos, Odysseus' dog, who recognized his master dressed as a beggar upon his return home after 20 years' absence." *New York City Health & Hospitals Corp. v. Perales*, 50 F.3d 129, 130 (2d Cir. 1995).

But the Supreme Court and the Second Circuit have left no doubt that a line exists between prospective relief (which is generally permissible) and retrospective relief (which the Eleventh Amendment bars). Here, if the Court somehow concludes that one or all Plaintiffs has standing and their claims are not moot[14], the "relief" Plaintiffs demand falls on the side of the line that is "barred by the Eleventh Amendment." *Dairy Mart*, 411 F.3d at 375.

---

standing grounds, it noted the district court's holding "that the Attorney General was not a proper defendant" without expressing doubt about the district court's analysis. *HealthNow*, 448 F. App'x at 80. As a result, courts have continued to follow the district court's proper defendant analysis and Defendants believe it is appropriate for this Court to do so here. *See, e.g.*, *Chrysafis*, 534 F. Sup. 3d at 292.

[14] Standing and mootness are "threshold issue[s], to be reached even before [the Court] consider[s] the Eleventh Amendment jurisdictional question." *Kostok* v. *Thomas*, 105 F.3d 65, 68 (2d Cir. 1997).

"In discerning on which side of the line a particular case falls, we look to the substance rather than to the form of the relief sought and will be guided by the policies underlying the decision in *Ex parte Young*." *Papasan v. Allain*, 478 U.S. 265, 279 (1986) (citing *Edelman v. Jordan*, 415 U.S. 651, 668 (1974)). The analysis is not based on "formal distinctions" but rather on the "'practical effect'" of the relief sought. *Id.* at 280 (quoting *Edelman*, 415 U.S. at 668). If the relief the plaintiffs demand "is essentially equivalent in economic terms to" an award of "an *accrued* monetary liability," the Eleventh Amendment bars it. *Id.* at 281 (emphasis in *Papasan*) (quotation marks omitted).

The relief Plaintiffs demand meets that standard. Plaintiffs acknowledge that "[e]ach person's debt encompasses costs accrued in the past," *AC* at ¶ 54, and they expressly ask this Court to "declar[e]" Plaintiffs' accrued "prison debt . . . invalid, null, void and unenforceable." *Id.* at p. 20 ¶ (a). If this Court were to grant Plaintiffs the relief they demand, it would be "essentially equivalent in economic terms to" the award of damages for past conduct the Supreme Court has consistently held the Eleventh Amendment bars. *Papasan*, 478 U.S. at 279.[15] "The difference between possible future earnings and present entitlement to future payment has been recognized as marking the line between prospective and retrospective relief." *Barton v. Summers*, 293 F.3d 944, 951 (6th Cir. 2002) (citing *Papasan*, 478 U.S. at 281). Here, Plaintiffs ask this Court to deprive the state of its present entitlement to future payment and—as a result— their claims fall squarely on the retroactive side of the line. That would have a real economic impact on the state; Plaintiffs affirmatively allege that the state "has collected an average of $5.8 million annually from prison debtors over the last five fiscal years." *AC* ¶ 98.

---

[15] *See also Republic of Paraguay v. Allen*, 134 F.3d 622, 628-29 (4th Cir. 1998) (holding that even though the plaintiff nation characterized its claims as prospective based on its present effect on the nation's citizen, "the only presently effective relief sought for the violations claimed and conceded is quintessentially retrospective: the voiding of a final state conviction and sentence").

Although *Papasan* would have involved payment by the state and the relief here would prevent the state from collecting accrued monetary liabilities, the "'practical effect'" of both would be identical; either way, the state is being deprived of a specific monetary value it has an established legal interest in as a result of a federal court's finding that past actions by the state and its officials were unlawful. *Papasan*, 478 U.S. at 280 (quoting *Edelman*, 415 U.S. at 668). "[A] decision in favor of" Plaintiffs "would effectively prevent the State from collecting monies otherwise due to it, and it is difficult to draw a rational distinction between a [debtor's] attempt to recover funds already paid to the state" (which the Eleventh Amendment plainly bars) "from one that seeks to discharge present debts to the state." *Mitchell v. Franchise Tax Board (In re Mitchell)*, 209 F.3d 1111, 1117 (9th Cir. 2000). "It is wholly irrelevant" to the *Ex parte Young* analysis that Plaintiffs seek to enjoin "future" collection; such an injunction "would be the functional equivalent of retrospective monetary damages paid from the state treasury because the amount, obligation and ownership of the funds" covered by the challenged statutes were determined in the past, "rather than upon receipt of the funds" by the state. *Floyd* v. *Thompson*, 111 F. Supp. 2d 1097, 1101 (W.D. Wis. 1999), *aff'd on other grounds*, 227 F.3d 1029, 1034 (7th Cir. 2000); *see also Barton*, 293 F.3d at 950-51 (similar); *Strawser v. Lawton*, 126 F. Supp. 2d 994, 1003 (S.D. W. Va. 2001) (addressing the same issue as *Floyd*, finding that "virtually every court addressing the issue to date has . . . dismiss[ed] on Eleventh Amendment grounds," and citing cases); *but see Harris* v. *Owens*, 264 F.3d 1282, 1291 (10th Cir. 2001) (reaching a contrary result).[16]

