IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TERESA BEATTY, *et al.*, | : | 3:22-cv-00380-JAM |
| *Plaintiffs*, | : | |
| v. | : | |
| NED LAMONT, *et al.*, | : | |
| *Defendants*. | : | AUGUST 5, 2022 |

**Defendants' Reply Memorandum in Support of their Motion to Dismiss**

Plaintiffs explicitly "concede that the Eleventh Amendment bars" their claims against the Governor. *Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss*, p. 15 n.5 (No. 31) ("*Opp.*").[1] The remainder of Plaintiffs' Opposition is characterized by attacks, distortions, and arguments that do nothing to undermine Defendants' arguments.

**I.   The General Assembly Clearly Intended to Narrow the Group of People Required to Pay Prison Debt from Proceeds of Causes of Action and that Rendered Plaintiffs Wessinger and Llorens' Claims Moot**

Connecticut courts "have long followed the guideline that the intent of the lawmakers is the soul of the statute, and the search for this intent we have held to be the guiding star of the court. It must prevail over the literal sense and the precise letter of the language of the statute." *Butler ex rel. Skidmore v. Hartford Technical Institute, Inc.*, 243 Conn. 454, 462 (1997) (quotation marks omitted).[2] Plaintiffs concede that "Plaintiffs Weissinger and Llorens are not among the narrowed group of people the legislature thought should still pay prison debt" under the challenged statutes as amended. *Opp.*, p. 13. That should be dispositive; the parties agree that the General Assembly clearly intended that Plaintiffs Weissinger and Llorens not be required to pay costs of incarceration from the proceeds of their causes of action.

---

[1] This concession is notable, given that Plaintiffs represented at page 5 of their Opposition to Defendants' pending Motion to Stay Discovery (No. 25) that they would "demonstrate that both the Governor and the Attorney General" were proper *Ex parte Young* Defendants. Plaintiffs' concession that some of their claims are jurisdictionally barred should remove any doubt that this Court must grant the stay Defendants request in that Motion.

[2] This Court is "bound to interpret Connecticut law according to Connecticut's own interpretive rules." *Martin v. Hearst Corp.*, 777 F.3d 546, 550 (2d Cir. 2015) (quotation marks omitted).

1

Instead of celebrating, Plaintiffs Weissinger and Llorens argue that they remain liable because, even though the General Assembly's intent to eliminate their liability is clear to everyone, a "seeming[ ] conflict" between two sections of the 512-section, 739-page budget Act somehow deprives them of that benefit. *Opp.*, p. 13. This Court should reject that argument. Connecticut Supreme Court precedent establishes that the sections "are not in conflict" when viewed in the context of the Connecticut statutes governing legislative drafting and therefore "are entitled to concurrent effect." *State* v. *Kozlowski*, 199 Conn. 667, 671-72, 681 (1986) (reversing a decision holding that prefatory "repealed" and "substituted" language similar to that at issue here created a conflict because the trial court failed to properly apply Conn. Gen. Stat. § 2-30b).[3] Section 457 of Public Act 22-118 mooted Plaintiffs Weissinger and Llorens' claims.

## II.   The Amendment Adding an Additional $50,000 Exemption Independently Moots Plaintiffs' Claims

Defendants argued that the amendment to Conn. Gen. Stat. § 18-85a providing that "'in addition to' other existing exemptions, 'up to fifty thousand dollars of other assets shall be exempt' from costs of incarceration" independently moots Plaintiffs' claims. *Defendants' Memorandum in Support of their Motion to Dismiss*, p. 17 (No. 23-1) ("*MTD*"). Again, instead of celebrating, Plaintiffs argue that "while all three Plaintiffs very much wish the $50,000 safe harbor applied to them, it would appear not to" because "the amendment to § 18-85a states that it applies to people whose assets fall 'under this section'; *i.e.* § 18-85a" and "Plaintiffs' assets fall under § 18-85b." *Opp.*, p. 14 (quoting Public Act No. 22-118, § 457(a)). Contrary to Plaintiffs' representation, the

---

[3] *State v. Bischoff*, 337 Conn. 739, 748 n.5 (2021) does not meaningfully support Plaintiffs' argument; the Court mentioned Connecticut's approach to legislative drafting in the unrelated context of determining retroactive application of changes to criminal statutes. The Connecticut Supreme Court's decision in *Kozlowski* controls here. *See, e.g.*, *Martin*, 777 F.3d at 550. Nothing Plaintiffs argue undermines that conclusion. Defendants believe this is clear, but, to the extent the Court believes there is any uncertainty, *Pullman* abstention or, in the alternative, certification would be necessary.

