**United States District Court**
**District of Connecticut**

**Teresa Beatty, Natasha Tosado, and**
**Douglas Johnson**,
*Plaintiffs*,  No. 22-cv-380

*v.*  March 27, 2024

**Michelle Gilman and Angel Quiros**,
*Defendants.*

**Plaintiffs' Motion for Leave to Amend**

The plaintiffs to this single-count Excessive Fines Clause challenge to Connecticut's unique prison debt scheme contested, from the outset, that certain information was relevant to the merits of their claims. The Court ruled otherwise, following the close of discovery. The plaintiffs now seek leave to amend that information into their complaint, as well as to conform their allegations to evidence obtained during discovery, and to narrow the scope of the action. Because the plaintiffs have expeditiously sought leave to amend; the defendants are not prejudiced by the pleading of facts long in their possession; and the amendment would cure the plausibility defects identified by the Court, the plaintiffs should be granted leave to amend.[1]

**1.    Facts.**

Plaintiff Teresa Beatty commenced this single-count challenge to Connecticut's prison debt regime in 2022. She alleged that the lien the state filed against her inheritance in the Connecticut Probate Court violates the Excessive Fines Clause of the Eighth Amendment. After an amendment as of right to add a co-plaintiff, Ms. Beatty

---

[1] Pursuant to L. Civ. R. 7(f), attached hereto as Exhibit 1 is a redlined version of the proposed Third Amended Complaint showing all changes against the current Complaint, and attached as Exhibit 2 is a clean version of the proposed Third Amended Complaint.

1

pleaded in relevant part that she had been convicted of a crime and served time in a Connecticut prison as a result.[2] The then-defendants moved to dismiss on numerous justiciability grounds as well as on the merits; Ms. Beatty and her then-co-plaintiffs opposed, including by arguing that the fines levied against them were 'excessive' for purposes of the Clause because the amounts of the fines were not fixed with reference to their conviction conduct.[3] In March 2023, the Court granted dismissal with leave to amend because it concluded that (1) Ms. Beatty's two co-plaintiffs lacked standing, and (2) while Ms. Beatty sufficiently alleged an injury-in-fact, she had sued the wrong defendants.[4] The Court did not rule on the merits arguments.

Joined by Natasha Tosado and Douglas Johnson, Ms. Beatty filed a second amended complaint against the commissioners of the state's departments of correction and administrative services that April.[5] The plaintiffs all pleaded that they had been convicted of crimes in the Connecticut Superior Court and served incarceration sentences as a result.[6] They each allege a single count: that the statutory prison debt the defendants have asserted against their inheritances in the Connecticut Probate Court violates the Excessive Fines Clause of the Eighth Amendment.

The defendants again filed a motion to dismiss on justiciability and merits grounds.[7] The plaintiffs, in opposition to dismissal—as is relevant here—argued that Connecticut's unique prison debt system rendered the plaintiffs' conviction offenses irrelevant because the amount of their debt does not depend on the circumstances of their crimes.[8]

---

[2] Am. Compl. [ECF # 11] ¶ 15.
[3] Opp. to Dismissal [ECF # 31] 38-40.
[4] Order Granting Motion to Dismiss [ECF # 45] 22-23.
[5] Second Amended Complaint [ECF # 49].
[6] *Id.* ¶¶ 22, 42, 56.
[7] ECF # 70.
[8] Pls.' Opp. to Dismissal [ECF # 65] 34-38.

