**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| TERESA BEATTY, *et al.*, | : | 3:22-cv-00380-JAM |
| *Plaintiffs*, | : | |
| v. | : | |
| MICHELLE GILMAN, *et al.*, | : | |
| *Defendants*. | : | APRIL 17, 2024 |

<u>**Defendants' Opposition to Plaintiffs' Motion for Leave to File their Third Amended
Complaint**</u>

Over two years ago, this case began as a putative class action of approximately 30,000 people naming the Governor and the Attorney General as the sole Defendants and invoking federal jurisdiction to strike down Connecticut's entire statutory and regulatory framework requiring some inmates with assets who come into large sums of money to contribute toward the costs of their incarceration. Plaintiffs designed this action as "a genuine piece of impact litigation[1]" and it arrived with significant fanfare. *Tr. 3/6/24 Status Conf.*, p. 11 l. 19 (A-11). There is reason to believe Plaintiffs' filing of this action had a significant part of Plaintiffs' intended impact; months after this suit was filed, Connecticut "narrowed the groups of people from whom the state can collect prison debt" and for most people "exempts up to $50,000 of a person's assets from a given collection attempt." *Second Amended Compl.*, ¶¶ 77 & 79 (ECF No. 49).

---

[1] Impact litigation has been defined as a "policy-oriented lawsuit" that is "designed to change social policy rather than to vindicate legal rights of a particular plaintiff" or plaintiffs. *Snake River Farmers' Assn. v. Dept. of Labor*, 9 F.3d 792, 798 (9th Cir. 1993). Plaintiffs' desire to bring this case as a piece of impact litigation did not relieve them of the obligation to comply with the rules and jurisdictional limitations applicable to all litigants; no matter how much Plaintiffs may wish to use the federal courts to force changes to state policy, that "may beckon from beyond" a court's "grasp." *Id*. Where the federal court "can do nothing in this lawsuit which would redress harm or prevent injury" or the case otherwise lies outside the court's jurisdiction, the Constitution establishes that the court "can do nothing at all." *Id*.

Plaintiff Beatty is the sole remaining initial Plaintiff and the base on which this case rests. Plaintiffs' initial, first amended, and second amended Complaints alleged that Plaintiff Beatty "was incarcerated . . . for charges stemming from drug possession," that at sentencing she was exposed to "a fine up to $10,000," that Defendants calculated her debt incorrectly, and that "absent relief from this Court, Ms. Beatty will lose $83,762.26 . . . calculated in an arbitrary way." *Id.* at ¶¶ 23, 39-40.[2] From the outset, Defendants have argued that given the nature of the laws and the probate processes, it was uncertain whether Plaintiff Beatty would ever have to reimburse any costs of incarceration and—if she did—when and in what amount. Defendants have also consistently argued from the outset that Plaintiffs failed to meet their burden to allege facts that plausibly supported Excessive Fines Clause violations under the factors set forth by the Supreme Court and the Second Circuit.

Given the nature of motions to dismiss, this Court understandably[3] relied on Plaintiffs' allegations to allow this case to proceed at least in part through two motions to dismiss, two rounds of argument, two lengthy written decisions by this Court, and over two years of litigation including extensive discovery. Plaintiffs' proposed Third Amended Complaint now shows beyond dispute that many of the allegations Plaintiffs repeatedly made about their own histories and circumstances were not accurate. There is no apparent reason[4] why Plaintiffs could not have known or obtained the information about their own criminal histories that they now seek to add

---

[2] This citation is to the Second Amended Complaint, but these allegations were identical across all three of Plaintiffs' Complaints.

[3] Defendants respectfully disagree with aspects of this Court's decisions, but understand that they are final for present purposes. Defendants expressly reserve all rights to challenge any aspects of prior decisions at later stages of this case or on appeal.

[4] Plaintiffs represent that their "proposed amendments are, at least in part, based on information learned in discovery." *Plaintiffs' Motion for Leave to Amend*, p. 9 (ECF No. 114). However, Plaintiffs do not specify what information came from discovery.

to their Complaint before they filed this action or promptly informed the Court of developments in their own probate matters. Nor do Plaintiffs acknowledge that they affirmatively and repeatedly made inaccurate allegations about their own criminal histories, let alone explain why. During the Status Conference leading up to Plaintiffs' Motion, this Court expressed "concern[ ]" that Plaintiffs may be trying to engage in a "little bit of kind of bait and switch." *Tr. 3/6/24 Status Conf.*, p. 10 ls. 4-7 (A-10). Even though this Court made its concern clear to Plaintiffs, Plaintiffs have done nothing in their Motion to allay that concern. This Court should deny Plaintiffs' Motion for the reasons discussed below.

<u>**Factual and Procedural Background Pertinent to this Opposition**</u>

**I.      This Court's Dismissal of Plaintiffs' First Amended Complaint Based on Issues Plaintiffs Could Easily Have Avoided**

The initial Complaint in this action was filed on March 14, 2022 by two named Plaintiffs that included Plaintiff Beatty and named the Governor and the Attorney General as the only Defendants (ECF No. 1). On that date, this Court issued an "Order on Pretrial Deadlines" that provided, in pertinent part: "Amended Pleadings due by 5/13/22." ECF No. 3. Plaintiffs filed their first Amended Complaint "as of right" on March 25, 2022 "to add a co-plaintiff." *Plaintiffs' Motion for Leave to Amend*, p. 1 (ECF No. 114) ("*Pls' M.*"); *see Amended Complaint* (ECF No. 11).

In May 2022, Defendants informed Plaintiffs of Defendants' position that neither the Governor nor the Attorney General was a proper Defendant, inquired whether Plaintiffs planned to seek leave to amend, and told Plaintiffs that if Plaintiffs chose not to seek leave to amend Defendants planned on filing a Motion to Dismiss directed at Plaintiffs' then-operative first Amended Complaint. The parties later filed a Joint Motion for Modification of this Court's

3

initial Order which would allow Plaintiffs to move for leave to amend on or before June 17, 2022 (ECF No. 20). This Court granted that Motion and "adopt[ed] the dates as proposed by the parties in their motion." ECF No. 21.

Plaintiffs declined to seek leave to amend. As a result, Defendants filed their first Motion to Dismiss and supporting materials in June 2022 (ECF No. 23). Because Plaintiffs declined to amend to name the known proper Defendants, a significant portion of Defendants' brief was devoted to arguing that Plaintiffs lacked standing and the Eleventh Amendment barred their claims because neither the Governor nor the Attorney General had the necessary connection with the enforcement of the challenged laws. *See Defendants' Memorandum in Support of their Motion to Dismiss*, pp. 1-2, 18-23 & n.10 (ECF No. 23-1); *see also Defendants' Reply Memorandum in Support of their Motion to Dismiss*, pp. 1, 5-7 (ECF No. 32).

After forcing Defendants to brief those issues as to both the Governor and the Attorney General, Plaintiffs promptly "concede[d] that the Eleventh Amendment would bar its [sic] claims against Defendant Lamont as the Governor." *Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss*, p. 15 n.5 (ECF 31) ("*Pls' O to 1st MTD*"). Plaintiffs knew then (in July 2022) that "the Commissioner of Correction and/or the Commissioner of Administrative Services" were the proper Defendants. *Id*. But instead of taking curative action to avoid forcing the parties and the Court to waste time and resources, Plaintiffs said they "will" amend the Complaint to "join" the known correct Defendants at some unspecified point in the future even though it was already past the amendment deadline. *Id*. Plaintiffs offered no reason why they had not sought this Court's leave to join those Defendants before the deadline. In response, Defendants pointed out that any future attempt to amend would be untimely and that Plaintiffs would be unable to establish good cause given that it was already "past the deadline and

4

Defendants advised Plaintiffs in writing of the proper Defendant issue long ago, specifically to allow Plaintiffs an opportunity to seek to cure it." *Defendants' Reply Memorandum in Support of their Motion to Dismiss*, p. 7 (ECF No. 32).

Those standing and proper Defendant issues—which Plaintiffs could have easily avoided—ended up being the primary focus of the oral argument this Court ordered on Defendants' first Motion to Dismiss in October 2022 (ECF No. 41). They also ended up being the primary focus of this Court's detailed 24-page published Order granting Defendants' first Motion to Dismiss in March 2023. *See Order Granting Motion to Dismiss* (ECF No. 45), reported as *Beatty v. Tong*, 659 F. Supp. 3d. 219 (D. Conn. 2023) (Meyer, J.) ("*1st MTD Decision*" or *Tong*). This Court noted that "[i]n response to the motion to dismiss, the plaintiffs conceded that their claims against the Governor are barred by the Eleventh Amendment" and the Court "summarily dismissed all their claims against Governor Lamont." *Id*. at 10. "Accordingly, the only remaining defendant [wa]s the Attorney General." *Id*. Even though the Commissioners of Correction and the Department of Administrative Services headed departments that "are integrally involved with the administration of" the challenged laws, Plaintiffs failed to name them. *Id*.