---

[16] In the interest of candor, Defendants acknowledge that this Court held that the Eleventh Amendment did not bar an earlier individual challenge to Conn. Gen. Stat. § 18-85b before rejecting the challenge on its merits. *Bonilla v. Semple*, 2016 U.S. Dist. LEXIS 118022, at *6-13 (D. Conn. Sep. 1, 2016) (Bolden, J.). Defendants respectfully submit that this Court should not follow *Bonilla*'s Eleventh Amendment approach for two primary reasons. First, the Court's substantial reliance on a distinction between a payment that a plaintiff has already made and one the plaintiff "has not yet made" was inconsistent with Supreme Court and Second Circuit Eleventh Amendment guidance focusing on the practical effect of the relief sought. *Id*. at 13. Second, as will be discussed in more detail below, the

The Second Circuit's decision in *Williams* v. *Marinelli*, 987 F.3d 188 (2d Cir. 2021), is instructive. *Marinelli* involved an appeal from a decision granting in part and denying in part an inmate's motion for aid of judgment that claimed that 42 U.S.C. § 1983 preempted Conn. Gen. Stat. § 18-85b(a) as the state law applied to the inmate. *Id*. at 195. The state objected to the inmate's motion on *inter alia* Eleventh Amendment grounds. *See id*. The Second Circuit held that the Eleventh Amendment did not bar the motion because the "relief took nothing from the State of Connecticut; it was directed at Marinelli, sued in his individual capacity in this § 1983 action." *Id*. at 197. In so holding, the Court pointed out that "[t]he district court carefully refrained from granting [the inmate's] requests for various forms of monetary relief from the State, including . . . that the State unfreeze the assets in his inmate trust account." *Id*.

The "'practical effect'" of the relief Plaintiffs demand would be similar to the effect of unfreezing the assets in an inmate trust account. *Papasan*, 478 U.S. at 280 (quoting *Edelman*, 415 U.S. at 668). Neither form of relief requires payment from the state treasury. However, both would have the effect of depriving the state of its accrued monetary interests based on a finding that past state conduct was unlawful. Therefore, the Eleventh Amendment bars Plaintiffs' claims as retrospective.

That result is fully consistent with the "policies underlying the decision in *Ex parte Young*." *Papasan*, 478 U.S. at 279. "[P]rinciples of Eleventh Amendment law attempt to strike a balance between the states' sovereign immunity and the supremacy of federal law." *Perales*, 50 F.3d at 134 (citing *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 105 (1984)).

---

Court should not have addressed the complex Eleventh Amendment retroactivity issues given that the Court (correctly) concluded that the plaintiff's action should be dismissed based on a Rule 12(b)(6) analysis. *Compare id.* at *13-19 (granting the defendants' motion to dismiss on Rule 12(b)(6) grounds), *with Guzman*, 2022 U.S. App. LEXIS 6741, at *21 n.18 (noting that in the "Eleventh Amendment context, we have declined to engage in a complex jurisdictional analysis when a straightforward basis of decision was available, thereby avoiding unnecessary issues").

On one side of that balance, "[t]he doctrine of *Ex parte Young* . . .  ensures that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law." *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). By allowing "prospective relief" to ensure future compliance with federal law, "*Ex parte Young* gives life to the Supremacy Clause." *Green*, 474 U.S. at 68. On the other side of the balance, the Eleventh Amendment bars retrospective relief because "compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment." *Id*.

Plaintiffs are seeking to vindicate their compensatory interests in not paying a debt owed to the state that Plaintiffs accrued in the past and has not been paid. Plaintiffs acknowledge the nature of their claims when they allege that "[e]ach person's debt encompasses costs *accrued in the past*." *AC* at ¶ 54 (emphasis added). Erasing Plaintiffs' "*accrued* monetary liability" would effectively compensate Plaintiffs for past state conduct they allege was unlawful. *Papasan*, 478 U.S. at 281 (emphasis in *Papasan*). The retrospective relief Plaintiffs demand is unnecessary to vindicate *Ex parte Young*'s purpose of ensuring Defendants' future compliance with federal law—in the event that a plaintiff with standing brings a ripe claim against a proper defendant that is not moot and the federal courts finally hold the challenged statutes and regulations unconstitutional in that action, Defendants will comply with that ruling and ensure that Plaintiffs do not accrue any additional monetary liability that is inconsistent with federal law.[17] That is not this case.

Defendants believe it is clear that Plaintiffs seek retrospective relief that the Eleventh Amendment bars. If this Court somehow believes the issue is murky, it need not—and should not—wade into these waters at this point if it agrees that Plaintiffs' Amended Complaint cannot

---

[17] To be clear, Defendants believe the challenged statutes and regulations are constitutional for the reasons discussed in detail below.

survive Defendants' Motion to Dismiss on other grounds. In the "Eleventh Amendment context," the Second Circuit has "declined to engage in a complex jurisdictional analysis when a straightforward basis of decision was available, thereby avoiding unnecessary issues." *Guzman*, 2022 U.S. App. LEXIS 6741, at *21 n.18.