2

amendment does not apply "to people whose **assets fall 'under this section.'**" *Id*. (emphasis added). Rather, it exempts people "**from a claim made under this section**"—the section that is the source of the state's claims "against each inmate for the costs of such inmate's incarceration." Public Act No. 22-118, § 457(a) (emphasis added). Therefore, Plaintiffs' argument lacks merit.[4] That establishes that all of Plaintiffs' claims are moot.

### III. Second Circuit Precedent Establishes that the Voluntary Cessation Doctrine Does Not Allow Plaintiffs to Pursue their Claims Even though their Claims Are Moot

In a footnote, Plaintiffs argue that the voluntary cessation doctrine allows them to continue to pursue their claims even if they would otherwise be moot. *Opp.*, p. 14 n.5. Plaintiffs are incorrect. Defendants cited a Second Circuit decision that rejected a voluntary cessation argument and "stated that 'constitutional challenges to statutes are routinely found moot when a statute is amended.'" *Lamar Advertising of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 376 (2d Cir. 2004) (Sotomayor, J.) ("*Lamar*") (quotation marks omitted)). Plaintiffs make no effort to distinguish *Lamar*. Nor do Plaintiffs cite any other binding precedent on the issue. Instead, Plaintiffs cite only a district court decision that held that the voluntary cessation doctrine did not moot claims challenging a COVID-19 closure order because, although the Governor had relaxed his Executive Order, there were "extraordinary circumstances" and "a second wave of COVID-19 infections could be just around the corner" which could lead the Governor to unilaterally reverse the change. *Dark Storm Industries Llc v. Cuomo*, 471 F. Sup. 3d 481, 494 (N.D.N.Y. 2020) ("*Dark Storm*").

This Court should reject Plaintiffs' argument for two primary reasons. First, and most fundamentally, Plaintiffs neglect to inform the Court that the Second Circuit dismissed an appeal

---

[4] Notably, Plaintiffs do not dispute that "the facts of the Amended Complaint are insufficient to make it more than speculative that if the Probate Court were to approve the sale of the house Plaintiff Beatty's share would exceed the $50,000 exception under Conn. Gen. Stat. § 18-85a(b) as amended." *MTD*, pp. 17-18.

3

in *Dark Storm* as moot and remanded to the district court with instructions to vacate its judgment because the district court **erred in holding that the voluntary cessation doctrine allowed the plaintiffs to avoid a finding of mootness**. *See Dark Storm Industries LLC v. Hochul*, 2021 U.S. App. LEXIS 29863, at *1-4 (2d Cir. Oct. 5, 2021) (Summary Order). Second, the circumstances here are obviously different from those in *Dark Storm*; the Second Circuit has made clear that where—as here—changes to legislation are at issue, courts should be "[m]indful of the deference due the legislative body" and "hesitant to hold that a significant amendment or repeal of a challenged provision that obviates the plaintiff's claims does not moot a litigation, absent evidence that the defendant intends to reinstate the challenged statute after the litigation is dismissed, or that the [government] itself does not believe that the amendment renders the case moot." *Lamar*, 356 F.3d at 377.[5] Neither of those circumstances is present here; even if the Attorney General were a proper Defendant (he is not), Plaintiffs have provided—and Defendants are aware of—no evidence that the General Assembly intends to reinstate Plaintiffs' liability and Defendants believe the amendments render the case moot. *See id.*[6]

## IV. Plaintiffs Have Not Met their Burden to Establish Standing or Ripeness

Plaintiffs' standing and ripeness arguments notably lack support in either legal authority or the factual allegations in Plaintiffs' Amended Complaint. *See Opp.*, pp. 6-12. To meet their burden to establish standing, Plaintiffs had to allege facts that establish a concrete injury—"[a] 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). None of the Plaintiffs met that burden. The gravamen of Plaintiffs' argument appears to

---

[5] *See also Town of Portsmouth v. Lewis*, 813 F.3d 54, 59 (1st Cir. 2016) (noting that "the Supreme Court has not" applied "the voluntary cessation exception when considering the conduct of . . . state legislatures. Rather, it has consistently and summarily held that a new state statute moots a case, without engaging in further inquiry").
[6] *See also Dark Storm,* 2021 U.S. App. LEXIS 29863, at *3 (holding that "[a] defendant satisfies its burden" to avoid the voluntary cessation doctrine "where it shows that the possibility of recurrence is merely speculative").