2

The Court denied defendants' motion to stay discovery in June 2023,[9] and the parties commenced discovery in accordance with a scheduling order slating February 1, 2024 as discovery close.[10] Oral argument on the motion to dismiss was held in October 2023. The Court probed the plaintiffs' contentions that the facts of the plaintiffs' conviction conduct were irrelevant, notably, that the Court "has to adjudicate whether or not the *Viloski* factors in this challenge applied to this statute have any meaning at all,"[11] and that the state's method of calculation at any rate yielded a plausible Excessive Fines Clause violation even if run through those factors, because none of them bears any relation to the plaintiffs' conviction conduct.[12] When pressed by the Court about the specifics of Ms. Beatty's conviction, counsel offered that "we could furnish" her relevant conviction information "if . . . the Court wished."[13]

Meanwhile, discovery proceeded, and the parties took depositions in January 2024. Leading up to those, in response to the defendants' interrogatories and requests to produce, the plaintiffs identified their relevant criminal convictions and produced records about that conviction conduct.[14] However: Defendants had learned details of plaintiffs' relevant convictions well before any discovery responses were submitted in this case. After all, Defendant Gilman runs the agency that filed a lien against each plaintiff's inheritance based on calculations supplied by Defendant Quiros's Department of Correction. When DOC calculates a person's prison debt, it manually reviews pre-

---

[9] ECF # 63.
[10] ECF # 72.
[11] Oral Arg. Tr. 67:15-17.
[12] *Id.* 66:7-19.
[13] 62:17-18.
[14] Two of the plaintiffs' debt-creating convictions are quite old, and relevant records have apparently been destroyed in accordance with the retention schedules or practices of the agencies that once possessed them. Ms. Beatty was incarcerated beginning twenty-three years before the operative complaint, Second Am. Compl. ¶ 22, and Mr. Johnson was imprisoned twenty-one years before it. *Id.* ¶ 56.

trial detention time to determine whether or not any of it created debt.[15]  That review includes "look[ing] into each time that the person was incarcerated," spending time "looking at what they were charged for, what the sentence ended up being,"[16] because a person owes no prison debt for a charge on which they are later acquitted, or for which they are convicted but not incarcerated.[17]

DOC performed this calculation when DAS filed its liens against the plaintiffs in the probate court, before this litigation began.  DOC did so again just five days after the operative complaint was filed in this Court in April 2023.[18]  And sure enough, when the defendants took each plaintiff's deposition in January 2024, they examined each on the *Bajakajian* excessiveness factors,[19] as well as on DOC and probation records that the defendants obtained through their own means outside of Fed. R. Civ. P. 26 or 45.[20]

Twenty-seven days after the close of discovery,[21] the Court granted and denied the motion to dismiss.  Order Granting in Part and Denying in Part Motion to Dismiss [ECF # 107] (Feb. 27, 2024).  Notably, the Court ruled against the defendants on every one of their contentions *except* for excessiveness, concluding that (1) adding new defendants and plaintiffs in accordance with the Court's 2023 dismissal decision was permissible, (2) all plaintiffs possess Article III standing, (3) all plaintiffs' claims are constitutionally and prudentially ripe, (4) the Eleventh Amendment is no bar to the relief sought by the plaintiffs, and (5) that the challenged statutes are 'fines' for purposes of the Excessive Fines Clause.

---

[15] DOC 30(b)(6) depo tr. 50:15-51:17 (attached as Ex. 3).
[16] DOC 30(b)(6) depo. tr. 51:23-52:3 (attached as Ex. 3).
[17] DOC 30(b)(6) depo. tr. 51:12-18  (attached as Ex. 3).
[18] Memoranda from Jessica Brunetti, Dep't of Correction, to Krislyn Launer, Attorney General's Office (April 25, 2023) (attached as Ex. #4).
[19] *See United States v. Bajakajian*, 524 U.S. 321, 337-40 (1998).
[20] These were Ex. ## 6, 9, 10, 11, and 12 to Ms. Beatty's deposition, and Ex. # 12 to Ms. Tosado's.
[21] Following the last depositions, the defendants secured an extension of time as to a limited number of discovery disputes then remaining between the parties.