Because this Court granted Defendants' first Motion to Dismiss on those predicate jurisdictional grounds, the Court did not "address the Attorney General's other arguments for dismissal." *Id*. at 22. Those arguments included that this Court should dismiss Plaintiffs' claims for failure to state a claim because Plaintiffs could not—and did not—plausibly allege that any putative fine was grossly disproportional under the Second Circuit's decision in *United States v. Viloski*, 814 F.3d 104 (2d Cir. 2016), which applied the Supreme Court's decision in *United*

States v. Bajakajian, 524 U.S. 321 (1998). *See Defendants' Memorandum in Support of their Motion to Dismiss*, pp. 30, 38-40 (ECF No. 23-1).

Plaintiffs' filings establish that they were aware no later than July 2022[5] that *Bajakajian*, *Viloski*, and related binding precedent establishes that the nature of Plaintiffs' criminal conduct was crucial to Plaintiffs' claims that the putative fines were constitutionally excessive. *See, e.g.*, *Pls' O to 1st MTD*, pp. 21, 22, 23, 29, & 38 (referencing *Viloski*). For example, after discussing Supreme Court precedent, Plaintiffs acknowledged that "all subsequent cases applying the [Excessive Fines] Clause to people convicted of crime use the conviction conduct itself as the denominator in the Eighth Amendment analysis" and supported that statement with a citation to *Viloski* and five other published Second Circuit decisions focusing on the specific facts regarding the criminal conduct of the individual alleging an Excessive Fines Clause violation. *Id.* at 38 (citing *Viloski*, 814 F.3d at 113). Plaintiffs followed that by emphasizing that the Excessive Fines Clause is *inter alia* "concerned with the comparison between the '*amount* of the forfeiture . . . to the *gravity* of the defendant's offense.'" *Id.* at 40 (quoting *Bajakajian*, 524 U.S. at 336-37 (emphases Plaintiffs')).

## II.    This Court's Dismissal of Plaintiffs' Second Amended Complaint

In its Order granting Defendants' first Motion to Dismiss, the Court gave Plaintiffs leave to amend over Defendants' objections based on Plaintiffs' statements in their briefing and at oral argument and without requiring Plaintiffs to submit a proposed amended complaint. *See 1st MTD Decision*, p. 24. Despite Defendants' argument that the nature of Plaintiffs' criminal conduct was

---

[5] To be clear, Plaintiffs almost certainly were (and certainly should have been) aware of *Bajakajian*, *Viloski*, and other binding precedent focusing on the specifics of the criminal conduct before they filed their initial Complaint in this action. July 2022 was just the first time Plaintiffs expressed that awareness in writing on the docket.

crucial to the Excessive Fines Clause analysis and Plaintiffs' explicit acknowledgement of the binding precedent establishing that, Plaintiffs' Second Amended Complaint "allege[d] few facts that would allow for a reasoned evaluation of the four *Bajakajian* factors." *Order Granting in Part and Denying in Part Motion to Dismiss*, p. 24 (ECF No. 107) ("*2d MTD Decision*").

In June 2023, Defendants again moved to dismiss, arguing *inter alia* that the nature of Plaintiffs' underlying criminal conduct was crucial to the analysis and discussing the *Bajakajian* factors in detail. *See Defendants' Memorandum in Support of their Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint*, pp. 39-40 (ECF No. 59-1) ("*MIS 2d MTD*"). Defendants argued that Plaintiffs had not plausibly alleged excessiveness in part because Plaintiffs did not allege facts regarding their underlying criminal conduct. *See id*. at 39. Defendants also moved to stay discovery pending decision on their second Motion to Dismiss. Plaintiffs objected, characterizing Defendants' arguments "on the merits"—parts of which were consistent with this Court's later decision granting Defendants' Motion in large part—as "weak and unlikely to succeed at any level of review." *Plaintiffs' Memorandum in Opposition to Defendants' Motion for a Stay of Discovery*, p. 6 (ECF No. 62). Two days after Plaintiffs filed their Opposition and before Defendants' deadline to file a written Reply, this Court denied Defendants' Motion to Stay in a docket Order following a status conference (ECF No. 63).

Plaintiffs again responded to Defendants' Motion to Dismiss with reference to binding authority establishing that the details of Plaintiffs' criminal conduct were important to the analysis. Indeed, Plaintiffs went so far as to state that "[t]he Supreme Court has said . . . in unmistakable terms" that Excessive Fines Clause claims require the Court to "'compar[e] the amount of the forfeiture to the gravity of the defendant's offense.'" *Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint*, pp. 34-35

(quoting *Bajakajian*, 524 U.S. at 336-37). And Plaintiffs again argued that the Excessive Fines Clause is *inter alia* "concerned with the comparison between the '*amount* of the forfeiture . . . to the gravity of the defendant's offense.'" Id. at 40 (quoting *Bajakajian*, 524 U.S. at 336-37 (emphasis Plaintiffs')).

This Court held argument on Defendants' second Motion to Dismiss in October 2023. On the merits, Defendants argued that Plaintiffs had failed to meet their burden "to allege facts" to support application of the *Viloski* factors. *See, e.g.*, *Tr. of 10/16/23 Arg.*, pp. 44-46, 73 (A-59). When questioning Plaintiffs' counsel, the Court indicated that it "is clear in *Viloski* the factors that the Court should look at" and asked Plaintiffs counsel if the Court should look at those factors in this case. *Id.* at 59, ls. 10-13 (A-74). Notably, Plaintiffs' counsel did not respond that the Court should not. Rather, Plaintiffs' counsel responded that he did not "think that the Court has to." *Id.* at 59 ls. 14-15 (A-74). That said, Plaintiffs' counsel acknowledged that he was "not aware of any" cases that would allow the Court to avoid the factors. *Id.* at 61 ls. 8-20 (A-76).

The Court then questioned Plaintiffs' counsel in detail regarding the factors. *See id.* at pp. 62-68 (A-77). Plaintiffs' counsel stated that his recollection was that Plaintiff Beatty had "two charges" for "simple drug possession." *Id.* at p. 62 l. 19-p. 63 l. 2 (A-77).[6] Contrary to that statement, Plaintiffs' proposed Third Amended Complaint alleges that Plaintiff Beatty "was incarcerated by Connecticut between 2000 and 2002 for *three* charges stemming from *a*[7] *sale of*

---

[6] Plaintiffs' Second Amended Complaint and earlier Complaints alleged only that Plaintiff Beatty was incarcerated "for charges stemming from drug possession." *Redline Reflecting Changes from Second to Third Proposed Amended Complaint*, original ¶ 22 (ECF No. 114-1) ("*Redline*"). For the sake of clarity, Defendants' citations to the *Redline* will not include strikeouts and other editing markers.

[7] Contrary to Plaintiffs' proposed paragraph 23, which states that Plaintiff Beatty's charges stemmed from "*a* sale of marijuana and cocaine," *Proposed 3d AC*, ¶ 23 (emphasis added),

*marijuana and cocaine.*" *Proposed Third Amended Complaint*, ¶ 23 (ECF No. 114-2) (emphases

added) ("*Proposed 3d AC*"). It also alleges that one of Plaintiff Beatty's charges was "risk of

injury to a minor," which was predicated on allegations that "one or two of Ms. Beatty's children

were in her car on two of the occasions" that Plaintiff Beatty sold "marijuana and cocaine." *Id.* at

¶¶ 24-25. Plaintiff Beatty pled guilty to all three charges. *See id.* at ¶ 25. Plaintiffs' proposed

Third Amended Complaint also alleges that Plaintiff Beatty was "convicted of a string of" other

offenses including larceny, criminal trespass, possession of drug paraphernalia, possession of

narcotics, failure to appear, and assault. *Id.* at ¶ 22 & n.1.[8]

Ultimately, Plaintiffs' counsel acknowledged that the Second Amended Complaint did

not contain "any information from Ms. Beatty or Mr. Johnson on" aspects of the *Viloski* factors.

*Id.* at 65 ls. 9-12 (A-80). The Court responded by saying:

> [Y]ou guys have known about *Viloski*. Last time we were here a year ago *Viloski*
> was in the briefing. Everybody knew this was what the Second Circuit has said is
> the controlling test. Why would there be nothing in the pleadings?

*Id.* at p. 65 ls. 13-17 (A-80). The Court noted that counsel had "ready access to your plaintiffs in

the case," and could have made "their own FOIA request for information that would bear upon

the *Viloski* factors." *Id.* at p. 65 ls. 20-24 (A-80). The Court told Plaintiffs' counsel that it "was

not very helpful that the pleadings don't contain" the required allegations. *Id.* at p. 65 ls. 24-25

(A-80). Plaintiffs did not offer to amend to add the required allegations during argument, or at

any point before this Court's ruling on Defendants' second Motion to Dismiss.

---

Plaintiffs' proposed paragraph 24 references multiple "sales." *Id.* at ¶ 24. Plaintiffs make no
effort to explain the apparent inconsistency.

[8] Plaintiffs allege that these various offenses are not relevant. *Proposed Third Amended
Complaint*, ¶ 22 n.1. Defendants disagree, but are limited in their ability to explain why given the
procedural posture of this Motion and Opposition.