That includes when the "straightforward basis of decision" is the merits of Plaintiffs' claims. *Id*. In *Guzman*, the Second Circuit cited with approval cases from other Circuits where "[c]onditional assertions of immunity, essentially a jurisdictional argument in the alternative," led those "courts to conclude that there is no need to decide the jurisdictional question before reaching the merits." *Id*. at *21 n.17 (citing cases, including *Parella v. Ret. Bd. of R.I. Emps.' Ret. Sys.*, 173 F.3d 46, 55 (1st Cir. 1999) and *Floyd*, 227 F.3d at 1035). Where "a particular case presents an easy merits issue (favoring the defendant) and a difficult Eleventh Amendment issue," courts should decide it on non-Eleventh Amendment grounds even if those grounds involve the merits. *Parella*, 173 F.3d at 56. Under the circumstances, the Court should address any and all of Defendants' other grounds for dismissal before deciding whether the Eleventh Amendment bars Plaintiffs' claims. *See id*. at 1034-35.[18]

## V.     The Court Should Dismiss Plaintiffs' Eighth Amendment Claim Because it Fails to State a Claim Upon which Relief Can be Granted

The single Count of Plaintiffs' Amended Complaint asserts that "the challenged statutes and regulations[19] violate the Excessive Fines Clause" of the United States Constitution. *AC* ¶ 123 (citing U.S. Const. amend. 8, cl. 3). The Eighth Amendment provides that "Excessive bail shall

---

[18] In the event that Plaintiffs move for class certification, it will likely raise additional complex Eleventh Amendment issues that the named Plaintiffs' claims do not raise as pleaded.

[19] As discussed above, Plaintiffs' Amended Complaint is based on the challenged laws pre-amendment and Plaintiffs chose not to move to amend or supplement their Amended Complaint to challenge the laws as amended despite having opportunity to do so. Therefore, this analysis is based on the challenged laws as they existed at the time the operative Amended Complaint was filed.

not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII.

The Supreme Court did not "consider[ ] an application of the Excessive Fines Clause" for the first time until 1989. *Browning-Ferris Industries v. Kelco Disposal*, 492 U.S. 257, 262 (1989) ("*Browning-Ferris*").[20] "By its plain language, the Excessive Fines Clause of the Eighth Amendment is violated only if the disputed fees are both 'fines' and 'excessive.'" *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 420 (3d Cir. 2000) (citing *United States v. Bajakajian*, 524 U.S. 321 (1998)).

Consistent with the Excessive Fines Clause's plain language, the first step in the analysis is to "look to the origins of the Clause and the purposes which directed its Framers" to determine whether the challenged fees constituted fines to which the Excessive Fines Clause applied when the Eighth Amendment was ratified in 1791. *Browning-Ferris*, 492 U.S. at 264 n.4; *see Timbs*, 139 S. Ct. at 687 (noting that the Bill of Rights was "ratified in 1791"). If the historical analysis indicates that the Clause did not apply to comparable fees at the time of ratification, that ends the inquiry. *See id.* at 264-276 (holding that the Excessive Fines Clause does not apply to civil punitive damages awards based on a historical analysis).

If the historical analysis indicates that the Excessive Fines Clause applied to comparable fees at the time of ratification, the Court "turn[s] next to" the second step and "consider[s] whether" the challenged fees "are properly considered punishment today" and the Excessive Fines Clause continues to apply. *Austin v. United States*, 509 U.S. 602, 619 (1993). That involves an examination of the relevant statutes and "their legislative history" to determine whether those materials "contradict the historical understanding of" the challenged fees "as punishment." *Id.*

---

[20] The Court did not hold that the Excessive Fines Clause was incorporated by the Due Process Clause of the Fourteenth Amendment and applicable to the states until 2019. *See Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019).

Only if the first two steps establish that the fees are fines for Eighth Amendment purposes does the Court reach the third step and consider whether the fines are "constitutionally 'excessive.'" *Id*. at 622; *see also Bajakajian*, 524 U.S. at 334 ("Because the forfeiture of respondent's currency constitutes punishment and is thus a 'fine' within the meaning of the Excessive Fines Clause, we now turn to the question of whether it is 'excessive.'"). The Court has indicated that a fine "violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Bajakajian*, 524 U.S. at 334. The Court has "emphasized . . . that judgments about the appropriate punishment for an offense belong in the first instance to the legislature." *Id*. at 336. That said, a fine may be constitutionally excessive if "it bears no articulable correlation to any injury suffered by the Government." *Id*. at 340.