be that they are "harmed by the very existence" of the state's claims "by remaining under the threat of enforcement for 20 years after release from prison." *Opp.*, p. 8. But Plaintiff Beatty was released in 2002. *AC*, ¶ 15. It is now 2022—20 years later. As of now, the claimed injury to Plaintiff Beatty is speculation that her inheritance may be reduced if a house—"the only remaining item" in her mother's estate, *id*. at ¶ 25—is someday sold. It is purely speculative to assume that Plaintiff Beatty will "los[e] inheritance . . . proceeds," *Opp.*, p. 10, and given that Plaintiff Beatty has now been out of prison for 20 years no further injury will be forthcoming. Similarly, Plaintiffs did not plead facts to establish that Plaintiff Weissinger was "faced with losing . . . settlement proceeds" as a result of the challenged laws before they were amended—whether he would have to pay any costs of incarceration depended on facts Plaintiffs chose not to allege. *Id*. Nor did Plaintiffs plead the facts on which they now rely to support Plaintiff Llorens' standing. Of course, this Court need not address the defects in Plaintiffs' standing and ripeness if Plaintiffs' claims are moot.[7]

**V.     The Attorney General is Not a Proper *Ex parte Young* Defendant**

Plaintiffs acknowledge that "the Department of Administrative Services ('DAS') takes primary responsibility for prison debt collection short of lawsuits." *Opp.*, p. 3. That is pursuant to a regulation providing that the Department of Correction ("DOC")—which has responsibility under Conn. Gen. Stat. § 18-85a(b)—shall rely on DAS' assistance. *Opp.*, pp. 3-4.

Instead of naming a DAS and/or DOC official in their initial Complaint or seeking leave to amend to add such an official months ago after Defendants informed Plaintiffs of the proper Defendant issue to allow Plaintiffs to seek leave to amend, Plaintiffs chose to name the Governor—

---

[7] Plaintiffs challenge the concept that they must establish standing to challenge each aspect of the statutory and regulatory scheme they ask this Court to invalidate. *Opp.*, p. 11-12. As is their wont, Plaintiffs rely on rhetoric and misrepresentations rather than substantive argument. Contrary to Plaintiffs' representation, Defendants did cite "a single binding case in support of" their argument—*Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)—and the concept is far from "novel." *Opp.*, p. 11.

who they now concede was not a proper Defendant, *id*. at 15 n.5—and the Attorney General, who "may" enforce the statutes only "on request of the Commissioner of Correction," instead of seeking leave to amend to name a known proper Defendant. Conn. Gen. Stat. § 18-85a(b). Plaintiffs do not allege that any request has been made for the Attorney General to intervene in their cases or that the Attorney General's Office has had any role in any of their cases. Nor do Plaintiffs cite a single case that holds that an Attorney General who has authority to enforce a statute only at the request of another official is a proper Defendant. Plaintiffs' failure is not surprising given that "the Supreme Court made clear in *Ex parte Young* itself that an "'attorney general'" is not a proper defendant simply because he "'**might represent the State in litigation involving the enforcement of its statutes.**'" *MTD*, p. 20 (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908) (emphasis added) (additional quotation marks omitted)); *cf. Mendez* v. *Heller*, 530 F.2d 457, 460 (2d Cir. 1976) (holding that an Attorney General's defense of the state did not make him a proper *Ex parte Young* defendant, in part, because "the Attorney General does so, **not as an adverse party, but as a representative of the State**'s interest in asserting the validity of its statutes" (emphasis added)).

Plaintiffs offer no explanation for their conduct. Instead, they say they "**will amend** the complaint to join the Commissioner of Correction and/or the Commissioner of Administrative Services, to ensure that any declaration or injunction issued by this Court will be enforceable against the relevant state officials." *Opp*., p. 15 n.5 (emphasis added). That shows a striking disrespect for this Court. The deadline for Plaintiffs to amend was May 13, 2022 (No. 3). Contrary to Plaintiffs' presumption that they will be entitled to amend by fiat at some point in the future, Plaintiffs will need to ask this Court for leave to amend and establish good cause for their delay in seeking that leave. *See, e.g.*, *Kassner v. 2nd Avenue Delicatessen, Inc.*, 496 F.3d 229, 243 (2d Cir.

2007). This Court would be well within its discretion to deny leave; it is already months past the deadline and Defendants advised Plaintiffs in writing of the proper Defendant issue long ago, specifically to allow Plaintiffs an opportunity to seek to cure it. In addition, Plaintiffs' tack has meant that the only Defendants in this case are one that is concededly not proper and another that operates only in a representative capacity that *Ex parte Young* itself establishes does not make him a proper Defendant. Plaintiffs' actions have forced Defendants to brief—and this Court to potentially decide—an issue that Plaintiffs could easily have avoided. It also has prejudiced Defendants' ability to defend this action—the only Defendants do not have the "primary responsibility" for enforcing the challenged statutes. *Opp.*, p. 3. Under the circumstances, Plaintiffs' blithe assertion that they will amend to name the known correct Defendants when they feel like it is not something this Court should validate.