On the second prong of the Excessive Fines Clause claim, the Court disagreed with the plaintiffs' argument that excessiveness can be proven without specifics of the conviction conduct. Order 26-31. Instead, the Court held that the non-exhaustive factors identified in *Bajakajian* control the analysis of whether a fine is unconstitutionally excessive. As to those factors, the Court held that the operative complaint failed to allege "enough facts to plausibly show that their costs of imprisonment are no less than grossly disproportional to the gravity of their crimes," and that dismissal is appropriate in Excessive Fines cases where "the plaintiff fails to allege the facts that are necessary to evaluate" those factors. Order 25-26 (citing cases).

Four days after the ruling, the plaintiffs moved for a status conference that the Court convened on March 6th. At that conference, the plaintiffs proposed amending the operative complaint to (1) include the facts necessary for the Court to conduct the *Bajakajian* analysis, (2) conform to evidence adduced during discovery, and (3) narrow the scope of the litigation, including by omitting class allegations. The Court agreed to consider a motion to amend, and set a briefing schedule accordingly.[22]

**2.   The liberal standard of Rule 15 permits this Court to grant plaintiffs' amended complaint and add relevant facts relating to the merits of their claim.**

A party may amend a pleading outside of its as-of-right period with the Court's permission, which ought to be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), including during trial or even post-verdict. Fed. R. Civ. P. 15(b)(1) & (2). The freely given standard encompasses twin paramount values in federal civil practice: that "pleadings are to serve the limited role of providing the opposing party with notice

---

[22] The defendants objected to amendment at the status conference. Nonetheless, in accordance with L. Civ. R. 7(f), the plaintiffs asked defendants their position. Defendants continue to object to amendment.

of the claim," and that "mere technicalities should not prevent cases from being decided on the merits." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000) (cleaned up).

As a result, our Court of Appeals "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)," *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006), if the plaintiff seeks the chance to remedy the defect identified in the decision rather than a non-specific opportunity to simply try again. *E.g., Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 309 (2d Cir. 2022). And so, "when a complaint is dismissed pursuant to Rule 12(b)(6) and the plaintiff requests permission to file an amended complaint, that request should ordinarily be granted." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

That result should follow here. The plaintiffs seek leave to remedy the exact defects identified by the Court in its dismissal ruling by pleading "the underlying conduct of [Ms.] Beatty and [Mr.] Johnson or about the relationship (if any) of this conduct to other criminal activity," "information about [Ms.] Tosado's crime," the maximum statutory fines provided for each plaintiff's conviction offenses, and "sufficient facts concerning the nature of the harm from their crimes." Ruling 24, 25. Given that the Court has resolved all other legal disputes in the case, permitting amendment would grant the plaintiffs review on the merits of their claims.

Of course, this Court possesses discretion to deny amendment if it concludes that granting the request would create undue prejudice, reward undue delay or bad faith, or would be futile. *E.g., Monahan*, 214 F.3d at 283. None of those considerations is present here, and so the Court should permit amendment.[23]

---

[23] The Scheduling Order did not set a date by which the parties must move to amend the pleadings (ECF No. 72), and thus the liberal standard under Rule 15 applies. However, to the extent the Court believes

6

### 2.1. The plaintiffs have moved quickly to amend after the Court's ruling on the disputed issue of whether the *Bajakajian* factors are relevant.

Ms. Tosado and her co-plaintiffs have not unduly delayed their request to amend nor exhibited bad faith in doing so. They moved quickly to amend, asking for a status conference within days of the dismissal ruling and asking the Court to entertain a motion to amend at the conference held just days after that. Plaintiffs' expeditiousness satisfies Rule 15. "The proper time for a plaintiff to move to amend the complaint is when the plaintiff learns from the District Court in what respect the complaint is deficient," *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 25 (2d Cir. 2017) (reversing denial of amendment).