Discovery continued after the argument. In discovery, Plaintiffs consistently objected on relevance grounds to Defendants' efforts to obtain the information necessary to analyze the *Viloski* factors. During the meet and confer process, Defendants repeatedly and expressly informed Plaintiffs that they were seeking the information based on *Viloski* and other binding precedent and reminded Plaintiffs that this Court had said during argument that *Viloski* was the "controlling test." *Id.* at p. 65 ls. 13-17 (A-80). Despite that, Plaintiffs maintained their position that the *Viloski* factors were not relevant. Under the Court's Scheduling Order, discovery closed on February 1, 2024.[9]

This Court granted Defendants' second Motion to Dismiss in part and denied it in part on February 27, 2024. Specifically, the Court granted "the motion to dismiss as to all three plaintiffs to the extent that they raise facial and as-applied challenges to Connecticut's pay-to-stay law under the Excessive Fines Clause of the Eighth Amendment." *2d MTD Decision*, p. 33. The Court denied "the motion to dismiss as to the plaintiffs Teresa Beatty and Douglas Johnson solely to the limited extent that they allege that the defendants seek to enforce a fine exceeding the amount that may be lawfully imposed under the Connecticut pay-to-stay law." *Id*. Notably, the Court's limited denial of Defendants' second Motion to Dismiss appears to have been premised on factual allegations in the Second Amended Complaint that had no apparent basis and that Plaintiffs propose to withdraw in their Third Amended Complaint. *Compare id*. at 31 (referencing allegations that Plaintiff Beatty and Plaintiff Johnson were charged more than

_____

[9] Defendants requested—and this Court granted—a limited extension of the discovery deadline to allow the parties to address outstanding disputes regarding Defendants' discovery requests to Plaintiffs, including whether Plaintiffs' relevance objections to Defendants' *Viloski* Interrogatories were proper. *See* ECF Nos. 99, 102-106.

permitted under state law); *with Redline*, original paragraphs 39 and 63 (withdrawing the allegations).[10]

In its excessiveness analysis, the Court reasoned that "Courts must apply what are known as the '*Bajakajian* factors[11]'" and cited Second Circuit precedent that appeared in both rounds of Plaintiffs' briefing. *2d MTD Decision*, p. 23. The Court noted that "[t]he plaintiffs allege few facts that would allow for a reasoned evaluation of the four *Bajakajian* factors" and repeated Plaintiffs' allegations that "Beatty was in prison for 'charges stemming from drug possession'" and that "Johnson was in prison for 'drug-related charges.'" *Id.* at 24 (quoting Second Amended Complaint).[12] "Even worse," the Second Amended Complaint was "completely devoid of information about Tosado's crime." *Id.* As a result, the Court was forced to take "judicial notice

---

[10] In its decision the Court characterized the overpayment issue as "evident from the allegations of the complaint but overlooked by both sides in their briefing on the motion to dismiss." *2d MTD Decision*, p. 31. Defendants did not overlook the issue. Rather, Defendants argued that to the extent Plaintiffs' claims could be viewed as based on the accuracy of the calculations they would be subject to dismissal because Plaintiffs could challenge the accuracy of the calculations in the state proceedings and "'[a] § 1983 claim' is 'unavailable' where Plaintiffs 'have an adequate state-law remedy' to challenge the calculations' accuracy." *MIS 2d MTD*, p. 38 & n.43 (quoting *Gilbert v. Sinclair*, 2019 U.S. Dist. LEXIS 122727, at *9 (W.D. Wash. May 22, 2019)). Plaintiffs did not respond to that argument, which Defendants understood to be an abandonment of any overpayment claim the Second Amended Complaint could reasonably have been construed as asserting; "[c]ourts in this circuit have held that a plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute[s] an abandonment of those claims." *Pileggi v. Mathias*, 2023 U.S. Dist. LEXIS 147952, at *5 (D. Conn. Aug. 23, 2023) (Thompson, J.) (quotation marks omitted) (citing cases). Since Plaintiffs have now apparently formally abandoned any such claims because they had no factual basis, this Court need not determine whether Plaintiffs previously abandoned any such claims or address Defendants' argument made in their prior briefing that any such claims should have been dismissed.

[11] As discussed above, the Court and the parties have sometimes referred to the factors as the *Viloski* factors and at other times referred to them as the *Bajakajian* factors. Since the Court's most recent decision refers to them as the *Bajakajian* factors, Defendants will use that nomenclature for the remainder of this filing.

[12] As discussed above, the proposed Third Amended Complaint shows that those allegations left out many likely important details.

of online court records[13]" that showed that "Tosado was convicted of some serious crimes, including possession of an assault weapon and possession of a weapon in a motor vehicle, as well as breach of peace and two charges of failure to appear." *Id*. Based on Plaintiffs' failure to allege the necessary facts, the Court concluded that the first two factors weighed in Defendants' favor. *Id*.

As to the "third *Bajakajian* factor ('the maximum sentence and fine that could have been imposed'), the Second Amended Complaint allege[d] that . . . Beatty's maximum statutory fine was $10,000." *Id*. at 25. Plaintiffs' proposed Third Amended Complaint would withdraw that allegation and replace it with allegations that the maximum statutory fines for Plaintiff Beatty's conduct would have been $32,000 (more than three times what Plaintiffs previously alleged). *See Redline*, original ¶ 23, new ¶¶ 27-29; *see also Motion for Leave to Amend*, p. 15 (same).[14] Based in part on Plaintiffs' allegations that Plaintiff Beatty's maximum fine was $10,000 and that "absent relief from this Court, Ms. Beatty will lose $83,762.26 in debt levied in violation of the constitution and calculated in an arbitrary way," *Redline*, original ¶¶ 23 and 40, this Court concluded that "the third factor weighs in plaintiffs' favor since it appears that the costs of incarceration that the defendants demand is likely far more than the amounts that the plaintiffs could have been formally fined by a state court judge at sentencing." *2d MTD Decision*, p. 25.

Plaintiffs now acknowledge that both sides of that equation were not as favorable to them as they repeatedly led the Court to believe as to Plaintiff Beatty. Contrary to Plaintiffs' original allegation that the maximum fine was $10,000, it was actually $32,000. On the other side of the ledger, contrary to Plaintiffs' original allegation that Plaintiff Beatty "will lose $83,762.26,"

---

[13] Defendants provided those records in their briefing to assist the Court.

[14] Plaintiffs offer no explanation for their allegations and representations to the Court that the Plaintiff Beatty's maximum fine was $10,000 when—in fact—it was $32,000.

Plaintiffs now acknowledge that "Ms. Beatty will owe the state a maximum of $56,430.80." *Redline*, new ¶ 46. Plaintiffs also now acknowledge that the maximum is likely to go down because amounts may be "deducted" from the value of the estate, in part because Plaintiff Beatty is "a creditor to the Mills estate." *Id*. at new ¶¶ 41, 46. Plaintiffs also now acknowledge—for the first time—that Plaintiff Beatty will not be required to pay any costs of incarceration if the "estate's value . . . dip[s] below $125,000." *Id*. at new ¶ 46.

"As to the fourth factor ('the nature of the harm caused by the defendant's conduct')," this Court found that Plaintiffs "again fail[ed] to allege necessary facts." *2d MTD Decision*, p. 25. As a result, this Court granted Defendants' Motion in large part, with citation to multiple cases holding that "[a] court may dismiss a complaint that claims a violation of the Excessive Fines Clause if the plaintiff fails to allege the facts that are necessary to evaluate the *Bajakajian* factors." *Id*. at 25-26 (citing cases).

## Argument

### I.     The Standard Applicable to Plaintiffs' Motion

Although "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires,'" the Supreme Court has made clear that justice does not require a Court to allow amendment when there is an "apparent or declared reason" to deny it, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 283 (2d Cir. 2000) (discussing and applying *Foman*); *Pls' M.*, p. 6 (acknowledging those bases for denial).

## II.      This Court Should Deny Plaintiffs' Motion Based on Undue Delay

This case has been pending for over two years. At its outset, this Court issued an "Order on Pretrial Deadlines" that provided, in pertinent part: "Amended Pleadings due by 5/13/22." ECF No. 3. The parties later filed a Joint Motion for Modification of this Court's initial Order which would allow Plaintiffs to move for leave to amend on or before June 17, 2022 (ECF No. 20). This Court granted that Motion and "adopt[ed] the dates as proposed by the parties in their motion." ECF No. 21.

This Court's Orders set a broad deadline for amendments. "Under Rule 16(b), a party may obtain a modification of the scheduling order only 'upon a showing of good cause.'" *Kassner v. 2nd Avenue Delicatessen, Inc.*, 496 F.3d 229, 243 (2d Cir. 2007) (quoting Rule 16(b)). In a footnote, Plaintiffs argue that a subsequent "Scheduling Order did not set a date by which the parties must move to amend the pleadings (ECF No. 72), and thus the liberal standard under Rule 15 applies" rather than Rule 16(b)'s good cause standard. *Pls' M.*, p. 6 n.23. Plaintiffs ignore this Court's earlier Orders setting broad amendment deadlines, and make no effort to argue that those broad deadlines were modified. Nor do Plaintiffs cite any authority that supports their argument that this Court's earlier Orders did not trigger Rule 16(b).