"'The burden rests on the [challenger of the fine] to show the unconstitutionality'" of the fine. *Greenport Gardens, LLC v. Village of Greenport*, 2021 U.S. Dist. LEXIS 188876, at *41 (E.D.N.Y. Sep. 30, 2021) (quoting *United States v. Castello*, 611 F.3d 116, 120 (2d Cir. 2010) (quotation marks omitted; modifications in *Greenport Gardens, LLC*)). Plaintiffs have not met— and cannot meet—that burden. "Courts have generally held that charging inmates for room and board to defray costs of incarceration fails to state an actionable constitutional claim under the Eighth Amendment Excessive Fines Clause or the Fourteenth Amendment Due Process Clause." *Hooks v. Kentucky*, 2016 U.S. Dist. LEXIS 103238, at *6-7 (W.D. Ky. Aug. 4, 2016) (citing cases). This Court should reach the same result here; costs of incarceration payments serve remedial purposes that the Supreme Court has held are outside the historical and modern domain of the Excessive Fines Clause and such payments, by their nature, are not grossly disproportionate to the cost an inmate's incarceration imposes on the state and its citizens.

### A. Requiring Inmates to Contribute Toward the Costs of their Incarceration was Not Considered a Fine or Punishment when the Eighth Amendment was Ratified

"The Eighth Amendment received little debate in the First Congress and the Excessive Fines Clause received even less attention." *Browning-Ferris*, 492 U.S. at 264. However, by its terms, "the Amendment is addressed to bail, fines, and punishments," so Supreme Court "cases long . . . understood it to apply primarily, and perhaps exclusively, to criminal prosecutions and punishments." *Id*. at 262. "Simply put, the primary focus of the Eighth Amendment was the potential for governmental abuse of its 'prosecutorial' power . . ." *Id*. at 266. Consistent with that, "[i]n the absence of direct evidence of Congress' intended meaning" as to the Excessive Fines clause, the Supreme Court found "it significant that at the time of the drafting and ratification of the Amendment, the word 'fine' was understood to mean a payment to a sovereign as punishment for some offense." *Id*. at 265.

The Supreme Court has since held that the Excessive Fines Clause applies outside the purely criminal context—specifically to some civil *in rem* forfeitures—but the Court has continued to emphasize that "[t]he Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.'" *Austin*, 509 U.S. at 610 (quoting *Browning-Ferris*, 492 U.S. at 265 (emphasis in *Austin*)). Therefore, the initial question before this Court is whether "at the time the Eighth Amendment was ratified" a sovereign's requirement that inmates contribute toward the costs of their incarceration would have been "understood at least in part as punishment." *Id*. If not, the Excessive Fines Clause does not apply. *Browning-Ferris*, 492 U.S. at 264 n.4.

The Court should dismiss Plaintiffs' claim as a matter of law because costs of incarceration fees are outside the Excessive Fines Clause's domain. *See, e.g.*, *Merritt v. Shuttle, Inc.*, 13 F. Supp. 2d 371, 383 (E.D.N.Y. 1998), *remanded on other grounds*, 187 F.3d 263 (2d Cir. 1999) (granting a motion to dismiss an Eighth Amendment claim where the plaintiff did not allege that he was required to "pay a fine" nor did he allege that he was subjected to "'punishment' within the scope of the Eighth Amendment"). The Supreme Court has made clear that statutes requiring the payment of money to secure the rights of the government were not historically "considered punishments for criminal offenses." *Bajakajian*, 524 U.S. at 341. Rather, such statutes were considered "'fully . . . remedial in . . . character,'" and therefore the Eighth Amendment did not apply to them. *Id*. at 342 (quoting *Stockwell v. United States*, 80 U.S. 531, 13 Wall. 531, 546 (1871)). Such forfeitures "have been recognized as enforcible by civil proceedings since the original revenue law of 1789" and "[i]n spite of their comparative severity," their "remedial character. . . has been made clear by this Court in passing upon similar legislation." *Helvering v. Mitchell*, 303 U.S. 391, 400-01 (1938). They are remedial because "[t]hey are provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." *Id*. at 401.

Supreme Court precedent establishes that where the consequences of an individual's actions negatively impact the public fisc, remedying that impact via statutes that allow the government to seize the individual's funds was historically considered "'a fit subject for indemnity.'" *Bajakajian,* 524 U.S. at 341 (quoting *Stockwell*, 13 Wall. at 546). That was true even where "the forfeiture was a multiple of the value of the goods" involved in the criminal action; where there was an impairment of a "'government right,'" the government could recover

multiples of the value of the goods to remedy that impairment by statute without it being punishment governed by the Eighth Amendment. *Id.* (quoting *Stockwell*, 13 Wall. at 546). "Because they were viewed as nonpunitive, such forfeitures traditionally were considered to occupy a place outside the domain of the Excessive Fines Clause." *Id.* at 331. The Second Circuit has likewise recognized that "forfeitures . . . intended not to punish the defendant but to compensate the Government for a loss . . . fall outside the scope of the Excessive Fines Clause." *United States v. Viloski*, 814 F.3d 104, 109 (2d Cir. 2016) (citing *Bajakajian*, 524 U.S. at 329).