**VI.    To the Extent, if Any, Plaintiffs' Claimed Injuries to their Financial Interests Support Standing, this Court's Deprivation of the State's Correlative Financial Interests Would Violate the Eleventh Amendment**

Plaintiffs argue *inter alia* that "[t]hey are faced with losing inheritance and settlement proceeds, respectively" and that the injuries they are suffering to those financial interests are sufficient to support standing. *Opp.*, p. 10. For the reasons discussed in detail above and in earlier briefing, Plaintiffs are incorrect and Plaintiffs' financial interests are too speculative to support standing. But if Plaintiffs were right it would mean that their claims are retrospective for Eleventh Amendment purposes; Plaintiffs' claims are based on liabilities that accrued in the past and Plaintiffs' claimed financial losses are the state's gain.

Plaintiffs primarily rely on *Bonilla v. Semple*, 2016 U.S. Dist. LEXIS 118022 (D. Conn. Sep. 1, 2016) (Bolden, J.), to support their argument. *Opp.*, p. 19. Defendants respectfully disagree with *Bonilla* for the reasons set forth in their earlier briefing and will not repeat them here. The

remainder of Plaintiffs' argument adds nothing—to the extent Plaintiffs rely on caselaw involving ancillary monetary effects resulting from proper prospective relief, they simply misunderstand or misrepresent the issue. *Opp.*, p. 20. To the extent Plaintiffs argue that "[u]nder Defendants' view of the law there would be no plaintiff who could <u>ever</u> challenge the current statutory scheme," Plaintiffs again misrepresent Defendants' position. *Opp.*, p. 21 (emphasis in *Opp.*). It would be possible for an individual to assert a jurisdictionally valid challenge to the statutes—Plaintiffs simply have not done so here. *See MTD*, p. 27.

**VII. Plaintiffs Have Not Met—and Cannot Meet—their Burden on the Merits**

Plaintiffs rightly do not dispute that they have the burden to establish that the challenged statutes are unconstitutional. *See MTD*, p. 30 (citing cases). They have not met—and cannot meet—that burden.

Plaintiffs' merits argument continues to substitute rhetorical attacks and distortions for substance. Notably, Plaintiffs do not cite a single case from any jurisdiction that held a comparable statute unconstitutional. Plaintiffs admit—as they must—that multiple courts have rejected similar challenges. *See Opp.*, p. 36. Those include the Third Circuit and the Ninth Circuit. *See Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410 (3d Cir. 2000); *Wright v. Riveland*, 219 F.3d 905 (9th Cir. 2000). As to *Tillman*, Plaintiffs indicate that the court "said nothing about *Bajakajian*." *Opp.*, p. 37. To the extent Plaintiffs imply that the Third Circuit did not consider *Bajakajian* in its analysis, that implication is false—the Third Circuit cited *Bajakajian* three times and quoted it twice. *See Tillman*, 221 F.3d at 420-21. Although the court's discussion of the "fine" part of the analysis was *dicta* (as Defendants acknowledged), its discussion of "excessiveness" was not; the court held "as a matter of law that the amounts were not 'excessive' under the Eighth Amendment." *Id.* at 421.

So did the Ninth Circuit in *Wright*. As Defendants pointed out, "the Ninth Circuit reasoned, '[b]y definition, it seems that a fine based on a criminal's cost of incarceration will always be proportional to the crime committed.'" *MTD*, p. 39 (quoting *Wright*, 219 F.3d at 917). Plaintiffs completely ignore that portion of *Wright*. That is presumably because it severely undermines Plaintiffs' argument and they have no credible response to it.[8]

Plaintiffs' distortions and disregard of the appellate precedent on this issue are far from the only defects in their analysis. Plaintiffs rightly concede that remedial payments "are not fines for purposes of the Clause." *Opp.*, p. 22. Payments are remedial if "'[t]hey are provided primarily as a safeguard for the protection of the revenue and to reimburse the Government'" for "'expenses'" and "'loss[es]'" resulting from the payor's conduct. *MTD*, p. 32 (quoting *Helvering v. Mitchell*, 303 U.S. 391, 400-01 (1938)). The costs of incarceration at issue here fall comfortably within that definition; "'[r]eimbursement for services rendered' is not 'properly labeled a 'fine'' for Eighth Amendment purposes.'" *MTD*, p. 33 (quoting *United States v. Leone*, 813 F. App'x 665, 669-70 (2d Cir. 2020) (Summary Order)).[9] That requires dismissal.