Defendants Quiros and Gilman may complain that they have long contended that the *Bajakajian* factors are relevant to this dispute, and that Mr. Johnson and his fellow plaintiffs should have sought leave to amend when the defendants moved for dismissal. But the plaintiffs have, from the suit's inception, vigorously argued that the *Bajakajian* factors are inapposite here in the novel context of Connecticut's prison debt scheme. They should not have been required to choose between conforming their complaint to an adversary's preferred theory, or waiving their right to seek amendment. Our circuit has reversed for exactly that.

In *Loreley Financial (Jersey) No. 3 v. Wells Fargo Securities*, the district court convened a conference on the defendants' anticipated Fed. R. Civ. P. 12(b)(6) motion.

---

that the lenient standard under Rule 15(a) should be balanced against the requirement under Rule 16(b) that the Court's scheduling order "shall not be modified except upon a showing of good cause," *see Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009), Plaintiffs' proposal satisfies either standard. In assessing the good cause standard, the Court primarily considers whether the moving party has been diligent, and may consider other relevant factors as well, such as whether the extension will result in any prejudice to the defendants. *Kassner v. 2nd Ave Delicatessen, Inc.*, 496 F.3d 229, 242 (2d Cir. 2007). As discussed more fully herein, Plaintiffs have been diligent in moving for leave to amend expeditiously following the Court's ruling on the Motion to Dismiss, and the proposed amendments will not result in any prejudice to the Defendants.

7

At that conference, the court heard the defendants' preview of their dismissal contentions and "presented Plaintiffs with a Hobson's choice: agree to cure deficiencies not yet fully briefed *and decided* or forfeit the opportunity to replead." 797 F.3d 160, 190 (2d Cir. 2015) (emphasis added). The plaintiffs declined to amend, stood by their arguments that the complaint was sufficient, and were denied leave to amend on that basis after the district court granted dismissal. *Id.* at 169. The Second Circuit reversed, explaining that in contested pleading matters, a party cannot be held to its adversary's view of the law; what matters is the trial court's wisdom on any claimed deficiencies. "Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies," and so it is improper to deny leave on the basis that the party fought its corner on the issue instead of capitulating before a decision. *Id.* at 190.

"[F]aulting [the *Beatty* plaintiffs] for having failed to submit a proposed amended complaint in the time between the defendant[s'] motion to dismiss and the court's ruling on it" would be the same "slight variant of" the reversible *Loreley* error. *Cresci*, 693 F. App'x at 24-25. *See also APP Grp. (Canada) Inc. v. Rudsak USA Inc.*, No. 22-1965, 2024 WL 89120, at *5 (2d Cir. Jan. 9, 2024) (summary order) (reversing denial of leave to amend where the plaintiff-appellant "was not provided an opportunity to amend deficiencies that it claims it could fix," and "specifie[d] in its reply brief how it could amend its Complaint").

Even more, both decisions cited by this Court for the proposition that dismissal is appropriate where an Excessive Fines Clause plaintiff has not pleaded the *Bajakajian* factors led to orders permitting amendment to add those facts. This Court should do the same. *Leon v. Hayward Bldg. Dep't*, No. 17-CV-02720, 2017 WL 3232486, at *4 (N.D. Cal. July 31, 2017); Opinion and Order [ECF # 155]; *see also Rojas v. Triborough Bridge*

8

*& Tunnel Auth.*, No. 18-CV-1433 (PKC), 2020 WL 1910471, at *3 (S.D.N.Y. Apr. 17, 2020) (granting leave to amend post-dismissal in action formerly titled *Farina v. Triborough Bridge and Tunnel Authority*).