Defendants believe the Rule 16(b) standard applies here. *See, e.g.*, *Conservation Law Found., Inc. v. All-Star Transp., LLC*, 2022 U.S. Dist. LEXIS 201153, at *13 (D. Conn. Nov. 4, 2022) (Farrish, M.J.). *Conservation Law* is instructive. There—as here—the party seeking to amend sought to avoid Rule 16(b) because "recent scheduling orders . . . contained no deadline for amending pleadings." *Id.* (quotation marks omitted). The Court rejected that argument, in part, because the moving party "neglect[ed] to note" that the Court's initial "Order on Pretrial

Deadlines" had set an amendment deadline and the later scheduling orders the party referenced did not undo that deadline. *See id.* at *13-14.

     This Court should reach a similar conclusion here. As Plaintiffs acknowledge, where the good cause standard applies "the Court primarily considers whether the moving party has been diligent." *Pls' M.*, p. 6 n.23 (citing *Kassner*, 496 F.3d at 242). Plaintiffs argue that they were "diligent in moving for leave to amend following the Court's ruling on the Motion to Dismiss," but that disregards the broader and lengthy undue delay that Plaintiffs have caused. *Id.* Plaintiffs' first two amended Complaints named the wrong Defendants. Defendants approached Plaintiffs in May 2022 and advised Plaintiffs of the wrong Defendant issue with the intent and hope Plaintiffs would timely seek to correct it. Plaintiffs refused, for no apparent reason; after Defendants filed their first Motion to Dismiss, Plaintiffs promptly admitted that the Governor was a wrong Defendant and—after full briefing and argument—this Court held in March 2023 (a year after this case was filed) that the Attorney General was also a wrong Defendant.

     Even if Plaintiffs desired to test their (incorrect) theory that the Attorney General was a proper Defendant, Plaintiffs could easily have timely sought to amend to add the proper Defendants. If Plaintiffs had, this Court's decisions in this case indicate that this Court may have dismissed Plaintiffs' claims against the Attorney General, reached the merits of Plaintiffs' claims against the known proper Defendants, and issued a decision similar to the one it issued in February 2024 in March 2023. *See, e.g.*, *Conn. Assn. of Health Care Facilities v. Rell*, 2010 U.S. Dist. LEXIS 54649, at *16 (D. Conn. June 2, 2010) (dismissing claims against the then-Governor on proper defendant grounds but noting that "[t]his dismissal does not prejudice Plaintiff because the complaint is properly brought against the Commissioner of Social Services" who was also a defendant). That would have saved the Court and the parties nearly a year of

litigation and the associated resources. That constituted undue delay and warrants denying Plaintiffs' Motion.

### III.    This Court Should Deny Plaintiffs' Motion Based on Bad Faith

Bad faith is a recognized ground to deny leave to amend. *See, e.g.*, *Foman*, 371 U.S. at 182. A court may "find bad faith when a party withhold[s] facts clearly known to it prior to the filing of the complaint, particularly when done for some ulterior purpose, . . . unless satisfactory explanation clearly shows [a lack of bad faith]." *Bank v. Spark Energy, LLC*, 2020 U.S. Dist. LEXIS 219352, at *6-7 (E.D.N.Y. Nov. 23, 2020), *aff'd*, 860 F. App'x 205, 206-07 (2d Cir. 2021) (Summary Order). It appears clear that Plaintiffs knew the information necessary to plead the *Bajakajian* factors long ago, and Plaintiffs do not argue otherwise. Rather, Plaintiffs appear to admit that they made a tactical decision not to plead that information because they wanted to argue "that the *Bajakajian* factors are inapposite here in the novel context of Connecticut's prison debt scheme." *Pls' M.*, p. 7.

Defendants take Plaintiffs at their word, but there is no reason why Plaintiffs could not have pled the facts to allow the Court to analyze the *Bajakajian* factors while—at the same time—arguing that this Court did not need to reach those factors given what Plaintiffs claimed is the novel context of the challenged laws. Plaintiffs claim that Second Circuit precedent establishes that "a party cannot be held it its adversary's view of the law; what matters is the trial court's wisdom on any claimed deficiencies." *Pls' M.*, p. 8.

Contrary to Plaintiffs' argument, Second Circuit precedent makes clear that Plaintiffs "were not *entitled* to an advisory opinion from th[is] Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies." *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (emphasis added; quotation marks omitted). Rather, this

16

Court has discretion to decide whether Plaintiffs' conduct constituted bad faith that allows this Court to deny amendment under these circumstances. Defendants believe this case—where Plaintiffs have had "two previous opportunities to amend" and seek to amend a third time to add information that was presumably in their control from the outset—falls closer to *Bellikoff* than to the cases Plaintiffs cite. *Id.*; *Cf. Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (relied on by Plaintiffs, holding that a district court abused its discretion by forcing the plaintiff to "agree to cure deficiencies not yet fully briefed and decided" at a pre-motion conference "or forfeit the opportunity to replead").[15]

That is particularly true given that the *Bajakajian* factors reflected more than just Defendants' "view of the law." *Pls' M.*, p. 8. As Defendants have consistently argued, the *Bajakajian* factors are dictated by Supreme Court and Second Circuit precedent. This Court correctly recognized that "courts are not free to altogether disregard the *Bajakajian* factors." *2d MTD Decision*, p. 23 (citing *United States v. Varrone*, 554 F.3d 327, 331 (2d Cir. 2009) (Sotomayor, J.)). This Court can—and should—deny Plaintiffs' Motion on bad faith grounds under these circumstances.

## IV.    This Court Should Deny Plaintiffs' Motion Based on Dilatory Motive

A dilatory motive exists where the party has taken actions "with the intention of delaying or slowing down the progress of the case or of buying more time." *Silagy v. R.C. Cook Ins.*

---

[15] *Lorely* apparently did not implicate Rule 16 and its good cause requirement. *See SEC v. Rio Tinto PLC*, 2020 U.S. Dist. LEXIS 77067, at *30 (S.D.N.Y. Mar. 9, 2020) (rejecting an argument similar to Plaintiffs' because Rule 16 was implicated). Moreover, in *Lorely*, the Second Circuit went out of its way to make clear that "[o]ur opinion today, of course, leaves unaltered the grounds on which denial of leave to amend has long been held proper, such as *undue delay, bad faith, dilatory motive, and futility*—none of which were a basis for the denial here." *Loreley*, 797 F.3d at 190 (emphasis added). Therefore, *Lorely* offers no support for Plaintiffs here, given that all of those recognized grounds for denial of leave are present.

*Agency, Inc. (In re Great Court Ins. Agency, LLC)*, 2022 Bankr. LEXIS 2193, at *10-11 (Bankr. N.D. Ohio Aug. 5, 2022). Although Plaintiffs now appear ready to move this case, Plaintiffs' conduct at earlier stages of this case is consistent with dilatory motives. For example, Plaintiffs' refusal to correct the wrong Defendant issue when Defendants advised Plaintiffs of it in May 2022 had the effect of buying time with no other apparent legal basis. In the months that followed, the home in the estate underlying Plaintiff Beatty's claims was sold and Plaintiffs Johnson and Tosado were added as Plaintiffs. Although Defendants are loath to speculate regarding Plaintiffs' subjective motives, there are indications of dilatory motive and that provides an independent basis to deny Plaintiffs' Motion.

**V.    This Court Should Deny Plaintiffs' Motion Because Plaintiffs have Already had Multiple Opportunities to Amend**

Since this action was brought, there has been a first amendment as of right and this Court granted leave to amend over Defendants' objection. That weighs against Plaintiffs' Motion. *See, e.g.*, *Bellikoff*, 481 F.3d at 118 (affirming a denial of leave to amend where the plaintiffs had "two previous opportunities to amend"). Although Plaintiff Johnson and Plaintiff Tosado were added in the Second Amended Complaint, they are represented by the same counsel as Plaintiff Beatty (the sole remaining initial Plaintiff) and the legal issues are largely the same. Plaintiffs have cited, and Defendants are aware of, no precedent indicating that a newly added Plaintiff is entitled to amend after there have already been multiple amendments and motions to dismiss in the case. Rather, any such amendment would appear to be in this Court's discretion and Defendants believe this Court should deny Plaintiffs' Motion.

**VI.    This Court Should Deny Plaintiffs' Motion Based on Undue Prejudice**

This Court may deny leave to amend based on "undue prejudice to the opposing party by virtue of allowance of the amendment." *Foman*, 371 U.S. at 182. Plaintiffs affirmatively argue that "the undue prejudice inquiry is 'perhaps most important' among this Court's amendment considerations." *Pls' M.*, p. 10 (quoting *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). In Plaintiffs' view, Defendants have the burden to show undue prejudice and Defendants cannot meet that burden.

Plaintiffs are incorrect on both counts. The burden shifts to Defendants to show prejudice only if Plaintiffs meet their initial burden to show they were diligent. Plaintiffs have not met that burden, nor can they. The diligence "showing principally turns on whether [Plaintiff] knew, or should have known, the information sought to be added to the pleading before the deadline in the scheduling order." *Lee v. Delta Airlines, Inc.*, 2023 U.S. Dist. LEXIS 42989, at *16-17 (E.D.N.Y. Mar. 14, 2023) (quotation marks omitted). The information at issue here was likely within Plaintiffs' knowledge long before the relevant deadlines. That should be dispositive.