That logic applies with equal force here and requires dismissal of Plaintiffs' claims; at ratification the payments required by the costs of incarceration statutes would have been "considered not as punishment for an offense, but rather serving the remedial purpose of reimbursing the Government for the losses accruing from" the individual's imprisonment. *Bajakajian*, 524 U.S. at 342. "[T]he concept that jail inmates could be made to pay some type of room and board or confinement cost has deep roots in the Anglo-American legal tradition" and "[i]n the United States, versions of this general requirement have been imposed on inmates since the Colonial Era." Leah A. Plunkett, *Article: Captive Markets*, 65 Hastings L.J. 57, 65-66 (Dec. 2013) (footnotes omitted); *see, e.g.*, *Souza* v. *Sheriff of Bristol County*, 918 N.E.2d 823, 829 n.9 (2010) (noting that there was no dispute that sheriffs were historically authorized to charge inmates certain fees for *inter alia* "'diet'" and citing laws as early as 1663). "Reimbursement for services rendered" is not "properly labeled a 'fine'" for Eighth Amendment purposes. *United States v. Leone*, 813 F. App'x 665, 669-70 (2d Cir. 2020) (Summary Order) (citing *Bajakajian*, 524 U.S. at 327-28) (holding that a Monitoring Condition requiring the payment of the "full cost of monitoring services" was not a fine covered by the Eighth Amendment).

**B. Requiring Inmates to Contribute Toward the Costs of their Incarceration is Not Punishment Today**

Given that the historical analysis establishes that the costs of incarceration fees would not have been considered fines, the Court need not determine whether the passage of time has changed matters in a way that would lead to a different result. *See, e.g.*, *Browning-Ferris*, 492 U.S. at 273-76 (holding that the modernizing aspect of the Court's Eighth Amendment jurisprudence did not have force where the challenged action was not "a strictly modern creation"). In any event, modern jurisprudence establishes that costs of incarceration fees are not "properly considered punishment today." *Austin*, 509 U.S. at 619.[21]

As noted above, courts to address the issue "have generally held that charging inmates for room and board to defray costs of incarceration fails to state an actionable constitutional claim under the Eighth Amendment Excessive Fines Clause or the Fourteenth Amendment Due Process Clause." *Hooks*, 2016 U.S. Dist. LEXIS 103238, at *6-7 (citing cases). The Third Circuit's decision in *Tillman* is instructive. Like this action, *Tillman* involved an Excessive Fines Clause challenge to a program requiring a prisoner to pay costs associated with his incarceration. *See Tillman*, 221 F.3d at 413.

The Third Circuit rejected the Excessive Fines Clause challenge. *See id*. at 420-21. The court began by analyzing whether the requirement that the prisoner pay costs constituted a "fine" for purposes of the Eighth Amendment. *See id*. at 420. The court reasoned that "[t]he fees here . . . do not appear to fit that mold" for multiple reasons: (1) "A prisoner's term of incarceration cannot be extended, nor can he be reincarcerated, for failure to pay a negative

---

[21] As discussed above, given that Plaintiffs chose not to seek to amend or supplement, "today" for purposes of this analysis is when the operative Amended Complaint was filed (before the challenged laws were amended). To be clear, the challenged laws were constitutional at the time the Amended Complaint was filed, and the costs of incarceration statutes remain constitutional post-amendment. Defendants will detail the analysis of the statutes post-amendment if and when that issue is presented.

34

balance."; (2) "The daily fees do not vary with the gravity of the offense and can neither be increased nor waived."; (3) "[T]he undisputed evidence show[ed] that the fees" were not "being used to punish"; and (4) "[T]he fees c[ould] hardly be called fines when they merely represent[ed] partial reimbursement of the prisoner's daily cost of maintenance, something he or she would be expected to pay on the outside." *Id.*; *see also* 28 C.F.R. § 505.1 ("establish[ing] procedures for the assessment and collection of a fee to cover the cost of incarceration" and distinguishing between that "fee imposed by the Bureau" and a "fine" imposed by the court).[22]

Similarly, the costs of incarceration statues at issue do not fit the "mold" of constitutional fines. *See Tillman*, 221 F.3d at 420.The "nature of the statute[s]" at issue is "more important to the inquiry" than some other factors. *United States v. An Antique Platter of Gold*, 184 F.3d 131, 140 (2d Cir. 1999). The nature of the statutes challenged here is non-punitive; their "language . . . suggests a non-punitive purpose." *LeDuc v. Tilley*, 2005 U.S. Dist. LEXIS 12416, at *13 (D. Conn. June 21, 2005) (Kravitz, J.).[23] Plaintiffs' terms of incarceration cannot be extended and they cannot be incarcerated for failure to pay. *See Tillman*, 221 F.3d at 420. The daily fee is calculated as an average and is uniform across all inmates, regardless of their offense. *See Regs. of Conn. State Agencies* § 18-85a-1(a) (A-14). The fees cannot be increased or waived based on the gravity of the offense. *See Tillman*, 221 F.3d at 420.[24]

---

[22] The Third Circuit ultimately did not decide whether the costs were fines because it concluded "as a matter of law that the amounts were not 'excessive' under the Eighth Amendment" and rejected the Excessive Fines Clause challenge on that basis. *Id.* at 421. However, courts have followed the Third Circuit's analysis on the fine issue and this Court should as well. *See, e.g.*, *Benjamin v. Clark*, 2021 U.S. Dist. LEXIS 21191, at *13-14 (M.D. Pa. Feb. 4, 2021).