In an effort to avoid that clear result, Plaintiffs yet again distort Defendants' argument. Plaintiffs represent that Defendants' statement "that the challenged statutes' 'primar[y] inten[t]'" was to reimburse the state for the costs of imprisoning Plaintiffs renders the statutes inconsistent with *Austin's* putative "one-drop-of poison rule" and chide Defendants for "deflection." *Opp.*, p. 24 (quoting *MTD*, p. 36). But, later in the very same paragraph, Defendants explicitly stated that **"[t]he secondary purpose was to ensure inmates understand the financial impacts of their**

---

[8] "Plaintiffs challenge the ability of the State to collect the carceral debt at all, regardless of any exemptions that may apply," but there simply is no way that costs of incarceration violate the **Excessive** Fines Clause regardless of the amount. *Opp.*, p. 14; *see, e.g., Tillman*, 221 F.3d at 413, 420-21 (upholding thousands of dollars in costs of incarceration).

[9] Plaintiffs seek to avoid *Leone* by representing that this language was *dicta*. It was not; "alternative holdings are not *dicta*." *Onosamba-Ohindo v. Barr*, 483 F. Supp. 3d 159, 174 n.1 (W.D.N.Y. 2020) (citing *Pyett v. Pa. Bldg. Co.*, 498 F.3d 88, 92 (2d Cir. 2007)).

**incarceration**"—another non-punitive purpose. *MTD,* p. 36 (emphasis added). Neither the statutes' primary purpose nor their secondary purpose was punitive; there is no poison to taint the challenged statutes.

Plaintiffs also distort the Supreme Court precedent. First, contrary to Plaintiffs' dismissal of history's role in the analysis, the seminal decision on the Excessive Fines Clause began and ended its decision with historical analysis. In so doing, the Court held that because the civil punitive damages at issue were clearly outside the Eighth Amendment's historical scope the Court could—and did—uphold them without further analysis. *Browning-Ferris Industries* v. *Kelco Disposal*, 492 U.S. 257, 273-75 (1989). Plaintiffs represent that "Clause challenges need not examine history in order to satisfy *Austin*" but fail to mention that *Austin* extensively discussed history before "turn[ing] next to consider whether the challenged" acts were "properly considered punishment today." *See Austin* v. *United States*, 509 U.S. 602, 606-19 (1993). Plaintiffs presumably distort the precedent because they can offer no historical support for their argument.

Second, Plaintiffs dismiss the Supreme Court's decision in *Stockwell v. United States*, 80 U.S. 531, 541, 550 (1871), as "irrelevant because" it did "not involve [sic] Excessive Fines Clause claim *at all*." *Opp.*, p. 35 (emphasis in *Opp.*). The Supreme Court apparently disagrees with Plaintiffs' relevance assessment—the Court discussed and quoted *Stockwell* extensively in *Bajakajian* in contrasting the remedial payments in *Stockwell* from the payments in *Bajakajian* for Excessive Fines Clause purposes. *United States v. Bajakajian*, 524 U.S. 321, 341-43 (1998). Plaintiffs' attempt to convince this Court that *Stockwell* is irrelevant is puzzling; all of Defendants references to *Stockwell* made clear it was discussed in *Bajakajian*. *Opp.*, pp. 32-33.[10]

---

[10] There is not enough space to detail all of the distortions and errors in Plaintiffs' analysis. To the extent Defendants do not explicitly address aspects of Plaintiffs' arguments, neither Plaintiffs nor the Court should construe that as an indication that Defendants have no response to Plaintiffs' arguments.

Respectfully submitted,

DEFENDANTS

GOVERNOR NED LAMONT

ATTORNEY GENERAL WILLIAM TONG

WILLIAM TONG
ATTORNEY GENERAL

BY: */s/ Robert J. Deichert*
Robert J. Deichert (ct24956)
Krislyn Launer (ct31041)
Benjamin Abrams (ct29986)
Assistant Attorneys General
Attorney General's Office
165 Capitol Avenue
Hartford, CT 06106
860-808-5020 (phone)
860-808-5347 (fax)
Robert.Deichert@ct.gov
krislyn.launer@ct.gov
benjamin.abrams@ct.gov
*Attorneys for Defendants*

**Certificate of Service**

I hereby certify that on August 5, 2022 a copy of the foregoing was electronically filed. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                        */s/ Robert J. Deichert*
                                        Robert J. Deichert
                                        Assistant Attorney General