There is similarly no basis to deny amendment because of bad faith. Ms. Tosado and her fellow plaintiffs have not intentionally created tarpits for the defendants in the form of frivolous arguments, or heaped unnecessary costs or delays upon them. Parties are permitted to zealously advocate for new readings of the law so long as they have a legal basis to do so, and do not forfeit their ability to seek amendment by advancing a point that the Court ultimately disagrees with, even if done with "somewhat stiff-necked insistence." *Bensch v. Estate of Umar*, 2 F.4th 70, 81 (2d Cir. 2021) (reversing bad-faith denial of amendment where the plaintiff's argumentation in opposition to dismissal "defend[ed] a legal proposition . . . that, while incorrect as we hold today, was believed in good faith by [him] to be correct"). And, litigation in this dispute proceeded exactly how it would have had the proposed amended complaint been the operative complaint, because the two documents phrase the same claims by the same plaintiffs against the same defendants, on the same single constitutional theory. Indeed, that Plaintiffs' proposed amendments are, at least in part, based on information learned in discovery further illustrates diligence, good faith, and lack of undue delay. *See Hybrid Athletics, LLC v. Hylete, LLC*, 2018 WL 4323816, at *3 (D. Conn. Sept. 10, 2018) (granting leave to amend where amendment was based on "information [uncovered] during fact discovery that will support its allegations").

### 2.2. Amendment to conform the complaint to information long in the defendants' possession creates no prejudice to them whatsoever.

Given Plaintiffs' diligence, Defendants must show undue prejudice to defeat leave to amend. "The party opposing an amendment has the burden" and the showing must be one of "undue or substantial prejudice—namely, when the nonmoving party shows that it would be fairly disadvantaged or deprived of the opportunity to present facts or evidence that it would have offered." *Bernhard v. Cent. Parking Sys. Of New York, Inc.*, 282 F.R.D. 284, 291 (E.D.N.Y. 2012) (internal citation omitted). In line with Rule 15's purpose of providing litigation opponents notice of the claim or defense to be disputed, the undue prejudice inquiry is "perhaps most important" among this Court's amendment considerations. *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). In relevant part, the prejudice inquiry asks whether a proposed amended pleading would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial," or "significantly delay the resolution of the dispute." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). Routine "time, effort and money" expenditures litigating the operative pleading are insufficient to demonstrate prejudice by an amendment to it. *Id.* at 351 (affirming leave to amend). Instead, this Court looks to whether amendment "unfairly surprises the non-movant and impedes the fair prosecution of the claim." *Monahan*, 214 F.3d at 284.

Given the limited scope of the proposed amended complaint, it creates no undue prejudice to the defendants. Quiros and Gilman have, since April 2023, been squarely on notice of the claims Ms. Beatty and her co-plaintiffs have raised and, relatedly, their conviction histories. Because the claims remain the same, nothing in the proposed amended complaint springs a new source of alleged liability upon the defendants, or

10

effectively saddles them with having wasted discovery efforts to date incorrectly "anticipat[ing] future claims that a plaintiff might intend to pursue." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (affirming denial of leave to add a new claim that would require experts to produce new reports and undergo new depositions). *Accord In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 159 (2d Cir. 2015) (affirming denial of leave where plaintiffs' prior "short and conclusory statements . . . did not put the defendant on notice of specific state or foreign common-law claims that it might be called upon to defend against").

Nor would the amended complaint "result in new problems of proof." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). Throughout the litigation, the defendants themselves have insisted that the proposed conviction-related allegations are germane to the litigation, and conducted their efforts accordingly, such that no further discovery will be necessary for the parties to cross-move for summary judgment. *See Youmans v. Roy*, No. 22-cv-1650, 2023 WL 8372825, at *6 (D. Conn. Dec. 4, 2023) (explaining that undue prejudice is not a factor counseling against amendment where the opposing parties "are likely in possession of the majority of the evidence relevant to any of" the amended allegations). Indeed, not only did Defendants examine each plaintiff at deposition on each of their conviction offense(s) at issue— using copious records they themselves sourced, as well as records plaintiffs had subpoenaed and then provided—but Defendants also examined each plaintiff on *every single time they had ever been arrested, from birth through the present day.* Given Defendants' intense focus on Plaintiffs' every interaction with the criminal-legal system throughout discovery, they can hardly claim "disadvantage[] or depriv[ation] of the opportunity to present facts or evidence that [they] would have offered." *Bernhard,* 282 F.R.D. at 291.