But Defendants would be able to establish prejudice even if they had the burden. Plaintiffs seek to minimize the prejudice to Defendants as "mere delay or litigation expense." *Pls' M.*, p. 12. But these circumstances are more than that. The District Court's decision in *Bank*—which the Second Circuit affirmed—is instructive. There—as appears to be the case here—the plaintiff "knew of, and 'easily' could have alleged in the original complaint, the critical facts only now included in the Proposed Amended Complaint." *Bank,* 2020 U.S. Dist. LEXIS 219352, at *7. But instead of pleading those facts, the plaintiff "decided to draft a 'barebones' complaint—that he had to know was missing key factual allegations, including an element of one claim—and wait[] to see how he would fare on [a] motion to dismiss." *Id.* at *10

(quotation marks omitted). The Court denied the plaintiff leave to amend, finding *inter alia* that "[a]t this point, Defendant has spent time and money litigating a motion to dismiss, and the Court has expended valuable resources deciding that motion." *Id*. The court denied leave even though the plaintiff claimed "little, if any, discovery would be needed." *Id*. at *11. "Even if that were true, the point is immaterial: Plaintiff's deliberately deficient pleading has already needlessly wasted everyone's time and resources." *Id.*

The court's logic in *Bank* arguably applies with even greater force here. This Court has already had to hold argument on and write lengthy decisions on two motions to dismiss over two years of litigation. *See Block v. First Blood Associates,* 988 F.2d 344, 350 (2d Cir. 1993) (noting that "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice" (quotation marks omitted)). And if this Court allows amendment, there will be discovery—when this Court ruled on Defendants' second Motion to Dismiss, the parties were in the midst of discovery disputes that have yet to be resolved.

## VII.   This Court Should Deny Plaintiffs' Motion Based on Futility

### A. The Proposed Complaint Does Not Allege any Certainly Impending Injury to Plaintiff Beatty

 In allowing Plaintiffs' claims to survive the standing and ripeness aspects of Defendants' first two Motions to Dismiss, this Court relied on Plaintiffs' past allegations to conclude that Plaintiff "'Beatty has alleged enough to plausibly show that she is subject to a threatened injury that is certainly impending and also that there is a substantial risk that harm to her will occur by means of the loss of more than $80,000 from her inheritance.'" *2d MTD Decision*, p. 13 (quoting *Tong*, 659 F. Supp. 3d. at 230). Defendants repeatedly argued that Plaintiffs' allegations were not plausible and did not establish certainly impending harm given the nature of the probate

processes. This Court rejected Defendants' arguments based on the allegations in Plaintiffs' first and second amended complaints.

A court should deny a motion to amend as futile when the court would lack jurisdiction over the proposed amended complaint. That is the case here. In denying Defendants' second Motion to Dismiss, the Court reasoned that Defendants did not "suggest any scenario in which the probate court could distribute the estate without complying with the dictates of the lien to pay part of the estate to DAS instead of to Beatty." *2d MTD Decision*, p. 13.[16] As an initial matter, it is important for the Court to understand the nature of Defendants' lien—it does not necessarily "dictate[ ]" that the Probate Court "pay part of the estate to DAS instead of to Beatty." *Id*. Although the Proof of Claim states that Plaintiff Beatty is indebted to the state "in the sum of $83,762.26," the Claim against the estate is "for the sum of $83,762.26 or fifty percent of the distributive share of" Plaintiff Beatty, "**whichever is the lesser sum.**" *Redline*, Proposed New Exhibit 1 (ECF No. 114-1, p. 44) (emphasis added). Therefore, if Plaintiff Beatty's ultimate distributive share is below a certain amount, the Probate Court can and will distribute the estate without requiring any portion of it be paid to DAS rather than Plaintiff Beatty and that will be fully consistent with the lien.

After repeatedly criticizing Defendants for arguing that Plaintiff Beatty may never have to reimburse any costs of incarceration, Plaintiffs now expressly admit in their proposed Third

---

[16] Defendants intended to more than suggest that Plaintiff Beatty may not ever have to reimburse costs of incarceration; Defendants explicitly argued that the Second Amended Complaint "offer[ed] no basis other than speculation to conclude that" Plaintiff Beatty "ever will" reimburse any costs of incarceration. *MIS 2d MTD*, p. 11; *see also Defendants' Reply Memorandum in Support of their Motion to Dismiss*, pp. 2-5 (ECF No. 70) ("*RIS 2d MTD*") (arguing *inter alia* that it was "**Speculative If**" Plaintiff Beatty would ever have to reimburse costs of incarceration because of the estate's admitted debts); *Tr. of 10/16/23 Arg.*, pp. 12-24 (A-27) (arguing that it was unclear when Plaintiff Beatty's alleged injury was "coming or if it's going to come").

Amended Complaint that such a scenario is possible. Specifically, after arguing that it was certain that "[a]bsent relief from this Court, Ms. Beatty **will** lose title to her property in violation of the Excessive Fines Clause[17]," Plaintiffs now seek to allege only that Plaintiff Beatty "must reimburse Connecticut for some share of her prison debt **so long as the estate's value does not dip below $125,000.**" *Redline*, ¶ 46 (emphasis added). Put differently, Plaintiffs now admit—as they must—that if the estate's value dips below $125,000, Plaintiff Beatty will not have to reimburse any costs of incarceration at all. That establishes that Plaintiff Beatty's proposed claimed injury would not be "'certainly impending.'" *2d MTD Decision*, p. 13 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (additional quotation marks omitted)). It also establishes that any risk of harm in the proposed Complaint would not be sufficiently "'substantial'" to support standing. *Id*. (quoting *Driehau*s, 573 U.S. at 158 (additional quotation marks omitted)).

Plaintiffs bear "the burden of 'alleg[ing] facts that affirmatively and plausibly suggest that [they have] standing to sue.'" *Kulwicki v. Aetna Life Ins. Co.*, 2024 U.S. Dist. LEXIS 43676, at *5 (D. Conn. Mar. 12, 2024) (Oliver, J.) (quoting *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 416-17 (2d Cir. 2015)). Plaintiffs' allegations in the proposed Complaint as to Plaintiff Beatty—the only remaining initial Plaintiff—would fail to meet that burden. That alone would warrant denying Plaintiffs' Motion in its entirety.

Plaintiffs' failure to meet their burden alone should be enough to establish futility; it is Plaintiffs' "burden to prove their standing by pointing to specific facts, not" Defendants' "burden to disprove standing." *Clapper v. Amnesty International USA*, 568 U.S. 398, 412 n.4 (2013). In

---

[17] *Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint*, p. 9 (ECF No. 65) ("*Pls' O to 2d MTD*") (emphasis added).

any event, Plaintiffs now acknowledge—as Defendants have argued from the outset—that "potential deductions from the estate" may result in Plaintiff Beatty's share of the estate dipping below $125,000 and preventing her from having to reimburse any costs of incarceration at all. *Redline*, ¶ 46. Those include Plaintiff Beatty's "claims against the estate," which Plaintiff Beatty has valued at $198,163.66. (A-97). Attorney's fees will also be deducted from the estate, and they appear likely to be substantial; as long ago as April 2022, one of the attorneys handling the estate was claiming over $18,000 in attorney's fees and there has been more litigation and the involvement of another attorney in the years since then. (A-103).

**B. The Proposed Amended Complaint Establishes that Plaintiff Beatty and Plaintiff Johnson's Claims would be Subject to Dismissal on Prudential Ripeness Grounds**

In rejecting Defendants' prudential ripeness argument, this Court reasoned that "it is pure conjecture to assume that the taxes and expenses would be so large that the amount paid to the defendants from Beatty's $250,000 share of the estate would drop significantly below the defendants' demand for more than $80,000." *2d MTD Decision*, p. 16. As noted above, it is important for the Court to understand the nature of Defendants' demand. Although the Proof of Claim states that Plaintiff Beatty is indebted to the state "in the sum of $83,762.26," the Claim against the estate is "for the sum of $83,762.26 or fifty percent of the distributive share of" Plaintiff Beatty, "**whichever is the lesser sum.**" *Redline*, Proposed New Exhibit 1 (ECF No. 114-1, p. 44) (emphasis added). Therefore, the amount of Defendants' demand has always been dependent on the amount of Plaintiff Beatty's distributive share, which would be determined through the probate process.

The proposed amended complaint makes clear that—as Defendants argued—deductions from the estate have already reduced Plaintiff Beatty's potential distributive share. Specifically,

23

Plaintiffs now admit that even though they previously and repeatedly alleged with certainty that absent this Court's intervention Plaintiff Beatty "will lose $83,762.26 in debt," *Redline*, original ¶ 40, based on developments in the probate process Plaintiff Beatty will now "owe the state a maximum of $56,430.80." *Id*. at proposed new ¶ 46. That is over a thirty percent reduction. Defendants believe that is "significant[ ]" by any reasonable measure. *2d MTD Decision*, p. 16. And Plaintiffs acknowledge that the amount Plaintiff Beatty will owe the state may continue to go down as far as zero. *Redline*, proposed new ¶ 46.