[23] *See also State v. Strickland*, 2002 Conn. Super. LEXIS 3714, at *11, 36 Conn. L. Rptr. 21 (Nov. 18, 2002), *aff'd on other grounds*, 86 Conn. App. 677 (2004) (finding that "the legislation on its face has the significant non-punitive goals of reimbursement of taxpayer expenses and, to a degree, rehabilitation in the sense that inmates realize that they have some responsibility for their own care").

[24] The challenged laws for purposes of the Amended Complaint did not condition the fees based on the inmate's offense. By contrast, the amendments to the challenged laws do deny certain exemptions to inmates incarcerated for certain types of murder and sexual offenses. Counseled Plaintiffs chose not to move to amend or supplement to challenge the challenged laws as amended, perhaps because none of the named Plaintiffs were incarcerated for murder or sexual offenses.

In addition, the legislative history of the challenged statutes indicates that they were primarily intended for the remedial purpose of reimbursing the state for some of the costs resulting from inmates' incarceration and are not "being used to punish." *Id.*; *see also Bajakajian*, 524 U.S. at 342 (the Eighth Amendment does not apply to statutes that are "'fully . . . remedial in . . . character'" (quoting *Stockwell*, 13 Wall. at 546); *Austin*, 509 U.S. at 619 (looking to provisions' "legislative history to" determine whether they constituted "punishment" for Eighth Amendment purposes). "[I]t is apparent from a review of the full legislative history of the enactment that the General Assembly's intention in passing the legislation was, primarily, the recoupment of expense and not punishment for the prior crime." *Strickland*, 2002 Conn. Super. LEXIS 3714, at *12. The secondary purpose was to ensure inmates understand the financial impacts of their incarceration. *Id.* "A thorough review of the legislative history shows that the only mention of 'punishment' was advanced by the Connecticut Civil Liberties Union, which opposed the bill in its entirety." *Id*. at *14. Under Connecticut law, "[t]his opposition cannot, of course, be used to determine legislative intent." *Id*.[25] As the Connecticut Superior Court found in striking an Eighth Amendment defense to an action brought by the state pursuant to Conn. Gen. Stat. § 18-85a, "neither the legislative history nor the specific wording of the statute in question impose 'punishment.'" *State* v. *Sebben*, 2018 Conn. Super. LEXIS 9902, at *3 (Apr. 19, 2018).[26]

The text and legislative history of the challenged laws indicates that they were primarily intended for the remedial purpose of partially reimbursing the state for the cost of Plaintiffs' incarceration and to serve purely remedial purposes. Both the Supreme Court and the Second

---

[25] The remedial nature of the costs of incarceration mechanisms at issue here and in *Tillman* distinguishes them from the mechanism the Ninth Circuit held constituted a fine in *Wright v. Riveland*, 219 F.3d 905, 915-16 (9th Cir. 2000).

[26] *See also Alexander v. Commissioner of Administrative Services*, 2003 Conn. Super. LEXIS 3197, at *12 (Nov. 12, 2003), *aff'd*, 86 Conn. App. 677 (2004) ("[R]andom liens, like random tax audits, are not criminal punishments and are constitutionally permissible as long as they are neither invidiously nor illegitimately employed.").

Circuit have made clear that "'the Excessive Fines Clause prohibits only the imposition of 'excessive' fines, and a fine that serves purely remedial purposes cannot be considered 'excessive' in any event." *United States v. Ortiz*, 1999 U.S. App. LEXIS 13322, at *3 (2d Cir. June 11, 1999) (Summary Order) (quoting *Ursery*, 518 U.S. at 287).[27] That is true even when the amount of the payment is large. *See, e.g., United States v. Puello*, 2016 U.S. Dist. LEXIS 19760, at *7, *11 (E.D.N.Y. Feb. 18, 2016) (holding that the government's recovery of "$39,462,079.00" was purely remedial where "defendants received reimbursement from the government to which they were not entitled and were thereby enriched at the expense of the government"); *Island Park*, 2008 U.S. Dist. LEXIS 88677, at *17-18 (rejecting an Excessive Fines Clause claim where the "judgment of $ 5,206,048 was entirely remedial").[28]

"Absent a showing that" the challenged statutes were "enacted for punitive purposes," Plaintiffs' "excessive-fines claim[s]" should "fail[ ]." *Blaise v. McKinney*, 1999 U.S. App. LEXIS 15669, at *3 (8th Cir. July 12, 1999) (Per Curiam) (Unpublished) (affirming a district court's rejection of an Excessive Fines Clause challenge to a "'pay-for-stay' incarceration fee"