11

Because Defendants cannot demonstrate undue prejudice beyond mere delay or litigation expense, leave to amend should be granted.

### 2.3. Amending the complaint to plead the *Bajakajian* facts remedies the plausibility defect identified by the Court and yields claims ready for merits determination.

Lastly, permitting the plaintiffs to amend and add the very information that the Court found lacking would yield a live controversy on the merits of this suit rather than a pointless gesture. "Proposed amendments are futile if they would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *IBEW Local Union No. 58 Pension Trust Fund and Annuity Fund v. Royal Bank of Scotland Grp.*, 783 F.3d 383, 389 (2d Cir. 2015). (internal quotation marks omitted). Accordingly, "the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *Id.* Courts look to "the proposed amendment[s] . . . along with the remainder of the complaint, [] accept as true all non-conclusory factual allegations therein, and draw all reasonable inferences in plaintiff's favor" to decide whether the allegations state a claim for relief. *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) (internal citations omitted).

Plaintiffs' proposed amendment provides the necessary details for this Court to apply the *Bajakajian* factors, as modified by *Viloski*, to determine the excessiveness of the fines imposed by Connecticut's prison debt regime. The factors are: (1) the essence of the crime and its relation to other criminal activity; (2) whether the defendant fits into the class of persons for whom the statute was principally designed; (3) the maximum sentence and fine that could have been imposed; (4) the nature of the harm caused by the defendant's conduct; and (5) whether the forfeiture would deprive the

defendant of his livelihood. *United States v. Viloski*, 814 F.3d 104, 110-111 (2d Cir. 2016).

As demonstrated below, the proposed amended complaint will plead these factors as to each individual plaintiff and state a plausible claim that the prison debt that defendants seek to recoup from plaintiffs exceeds the limits set by the Eighth Amendment.

### 2.3.1. Mr. Johnson's additional facts.

The proposed amended complaint supplies the information that Mr. Johnson's debt-generating incarceration resulted from his 2002 conviction for possession of narcotics, Conn. Gen. Stat. § 21a-279(a), and a violation of probation, *id.* § 53a-32. At deposition, Mr. Johnson described these offenses as the "the last arrest, the last day, the last everything," marking "the end of my old self" struggling with alcohol and substance use disorder.[24] He was not convicted of any conspiracy or wider crime, had no co-defendant(s), and nothing in the conviction offense suggests that Mr. Johnson was doing anything more than consuming narcotics. Thus, for *Bajakajian* purposes, the essence of Mr. Johnson's conviction offense was possession of a narcotic for consumption.

The maximum incarceration Mr. Johnson could have been sentenced to was seven years. The maximum fine he could have been sentenced to was $50,000. Although one could regard the maxima as indicating that the state legislature then viewed the possession of narcotics as more than a mild offense, two factors counsel that his culpability for purposes of the Excessive Fines Clause is properly regarded as low.

---

[24] Douglas Johnson depo. 26:15-25 (attached as Exhibit 5).

First, Mr. Johnson was sentenced to only thirty months out of a maximum eighty-four months' incarceration, and he was not sentenced to pay a single dollar of the maximum $50,000 fine, or any forfeiture. That is a strong indication that the superior court regarded him as he was at that time—a young man in the depths of a substance use disorder—and its decision to sentence him to "but a fraction of the penalties authorized . . . undercuts any argument based solely on" the statutory maxima. *United States v. Bajakajian*, 524 U.S. 321, 339 n.14 (1998). But even compared solely with the statutory maxima, Mr. Johnson's prison debt overshadows it: the state has staked claim to $74,652 from him for an offense that the superior court could have only fined him $50,000.