As to Plaintiff Johnson, this Court rejected Defendants' prudential ripeness argument in part because the Court concluded it "must credit the well-pleaded allegations of the complaint concerning the amount of the lien that was filed against Johnson's father's estate in January 2022" and could not "simply assume that the defendants intend to seek less than the lien that they have filed." *2d MTD Decision*, p. 16 n.33. Defendants never argued that the Court should assume Defendants would seek less than the lien they filed. Rather, Defendants' argument was— and is—that Defendants' claim against Plaintiff Johnson has always sought "the sum of $76,951.00 or fifty percent of the distributive share of" Mr. Johnson, "**whichever is the lesser sum.**" *Redline*, Proposed New Exhibit 1 (ECF No. 114-1, p. 47) (emphasis added). Like Plaintiffs' Second Amended Complaint, Plaintiffs' Third Amended Complaint does not plead facts to establish the value of the estate and—by extension—Plaintiff Johnson's distributive share. There is no apparent reason why, and Plaintiffs offer none.

### C. This Court Should Deny Plaintiffs' Motion as Futile Because Plaintiffs' Third Amended Complaint would be Subject to Dismissal on the Merits

Plaintiffs acknowledge—as they must—that "'[p]roposed amendments are futile if they would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules

of Civil Procedure." *Pls' M.*, p. 12 (quoting *IBEW Local Union No. 58 Pension Trust Fund and Annuity Fund v. Royal Bank of Scotland Grp.*, 783 F.3d 383, 389 (2d Cir. 2015)). Plaintiffs propose amending to plead the *Bajakajian* factors. As a threshold matter, all of Plaintiffs' proposed amendments should be futile because—as this Court recognized—one of the key appellate decisions in this area (in Defendants' view correctly) "concluded that '[b]y definition, it seems that a fine based on a criminal's cost of incarceration *will always be proportional* to the crime committed'" because it is based on the sentence of incarceration at issue. *2d MTD Decision*, 29 (quoting *Wright v. Riveland*, 219 F.3d 905, 917 (9th Cir. 2000) (emphasis this Court's)). Even though this Court emphasized that aspect of *Wright*, Plaintiffs do not mention *Wright* or make any effort to distinguish it. That should be dispositive—although *Wright* is not binding precedent, its reasoning is sound and precludes all of Plaintiffs' claims.

Plaintiffs' proposed amendments would be futile even if this Court went past *Wright* to the *Bajakajian* factors. Plaintiffs' Motion does not cite a single case applying the *Bajakajian* factors and holding that a given fine was constitutionally excessive under remotely comparable facts.

That is not surprising, because the facts Plaintiffs propose to allege fall far short of meeting their heavy burden of pleading facts that plausibly show that the challenged fines are "'grossly disproportional to the gravity of the offense.'" *2d MTD Decision*, p. 23 (quoting *Reese v. Triborough Bridge & Tunnel Auth.*, 91 F.4th 582, 589 n.2 (2d Cir. 2024) (emphasis the Second Circuit)); *see also United States v. Castello*, 611 F.3d 116, 120 (2d Cir. 2010) ("The burden rests on the [challenger of the fine] to show the unconstitutionality of the forfeiture."). As Plaintiffs correctly acknowledged (indeed, emphasized) well over a year ago, the Excessive Fines Clause is *inter alia* "concerned with the comparison between the '*amount* of the forfeiture .

. . to the *gravity* of the defendant's offense.'" *Pls' O to 1st MTD,* at 40 (quoting *Bajakajian*, 524 U.S. at 336-37 (emphases Plaintiffs')). "'[A]ny judicial determination regarding the gravity of a particular offense will be inherently imprecise,'" so "[c]ourts must apply" the *Bajakajian* factors in assessing proportionality. *2d MTD Decision*, p. 23 (quoting *Reese*, 91 F.4th at 590). The applicable test "is highly deferential" to the legislative determination at issue. *Viloski*, 814 F.3d at 113 (quotation marks omitted).

This Court has already correctly held that the second *Bajakajian* factor—"whether the defendant fits into the class of persons for whom the statute was principally designed"—"weighs against the plaintiffs" and there is no apparent basis in Plaintiffs' proposed Complaint to alter that conclusion. *2d MTD Decision*, pp. 23, 24. In addition, in discovery Plaintiffs have explicitly disclaimed any claim that the challenged laws would deprive any Plaintiff of their livelihood or future ability to earn a living.

As a result, analyzing Plaintiffs' claims will involve determining whether the challenged amount of costs of incarceration is grossly excessive by considering the first ("the essence of the crime of the defendant and its relation to other criminal activity"), third ("the maximum sentence and fine that could have been imposed"), and fourth ("the nature of the harm caused by the defendant's conduct") *Bajakajian* factors. *2d MTD Decision*, p. 23 (quoting *Reese*, 91 F. 4th at 589)). The Second Circuit has strongly indicated that this "proportionality analysis . . . presents a pure question of law." *Reese*, 91 F.4th at 590. That is consistent with other decisions addressing the issue, including *Wright*, 219 F.3d at 917, which—as noted above—this Court relied on in its decision on Defendants' second Motion to Dismiss. *See 2d MTD Decision*, p. 22.

None of Plaintiffs' claims in the proposed Third Amended Complaint would survive a motion to dismiss. Therefore, this Court should deny Plaintiffs' Motion as futile.

### A. Plaintiff Beatty's Claim in the Proposed Third Amended Complaint would be Subject to Dismissal on its Merits

### 1. The *Bajakajian* Factors Establish that Plaintiff Beatty's Claim is Futile

The first step in the Excessive Fines Clause analysis is to identify the amount of the fine. As discussed above, Plaintiffs' proposed Third Amended Complaint alleges that the amount Plaintiff Beatty may have to reimburse for costs of incarceration will range from $0 to "a maximum of $56,430.80." *Redline*, new ¶ 46. Assuming this Court concludes that it could and should reach the merits of that claim if Plaintiffs were granted leave to plead it, even the alleged maximum would be nowhere near grossly disproportional under the *Bajakajian* factors.

After previously alleging only that Plaintiff Beatty was incarcerated "for charges stemming from drug possession," Plaintiffs now propose to allege that Plaintiff Beatty was incarcerated "for three charges stemming from a sale of marijuana and cocaine." *Redline*, new ¶ 23. Those charges included "risk of injury to a minor," based on evidence "that one or two of Ms. Beatty's children were in her car on two of the occasions" that she sold drugs. *Id*. at new ¶¶ 24-25. Plaintiffs also allege that Plaintiff Beatty "was convicted of a string of" several other offenses "relating to her" substance abuse "disorder." *Id*. at new ¶ 22 & n.1. The first *Bajakajian* factor—"the essence of the crime of the defendant and its relation to other criminal activity" clearly weighs against Plaintiffs.

So does the third *Bajakajian* factor—"the maximum sentence and fine that could have been imposed." That factor creates "a strong presumption . . . that the forfeiture is constitutional" when "the value of forfeited property is within the range of fines prescribed by" the relevant criminal laws. *Lepper v. Babylon*, 2022 U.S. Dist. LEXIS 57406, at *72 (E.D.N.Y. Mar. 29, 2022) (citing *United States v. Varrone*, 554 F.3d 327, 332 (2d Cir. 2009)). After having

previously repeatedly alleged that the maximum fine for Plaintiff Beatty's criminal conduct that led directly to her incarceration was $10,000, Plaintiffs now propose to allege that the maximum fine was $32,000. *Redline*, new ¶¶ 27-29. Plaintiffs allege no facts that would plausibly support a non-speculative conclusion that Plaintiff Beatty will be required to reimburse more than $32,000. Therefore, the strong presumption should weigh in favor of futility.

But Plaintiff Beatty's proposed claim would not survive dismissal even if it were outside the strong presumption. The recent decision in *Lepper* is instructive. There, as here, the amount of the alleged fines was unclear. *See id*. at *68-69. The court began by concluding that to the extent the plaintiff challenged future fines the claims were not constitutionally ripe. *See id*. at *69. Notably, the court relied in part on a published decision finding that "two plaintiffs' claims were not ripe for review because although the fines had been assessed and payment demanded, plaintiffs had not yet paid them and were in the process of disputing them, and the complaint alleged that other plaintiffs had been successful in disputing them." *Id*. (citing *Farina v. Metro. Transportation Auth.*, 409 F. Supp. 3d 173 (S.D.N.Y. 2019)[18]). The *Farina* court reasoned that the complaint failed to "demonstrate that the fines initially demanded by defendants" would "reflect the amounts ultimately paid by plaintiffs." *Farina*, 409 F. Supp. 3d at 195-96. Given that, ripeness posed an "obstacle to justiciability: given the wide variations between the initial demands and the eventual payments, the Complaint's allegations provide no support for the proposition that" the plaintiffs whose claims were based on uncertain fines based their claims on fines "that could plausibly be considered excessive under the Eighth Amendment." *Id*. at 196.