---

[27] *See also Abrahams v. Conn. Dept. of Social Services*, 2018 U.S. Dist. LEXIS 27870, at *23 (D. Conn. Feb. 21, 2018) (Haight, J.) (rejecting an Excessive Fines Clause claim where "the Defendants sought to recover monies fraudulently obtained from the state of Connecticut" and holding that"[t]he monetary recovery sought was remedial, not punitive, in nature," citing *U.S. v. Davis*, 648 F.3d 84, 96 (2d Cir. 2011)).; *United States v. Inc. Village of Island Park*, 2008 U.S. Dist. LEXIS 88677, at *17-18 (E.D.N.Y. Oct. 22, 2008) ("*Island Park*") (rejecting an Excessive Fines Clause challenge to False Claims Act penalties, holding that Supreme Court and Second Circuit precedent "compelled" the conclusion that the penalties were remedial because they were intended to make the government "completely whole" (citing *United States v. Bornstein*, 423 U.S. 303, 313 (1976) and *United States ex rel Stevens v. State of Vermont*, 162 F.3d 195, 207 (2d Cir. 1998)); *Ford Motor Credit Co. v. New York City Police Dept.*, 394 F. Supp. 2d 600, 618 (S.D.N.Y. 2005) (holding that a deduction was "not subject to Eighth Amendment analysis" because it "was remedial, as it is imposed to compensate the City for administrative expenses incurred in the disposition of the vehicles" and "plainly not punitive").

[28] The amount of the fees is not part of the analysis of whether they are fines for Eighth Amendment purposes; the Supreme Court has stated that "[i]t is unnecessary in a case under the Excessive Fines Clause to inquire at a preliminary stage whether the civil sanction imposed in that particular case is totally inconsistent with any remedial goal." *United States v. Ursery*, 518 U.S. 267, 287 (1996). "Because the second stage of inquiry under the Excessive Fines Clause asks whether the particular sanction in question is so large as to be excessive, a preliminary-stage inquiry that focused on the disproportionality of a particular sanction would be duplicative of the excessiveness analysis that would follow." *Id.* (internal citation omitted).

(citing *Austin*, 509 U.S. at 609)).[29] The challenged costs of incarceration statutes and regulations serve remedial purposes[30] and the Court should therefore dismiss Plaintiffs' claim under the Excessive Fines Clause as a matter of law.

Modern jurisprudence, the provisions at issue, and their "legislative history" are consistent with "the historical understanding" that requiring Plaintiffs to contribute to the costs associated with their incarceration is not "punishment" for Eighth Amendment purposes. *Austin*, 509 U.S. at 619. Rather, requiring Plaintiffs to contribute "serve[s] the remedial purpose of compensating the Government for [the] loss" associated with incurring the costs related to Plaintiffs' incarceration. *Bajakajian*, 524 U.S. at 329 (citing Black's Law Dictionary 1293 (6th ed. 1990) and *One Lot Emerald Cut Stones v. United States*, 409 U.S. (1972) (Per Curiam)). As a result, this Court should dismiss Plaintiffs' Excessive Fines Clause claim as a matter of law.

### C.  The Costs of Incarceration Are Not Excessive

This Court need not—and should not—reach the issue of excessiveness given that the challenged statutes are remedial and therefore outside the Excessive Fines Clause's scope. *See, e.g.*, *Ursery*, 518 U.S. at 287. In the event the Court does reach the excessiveness analysis, Plaintiffs bear a heavy burden; they must show that the challenged fees are "'*grossly* disproportional to the gravity of the defendant's offense.'" *Viloski*, 814 F.3d at 113 (quoting *Bajakajian*, 524 U.S. at 337 (emphasis in *Viloski*)). The applicable test "is highly deferential" to the legislative determination at issue. *Id.* (quotation marks omitted).

---

[29] *See also In re Personal Restraint of Metcalf*, 963 P.2d 911, 919-20 (Wash. App. 1998) (rejecting an Excessive Fines Clause challenge to a costs of incarceration fee, holding that "[t]he purpose of collecting reimbursement for costs of incarceration is thus remedial, not punitive").

[30] The challenged provisions were designed "solely to serve a remedial purpose" and therefore are not punitive. *Austin*, 509 U.S. at 610. Even if there could be any doubt that the provisions are solely remedial, since *Austin*, the Supreme Court and the Second Circuit have indicated that a statute can be remedial even if it "'serves a variety of purposes'" as long as it is "'designed primarily'" to be remedial. *Ortiz*, 1999 U.S. App. LEXIS 13322, at *3 (quoting *Ursery*, 518 U.S. at 284). The challenged laws easily meet that standard.

Whether the costs of incarceration assessed on Plaintiffs are constitutionally excessive is a question of law at this stage and under these circumstances. *See Wright*, 219 F.3d at 916-18; *see also Bajakajian*, 524 U.S. at 336 n.10 (holding that "the question of whether a fine is constitutionally excessive calls for the application of a constitutional standard to the facts of a particular case[31], and in this context *de novo* review of that question is appropriate"). This Court should reject Plaintiffs' claims as a matter of law; as the Ninth Circuit reasoned, "[b]y definition, it seems that a fine based on a criminal's cost of incarceration will always be proportional to the crime committed." *Wright*, 219 F.3d at 917. "'Because lengthier sentences are more costly, a fine linked to the convict's costs of incarceration reflects the degree of harm caused by the convict's offense.'" *Id.* (quoting *United States v. Zakhor*, 58 F.3d 464, 466 (9th Cir. 1995)).