Second, by the time that Mr. Johnson came into inheritance triggering the state's ability to assert the prison debt, Connecticut had drastically lowered the penalties for the possession conviction down to one year of prison and a $2,000 fine. The state's decision to enact a seven- and twenty-five-fold reduction in the maximum possible incarceration and fine sentences, respectively, for possession, indicate that at the time its debt collection efforts against Mr. Johnson began, Connecticut considered the offense minor. By the time the state first asserted prison debt against his inheritance from his father, Mr. Johnson's debt was thirty-five times the maximum statutory fine for his offense—making it impossible to conclude that payment of the debt comports with the Excessive Fines Clause.

Finally, the harm that Mr. Johnson caused via the possession offense for which the state seeks prison debt was solely to himself, as consuming narcotics was not a good idea for someone in the throes of a substance use disorder. From the information pleaded in the proposed amended complaint, the Court could conclude that forcing Mr.

14

Johnson to undergo further punishment in the form of losing his father's land, boat, and truck would offend the Clause.

### 2.3.2  Ms. Beatty's additional facts.

The proposed amended complaint would also plead the necessary *Bajakajian* facts for Teresa Beatty.  The amendment would supply that Ms. Beatty was convicted of three offenses related to the sale of marijuana and cocaine to undercover police employees, and to possessing both in her car and home.  She pleaded guilty to possession of a hallucinogen other than marijuana, Conn. Gen. Stat. § 21a-279(b), for reasons not apparent in the extant records; sale of a controlled substance, *id.* § 21a-277(b) (1987); and the risk of injury to a minor, *id.* § 53a-21 (1997), for having her daughter and/or son in the car as she drove to and from two of the transactions, which occurred away from the car.[25]  Given that the three charges stem from the sale of marijuana and cocaine, that is fairly described as the essence of her conviction conduct.  The conduct had no relation to that beyond the sale of drugs; she was not convicted of violence, conspiracy or other inchoate crimes, and had no co-defendant(s).[26]

The maximum incarceration that Ms. Beatty could have received for the three offenses was twenty-two years, and the maximum fine she could have been sentenced to pay was $32,000.  The maximum incarceration penalty for the three offenses indicates that the three, taken together, could be viewed as serious.  As with Mr. Bajakajian's sentence, however, Ms. Beatty's demonstrates that the superior court did not view the scale of her conduct as lying in the most serious strata of offenses.  Although it could have sentenced her to twenty-two years in prison, it sentenced her to eight suspended

---

[25] Proposed Third Am. Compl. ¶ 25.
[26] Proposed Third Am. Compl. ¶ 26.

15

after four and a half.  And although it could have imposed a $32,000 fine, it imposed none, and no forfeiture.[27]

The Court could also conclude that developments in the law between Ms. Beatty's prison term and the defendants' attempts to collect prison debt from her mitigate one aspect of her conviction conduct.  Since Ms. Beatty walked free from prison, Connecticut has shifted to a policy of legalization and regulation for marijuana.  Possession of cannabis within generous limits was, by the time that the defendants put a lien against Ms. Beatty's inheritance, completely lawful.  Conn. Gen. Stat. § 21a-279a (2021).[28]  The sale of cannabis through licensed retailers is permitted, and the penalty for sale elsewhere is nothing like it was when Ms. Beatty was prosecuted.  Nowadays, a first-offense sale by an adult of up to eight ounces of cannabis is penalized by a $500 fine.  *Id.* § 21a-278b(c)(1) (2021).  The state's overt public policy during its collection attempt against Ms. Beatty has thus been that cannabis is no longer viewed as a dangerous social ill.

Lastly, the proposed amended complaint would allow the Court to assess the extent of the harm caused by Ms. Beatty's conviction conduct leading to incarceration.  She was not convicted of engaging in violence, participating in any wider-scale criminality than small-scale person-to-person drug sales, or any other child welfare offense, and hence would state a plausible excessiveness claim ripe for full disputation at summary judgment.