The *Lepper* court went on to apply the *Bajakajian* factors and hold that "[r]egardless of whether the fines were for $500 total or for $250, $500, and $1,000, the Court finds the tickets

---

[18] Plaintiffs rely on a subsequent decision in a case "formerly titled *Farina*." *Pls' M.*, p. 9.

and possibility of future tickets was not excessive in violation of the Eighth Amendment." *Lepper*, 2022 U.S. Dist. LEXIS 57406, at *68-69. The court noted that the lower range of the potential fines "would be below the statutory maximum" and therefore protected by the strong presumption under the third *Bajakajian* factor. *Id*. at *73.

However, the $1,750 upper range of the potential fines would have been well above the $1,000 maximum. *See id*. at *72-73. The plaintiff's clams still failed. Even if the fines far exceeded the maximum, "the Court would find they were not grossly disproportional." *Id*. at *73. The plaintiff's conduct "posed a danger and the fines [we]re intended to correct dangerous conditions." *Id*. And "even absent potential safety concerns, the" government "and its residents are harmed when a resident disregards the" applicable requirements. *Id*.

Although *Lepper* involved very different conduct, the court's reasoning and analysis are instructive here; there is a strong presumption that a fine within the maximum is constitutional, and even when a plaintiff claims that a fine may exceed the maximum, a fine well above the maximum is not grossly disproportional where the underlying conduct poses safety concerns. Here, Plaintiff Beatty was convicted of *inter alia* "sale of marijuana and cocaine" and risk of injury to a minor based on evidence that she had "one or two of" her "children in the car on two of the occasions." *Redline*, new ¶¶ 23-24. That clearly posed safety concerns. Her convictions that led directly to the incarceration at issue exposed her to a maximum fine of $32,000. *Redline*, new ¶¶ 27-29. Those convictions were only a small piece of Plaintiff Beatty's overall criminal conduct. *See id*. at ¶ 22 & n.1.[19] Even if the Court assumes that Plaintiff Beatty will pay the alleged "maximum of $56,430.80," that is less than two times the maximum fine under

_____

[19] Plaintiffs assert that Plaintiff Beatty's broader criminal conduct is not relevant, but that argument lacks merit for reasons that Defendants will discuss in more detail below.

Connecticut state law for the convictions that led directly to this incarceration. *Redline*, new ¶ 46. And it appears that Plaintiff Beatty's conduct could have led to far larger fines in other jurisdictions. *Compare Reese*, 91 F.4th at 591 (looking to the fines imposed by other states), *with von Hofe v. United States*, 492 F.3d 175, 187 (2d Cir. 2007) (noting that federal law provided for a federal law allowed for "a statutory maximum of a $ 1 million fine" for certain drug offense conduct, while "Connecticut law" allowed "up to a $ 25,000 fine and seven years imprisonment, for the manufacture of a controlled substance"). Therefore, the third *Bajakajian* factor weighs against Plaintiffs.

So does the fourth, "the nature of the harm caused by" Plaintiff's "conduct." *Reese*, 91 F.4th at 589 (quotation marks omitted). The Second Circuit has recognized in the context of drug sales that the "resulting harm, perhaps difficult to quantify in objective terms, undoubtedly frustrate[s] society's desire to stem the use of illicit substances and the market therefor." *von Hofe*, 492 F.3d at 186-87. The harm resulting from risks of injury to minors is substantial. *See, e.g.*, *State v. Palangio*, 24 Conn. App. 300, 304-05 (1991).

Moreover, this Court cannot—and should not—leave aside the nature of the costs of incarceration in applying the *Bakakajian* factors. As this Court correctly recognized, the Ninth Circuit held that "'by definition, it seems that a fine based on a criminal's cost of incarceration *will always be proportional* to the crime committed.'" *2d MTD Decision*, 29 (quoting *Wright*, 219 F.3d at 917 (emphasis this Court's)). As discussed above, the Ninth Circuit's reasoning should apply with equal force here and establish that all of Plaintiffs' claims are futile without this Court needing to address the *Bajakajian* factors. But if this Court somehow gets past that threshold argument, the fiscal impact to the state and its taxpayers resulting from Plaintiffs Beatty's incarceration is part of the "the nature of the harm caused by" her "conduct." *Reese*, 91

F.4th at 589 (quotation marks omitted). The state assessed that harm at $83,762.26. *See, e.g.*, *Redline*, new ¶ 47. Plaintiffs now acknowledge that Plaintiff Beatty may have to reimburse "a maximum of $56,430.80." *Id.* at new ¶ 46. There is no plausible argument that requiring Plaintiff Beatty to reimburse approximately 68 percent of the assessed costs of Plaintiff Beatty's incarceration (which themselves reflect a fraction of the state's actual costs) is grossly excessive relative to the carefully quantified harm resulting from the incarceration cost to taxpayers coupled with the more "difficult to quantify" but very real harms to the state and its citizens that result from conduct that leads to convictions based on *inter alia* the sale of controlled substances and the risk of injury to minors. *von Hofe*, 492 F.3d at 186-87.

Plaintiffs cite no authority finding a fine constitutionally excessive under remotely comparable circumstances. Nor have Defendants located any. Plaintiffs acknowledge—as they must—that "[t]he maximum incarceration that Ms. Beatty could have received for the three offenses was twenty-two years" and admit that "[t]he maximum incarceration penalty for the three offenses indicates that the three, taken together, could be viewed as serious." *Pls' M.*, p. 15. Defendants believe that is an understatement; a $56,430.80 fine (even if it came to fruition) would not even approach grossly excessive given Plaintiff Beatty's conduct and its impact on the state and its citizens. This Court should deny Plaintiff Beatty's proposed amendments as futile.

2.  **The Second Circuit's Decision in *Reese* Forecloses Some of Plaintiff Beatty's Arguments and All of Plaintiff Beatty's Arguments Lack Merit**

In an effort to avoid the clear implications of Plaintiff Beatty's criminal conduct, Plaintiffs argue that even though the maximum imprisonment and fine show that Plaintiff Beatty's criminal conduct was admittedly serious, this Court should look to what the Superior Court sentenced Plaintiff Beatty to rather than the maximum penalties. *Pls' M.,* pp. 15-16. The

Second Circuit rejected a functionally identical argument in *Reese*, which this Court expressly cited and relied on in its most recent decision. *See 2d MTD Decision*, pp. 20, 23. Specifically, the plaintiffs in *Reese* argued that in applying the third *Bajakajian* factor, the court should look to the enforcing agency's internal guidance as to the amount of fine that should be imposed rather than the regulatory maximum. *See Reese*, 91 F. 4th at 592. The Second Circuit disagreed, making clear that under established precedent "the maximum statutory fine" controls rather than other guidance, even where that guidance would lead to a fine that "fell 'well below' the statutory maximum penalty." *Id*. (quoting *United States v. George*, 779 F.3d 113, 123-24 (2d Cir. 2015), which looked to the maximum statutory fine rather than the applicable Sentencing Guidelines).

*Reese* and other Second Circuit precedent establishes that "the maximum possible fine" is the "benchmark to assess the" fines imposed on Plaintiffs. *Id*.; *see also von Hofe*, 492 F.3d at 187 ("That the terms of Mr. von Hofe's state conviction did not include a fine was fortunate for him, but does not alter our analysis."). Plaintiffs do not cite *Reese*, let alone persuasively distinguish it. This Court should reject Plaintiffs Beatty's argument that the Superior Court's decision to sentence her less than the maximum should call into question the constitutionality of the state's efforts to recover some of its costs.   *Pls' M.*, pp. 15-16.

*Reese* should also be fatal to Plaintiff Beatty's argument to the extent Plaintiffs seek to have this Court ignore the full scope of Plaintiff Beatty's criminal conduct. *See id*. Plaintiffs argue that Plaintiff Beatty's "conduct had no relation to that beyond the sale of drugs" and that *inter alia* "she was not convicted of violence." *Id*. at 15. Plaintiffs also assert in their proposed Third Amended Complaint that the "string of offenses" Plaintiff Beatty was "convicted of" outside of the three that led directly to her term of incarceration that underlies the costs of incarceration are not "relevant" to this Court's analysis. *Redline*, new ¶ 22 & n.1. *Reese* says

otherwise. There, the Second Circuit rejected the plaintiffs' argument that the excessive fines analysis should focus only on the conviction conduct and disregard other alleged misconduct. *See Reese*, 91 F. 4th at 593. Again, Plaintiffs do not mention *Reese*, let alone persuasively address it.[20]

**B. Plaintiff Johnson's Claim in the Proposed Third Amended Complaint would be Subject to Dismissal on its Merits**

Plaintiff Johnson's proposed amendments would be futile for similar reasons to Plaintiff Beatty's. By their nature, the costs of incarceration are by definition "'*proportional* to the crime[s] committed'" because they are based on the sentence of incarceration at issue. *2d MTD Decision*, 29 (quoting *Wright v. Riveland*, 219 F.3d 905, 917 (9th Cir. 2000) (emphasis this Court's)). Even if this Court proceeds past that initial obstacle (it need not), the "possession of narcotics that Mr. Johnson was charged with was subject to a maximum incarceration term of seven years and/or a fine of $50,000." *Redline*, new ¶ 92. DAS has filed a Proof of Claim in the Probate Court seeking to recover "the lesser sum" of $76,951.00 or "fifty percent of" Plaintiff Johnson's "distributive share" of the estate. *Redline*, Proposed New Exhibit 1 (ECF No. 114-1, p. 47).