The challenged statutes and regulations base the assessed cost of incarceration on the costs the state incurs resulting from the inmate's incarceration. Regs. of Conn. State Agencies § 18-85a-1(a) (A-14). Plaintiffs are critical of the amount of those assessed costs but Plaintiffs do not allege that the assessed costs do not, in fact, reflect the costs to the state. Nor could Plaintiffs credibly make such allegations. *See, e.g.*, *State v. Sebben*, 243 A.3d 365, 376 (Conn. Super. 2019), *aff'd*, 201 Conn. App. 376 (2020), *cert. denied*, 336 Conn. 919 (2021) (rejecting a former inmate's argument that the costs of incarceration sought by the state were "based upon an unreliable calculation").[32] The costs Plaintiffs have been assessed reflect a portion—and only a portion[33]—of the costs the state (and, by extension, the state's taxpayers) have borne as a result

---

[31] At this stage and for purposes of this Motion, the Court—and Defendants—must take Plaintiffs' properly pled facts as true and assess whether Plaintiffs' Amended Complaint states a claim as a matter of law.

[32] To the extent Plaintiffs have concerns about the accuracy of the cost calculations, they may challenge the costs in the state collection proceedings. *See, e.g.*, *Sebben*, 243 A.3d at 375-77 (addressing an objection based on the alleged unreliability of the calculation of the costs of incarceration). That would preclude Plaintiffs' claims if they could somehow be construed as being based on incorrect calculations; "[a] § 1983 claim" is "unavailable" where Plaintiffs "have an adequate state-law remedy" to challenge the calculations' accuracy. *Gilbert v. Sinclair*, 2019 U.S. Dist. LEXIS 122727, at *9 (W.D. Wash. May 22, 2019).

[33] Regardless of the amount owed, the state's recovery is limited to no more than half of the proceeds of a cause of

of Plaintiffs' actions that resulted in their incarceration. As a matter of law, they are not constitutionally excessive; Plaintiffs do not—and cannot—plausibly allege that they have been required to pay costs that are "'*grossly* disproportional to the'" costs the state has had to pay as a result of Plaintiffs' incarceration. *Viloski*, 814 F.3d at 113 (quotation marks omitted; emphasis in *Viloski*); *see also United States v. 38 Whalers Cove Drive*, 954 F.2d 29, 32, 39 (2d Cir. 1991) (holding that even if a $68,000 forfeiture was "truly a punishment," it did not violate the Excessive Fines Clause in the context of a $250 drug sale).

### D. The Eighth Amendment is Inapplicable to the Extent Plaintiffs' Claims are Based on Pretrial Detention

Plaintiffs' Amended Complaint relies in part on allegations relating to pretrial detainees. *See AC* ¶¶ 1, 30, 60, & 82. "[T]he Eighth Amendment has no application" to pretrial detainees. *Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983). To the extent Plaintiffs rely on allegations relating to when they were "pre-trial detainee[s]," their "claims [a]re governed by the due process clause, rather than the eighth amendment." *Covino v. Vermont Dept. of Corrections*, 933 F.2d 128, 129 (2d Cir. 1991) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)). Therefore, the Court should dismiss Plaintiffs' Eighth Amendment claims to the extent they are based on pretrial detention. *See, e.g.*, *Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 250 (4th Cir. 2005).

## V. Conclusion

For the foregoing reasons, Defendants respectfully request that the Court grant this Motion and dismiss Plaintiffs' Amended Complaint in its entirety.

---

action (after the payment of expenses) or inheritance received within twenty years of release, *see* Conn. Gen. Stat. § 18-85b (A-3), and an inmate's general liability both is limited by several exceptions, including one that exempts most property "acquired by such inmate after the inmate is released from incarceration," and is also time-limited to two years after release (absent fraudulent concealment). *See* Conn. Gen. Stat. § 18-85a (A-1).

Respectfully submitted,

DEFENDANTS

GOVERNOR NED LAMONT

ATTORNEY GENERAL WILLIAM TONG

WILLIAM TONG
ATTORNEY GENERAL

BY: */s/ Robert J. Deichert*
Robert J. Deichert (ct24956)
Krislyn Launer (ct31041)
Benjamin Abrams (ct29986)
Assistant Attorneys General
Attorney General's Office
165 Capitol Avenue
Hartford, CT 06106
860-808-5020 (phone)
860-808-5347 (fax)
Robert.Deichert@ct.gov
krislyn.launer@ct.gov
benjamin.abrams@ct.gov
*Attorneys for Defendants*

**<u>Certificate of Service</u>**

I hereby certify that on June 17, 2022 a copy of the foregoing was electronically filed.

Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic

filing system.  Parties may access this filing through the Court's system.


_/s/ Robert J. Deichert_
Robert J. Deichert
Assistant Attorney General