---

[27] Proposed Third Am. Compl. ¶ 30.
[28] *See id.* § 21a-279a(a) (permitting those over the age of twenty-one to possess "one and one-half ounces [42.5 grams] of cannabis plant material" or its equivalent and "five ounces [141.8 grams] of cannabis plant material" or its equivalent in a locked container at such person's residence or a locked glove box or trunk of such person's motor vehicle.").

16

### 2.3.2. Ms. Tosado's additional facts.

Finally, the proposed amended complaint would supply information about Natasha Tosado's debt-generating conviction.

Although she describes the conviction as drug-related in that it occurred while she suffered from a substance use disorder and made unwise decisions as a result, the conduct itself did not concern drugs. Ms. Tosado was prosecuted for possessing an assault rifle discovered during a traffic stop. The weapon was lawfully owned by a friend; nonetheless, Connecticut law did not permit Ms. Tosado to possess it. She entered an *Alford* plea to two weapons charges and two counts of failing to appear during the court proceedings for those charges. She was not convicted of conspiracy or any other inchoate offense, and had no co-defendant.

The substantive charges, illegal possession of an assault weapon, Conn. Gen. Stat. § 53-202c, and having a weapon inside of a motor vehicle, *id.* § 29-38, both center on the possession of an unlawful weapon as distinct from the manner of its use or obtainment. *See id.* § 53-202c(a) (specifying that the offense applies to "any person who, within this state, possesses an assault weapon"); *id.* § 29-38(a) (forbidding a person from having, "in any vehicle . . . operated . . . by such person, any weapon . . . for which a proper permit has not been issued"). The post-offense failure-to-appear charges were levied in response to Ms. Tosado's not having attended court when required for proceedings on the gun charges (in part because she was in substance use treatment at the time). Accordingly, the 'essence' of her crime was the unlawful possession of a gun.

Because Ms. Tosado was convicted of possession offenses, the identifiable harm to others was the general one of that posed by someone possessing a firearm without the legal ability to do so. The four charges Ms. Tosado entered her *Alford* plea to were each

17

punishable by five years' incarceration and a $5,000 fine,[29] indicating that the state legislature did not view them as serious felonies. Within that aggregate total possible punishment, the superior court—aware as it was of her substance use disorder[30]—evidently viewed Ms. Tosado's conviction conduct as the product of poor and dangerous decision making. Rather than twenty years and $20,000, the superior court sentenced Ms. Tosado to ten years suspended after two, and no fine or forfeiture. However, for those same offenses, the defendants here propose taking title to more than $40,000 of her inheritance for DOC expenditures during Ms. Tosado's prison stay.

### 3. Conclusion

Because inclusion of the additional facts remedies the plausibility shortcoming identified by the Court, creates no undue prejudice to the defendants, and has been pursued quickly, the plaintiffs' motion should be granted.

---

[29] *See* Conn. Gen. Stat. §§ 53-202c(a), 29-38, and 53a-172 (each specifying that the offense is categorized as a class D felony); *id.* § 53a-35a(8) (setting the maximum incarceration for class D felonies at five years); *id.* § 53a-41(4) (2012) (setting the maximum fine for class D felonies at $5,000).
[30] Proposed Am. Compl. ¶ 61-63.

                                                /s/ Erica O. Nolan
David A. Slossberg (# ct13116)
Erica O. Nolan (# ct31097)
HURWITZ SAGARIN SLOSSBERG &
KNUFF LLC
135 Broad Street
Milford, CT 06460
(203) 877-8000
DSlossberg@hssklaw.com
ENolan@hssklaw.com

                                                /s/ Dan Barrett
Dan Barrett (# ct29816)
Elana Bildner (# ct30379)
Sapana Anand (# ct31422)
ACLU Foundation of Connecticut
765 Asylum Avenue
Hartford, CT 06105
(860) 471-8471
legal@acluct.org

*Counsel for Plaintiffs Teresa Beatty, Natasha Tosado, and Douglas Johnson*