Even if this Court assumes for purposes of this Motion that Plaintiff Johnson will pay $76,951.00 (it should not), that amount would not be grossly excessive under the *Bajakajian* factors. The Second Circuit's decision in *von Hofe* should be dispositive. That case involved *inter alia* a claim that a husband's forfeiture of his one half interest in a property "with an undisputed value of $ 248,000" violated the Excessive Fines Clause. *von Hofe*, 492 F.3d at 179. The Second Circuit "agree[d] with the district court that forfeiture of Harold von Hofe's one-half

---

[20] To the extent Plaintiffs make similar arguments on behalf of the other Plaintiffs, those arguments should fail for the same reasons they should fail as to Plaintiff Beatty.

interest in 32 Medley Lane" which was valued at $124,000 did "not violate the Excessive Fines Clause." *Id.* at 186. The Second Circuit reasoned that even though the plaintiff's "criminal activity involved neither violence nor threats of violence," his growing and distribution of marijuana plants resulted in harm that—though difficult to quantify—undoubtedly frustrate[d] society's desire to stem the use of illicit substances and the market therefor." *Id*. at 186-87.

Although Plaintiff Johnson's conduct involved possession rather than growth or sale, Plaintiffs acknowledge that under Connecticut law he "was subject to a maximum incarceration term of seven years and/or a fine of $50,000." *Redline*, new ¶ 92. Thus, the maximum punishment for Plaintiff Johnson under Connecticut law was greater than the maximum punishment that could have been imposed on the plaintiff in *vonHofe*; the term of incarceration was the same, but Plaintiff Johnson's maximum fine was double. *See von Hofe*, 492 F.3d at 187 ("Connecticut law similarly provides significant penalties, up to a $ 25,000 fine and seven years imprisonment, for the manufacture of a controlled substance."). The Second Circuit upheld a $124,000 forfeiture in *vonHofe*. Plaintiff Johnson's maximum costs of incarceration are considerably less. That alone should be dispositive.

But the nature of the costs of incarceration further supports the conclusion that Plaintiff Johnson's proposed claim would be futile. Unlike the forfeiture in *vonHofe*—which was supported only by the difficult to quantify harms resulting from drug activity—the costs of incarceration the state seeks to recover from Plaintiff Johnson are supported both by the harms his drug activity caused and by the carefully quantified harm his resulting incarceration imposed on taxpayers. Plaintiffs have cited—and Defendants have found—no decision that would allow Plaintiff Johnson's proposed claim to avoid dismissal.

### C.  Plaintiff Tosado's Claim in the Proposed Third Amended Complaint would be Subject to Dismissal on its Merits

Plaintiff Todado's proposed amendments would be futile for similar reasons to the other Plaintiffs'. By their nature, the costs of incarceration are by definition "'*proportional* to the crime[s] committed'" because they are based on the sentence of incarceration at issue. *2d MTD Decision*, 29 (quoting *Wright*, 219 F.3d at 917 (emphasis this Court's)). Even if this Court proceeds past that initial obstacle (it need not), Plaintiffs' proposed amendments confirm this Court's prior finding based on public records that Plaintiff "Tosado was convicted of some serious crimes, including possession of an assault weapon in a motor vehicle, as well as breach of peace and two charges of failure to appear." *Id*. at 24. This Court concluded based on that information "that the first *Bajakajian* factor weighs against the plaintiffs based on the limited information concerning the essence of the plaintiffs' crimes and their relation to criminal activity." *Id*.

Plaintiffs' proposed amendments further show that Plaintiff Tosado's proposed amendments would be futile. Plaintiffs represent that Plaintiff Tosado was convicted of four felonies, punishable by a total maximum of "twenty years" imprisonment and a "$20,000" fine. *Pls' M.*, pp. 17-18.[21] Plaintiffs allege that "[t]he state calculated Ms. Tosado's total prison debt as $129,641" but sought only "$44,028.98 to satisfy Ms. Tosado's lien." *Redline*, new ¶¶ 73 & 75.

---

[21] This Court concluded that Plaintiff Tosado's "maximum fine amount was $21,500." *2d MTD Decision*, 25. Plaintiffs make no effort to explain why they believe this Court was incorrect and the correct maximum was $20,000. For purposes of this argument, Defendants will assume Plaintiffs' representation is correct given their presumably superior knowledge of their client's circumstances.

Plaintiff Tosado's proposed amendments fall far short of alleging a plausible Excessive Fines Clause claim. As this Court correctly recognized, the *Bajakajian* factors assess "the gravity of the offense." *2d MTD Decision*, 29. Plaintiffs attempt to minimize the seriousness of Plaintiff Tosado's criminal conduct by arguing that by punishing Plaintiffs Tosado's four felonies with a maximum of "five years' incarceration and a $5,000 fine" each, Connecticut indicated that "the state legislature did not view them as serious felonies." *Pls' M.*, p. 18. Plaintiffs cite no authority for that remarkable argument. Nor do Plaintiffs make any effort to address that this Court has already characterized at least some of Plaintiff Tosado's crimes as "serious." *2d MTD Decision*, p. 24.

As Defendants previously argued (and Plaintiffs have never rebutted), the term of incarceration and fine under Connecticut law "'suggest substantial culpability and support the conclusion that the challenged [reimbursement] is constitutional'—Plaintiff Tosado was exposed to nearly twice as long a maximum imprisonment term (24[0[22]] months vs. 135) as the individual at issue in *Viloski*, which upheld a $1,273,285.50 forfeiture." *MIS 2d MTD*, p. 40 (quoting *Viloski*, 814 F.3d at 114). There is no plausible basis for Plaintiffs to argue that a $44,028.98 fine is grossly disproportional, particularly given that it reflects only a fraction of the $129,641 in costs of incarceration the state incurred and the state's strong interest in preventing the unlawful possession of firearms. *See, e.g.*, *United States v. Brown,* 212 F. App'x 747, 755 (10th Cir. 2007) (unpublished).[23]

---

[22] Plaintiffs' calculation is different than Defendants' was based on publicly available information. For purposes of this Motion, Defendants will assume Plaintiffs are correct.

[23] To be clear, Defendants believe that all of the above grounds for denial of Plaintiffs' Motion warrant denial, taken independently or together. Even if the Court concludes that any individual ground alone would be insufficient, Defendants believe that the overall circumstances more than warrant this Court denying Plaintiffs' Motion in its discretion.

**VIII.**   **If the Court Decides to Grant the Motion in Any Part, it should Require Plaintiffs to Remove the Large Portions of their Proposed Third Amended Complaint that Have No Bearing on this Case as it Currently Stands**

To the extent the Court is inclined to grant leave to amend, it can—and should—limit any such leave by requiring Plaintiffs to remove any claims that this Court finds are futile or otherwise improper. *See, e.g.*, *Cassava Sciences, Inc. v. Bredt*, 2024 U.S. Dist. LEXIS 59822, at *82 (S.D.N.Y. Mar. 28, 2024) (granting leave to amend in part, but not allowing the plaintiff's amendment to include claims that were futile). The Court should also require Plaintiffs to remove the allegations in the proposed Third Amended Complaint that have no bearing on any of the issues remaining in this case. *See Proposed Third Amended Compl.*, ¶¶ 1-3, 122, 130, 147, 149-67, 174-78, 189-95. For example, Plaintiffs allege the current daily rate of costs of incarceration even though that rate has no impact on any Plaintiff given that amounts of Plaintiffs' costs of incarceration were based on rates from 2018 and earlier. *See id.* at ¶ 1. Plaintiffs also continue to reference a "putative class" even though Plaintiffs have abandoned their class arguments. *Id.* at ¶ 6. In addition, Plaintiffs continue to ask this Court to strike down the full statutory scheme even though all of the Plaintiffs are impacted only by the portion involving inheritances. *Id.* at p. 32 ¶ (b).[24]

**V.**   **Conclusion**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion to Amend in its entirety and enter Judgment in Defendants' favor.

---

[24] To be clear, Defendants' failure to reference any paragraph or allegation is not intended as and should not be construed as an indication that Defendants believe that any allegation is relevant, true or supported by fact.

37

Respectfully submitted,

DEFENDANTS

WILLIAM TONG
ATTORNEY GENERAL

BY: */s/ Robert J. Deichert*
Robert J. Deichert (ct24956)
Assistant Attorney General
Attorney General's Office
165 Capitol Avenue
Hartford, CT 06106
860-808-5020 (phone)
860-808-5347 (fax)
Robert.Deichert@ct.gov
*Attorney for Defendants*

**<u>Certificate of Service</u>**

I hereby certify that on April 17, 2023 a copy of the foregoing was electronically filed.

Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic

filing system. Parties may access this filing through the Court's system.

*/s/ Robert J. Deichert*
Robert J. Deichert
Assistant Attorney General
